## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 5:2017-cv-00403 |
| DAVID J. CATANZARO | THE HONORABLE JEFFREY L. SCHMEHL |
| Defendant | |

## **MOTION TO DISMISS**

This Motion is responsive to Plaintiff's Complaint. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant David J. Catanzaro herby moves to dismiss for failure to state a claim upon which relief can be granted.

The Complaint filed by Plaintiff fails to state a claim upon which relief can be granted based on the fact that Declaratory Judgment Venue is not proper.

This honorable court further lacks subject matter jurisdiction since the claim is not ripe for adjudication.

This lawsuit has been filed in Bad Faith and exemplary damages should be awarded to Defendant.

This Motion is based on the Brief in support filed concurrently herewith. For the foregoing reasons and for the reasons set forth in the accompanying Brief, Defendant David J. Catanzaro respectfully requests dismissal of this action.

Respectfully submitted,                              Dated: March 16, 2017

*s/ David J. Catanzaro*
David J. Catanzaro
Defendent *Pro Se*
286 Upper Powderly Street
Carbondale, PA  18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

## CERTIFICATE OF NONCONCURRENCE

I, David J Catanzaro, contacted Plaintiff's attorney Douglas Panzer by email and provided him with this Motion and he has stated that he does not concur.

*s/ David J. Catanzaro*
David J. Catanzaro

## CERTIFICATE OF SERVICE

I, David Catanzaro, hereby certify that a true and correct copy of the forgoing Motion to Dismiss

was sent by First Class Mail to the United States District Court for the Eastern District of

Pennsylvania and served via First Class Mail upon Plaintiff this 16th day of March 2017

to the following person:

DAN SCHANTZ FARM &
GREENHOUSES, LLC
c/o DOUGLAS PANZER
FITZPATRICK LENTZ & BUBBA
4001 Schoolhouse Lane
Center Valley, PA 18034

*s/ David J. Catanzaro*
David J. Catanzaro

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : : : **CIVIL ACTION** |
| Plaintiff, | : |
| v. | : : **NO.** 5:2017-cv-00403 |
| DAVID J. CATANZARO | : : **THE HONORABLE** : **JEFFREY L. SCHMEHL** |
| Defendant | : : |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant David J. Catanzaro respectfully submits this brief in support of its Motion to Dismiss.

### RELEVANT FACTS

1. Defendant contacted Plaintiff by phone on 1-11-17.

2. During the phone call of 1-11-17, Defendant only provided his first name along with a limited conversation focused on the fact that Plaintiff was selling 'Decorative Planter' products that Defendant believed had similarities to a patent or patent application in possession by Defendant.

3. Further during the conversation of 1-11-17, Defendant stated that he had absolutely no intention in filing any lawsuit associated with this matter and that Defendant wanted both Defendant and Plaintiff to enter into a draft Litigation Standstill Agreement (attached as **Exhibit A**) to discuss the full merits of the matter.

4. Defendant further stated during the conversation of 1-11-17 that after Plaintiff entered into the litigation standstill agreement, Defendant would provide the patent or patent application number at issue along with any and all other relevant information .

5. Plaintiff stated that the Litigation Standstill Agreement would be reviewed.

6. Defendant emailed Plaintiff the Litigation Standstill Agreement on 1-13-17 and restated in said email that Defendant "will provide all pertinent information once the agreement is signed by DSFG" (refer to **Exhibit B**).

7. On 1-18-17 Defendant received an email with a letter attached from Plaintiff's Attorney Douglas Panzaer (**Exhibit C**).

8. In the letter dated 1-18-17 Plaintiffs Attorney Douglas Panzaer refers to Defendant's call to his client of 1-11-17 and email of 1-13-17 in paragraph two line one as follows:

*"Due to the intentional omissions of material information in your telephone call, email and the proposed Litigation Standstill Agreement, they fail to provide any legal notice to DSFG of a colorable claim."*

9. Mr. Panzaer's letter of 1-18-17 further stated and concluded as follows:

*"Should you desire to discuss this matter further, you must:*

*1. Identify a valid United States patent you claim to be infringed or patent application that you claim would be infringed if issued;*
*2. Identify, with particularity, the products you allege to infringe such patent;*
*3. Identify, with particularity, the claims you allege to be infringed and the corresponding elements of such product, which you allege constitute infringement;.*
*4. Identify the true party in interest of your alleged claims; and*
*5. Specify the relationship to the true party in interest.*

*Absent the above information, DSFG does not have proper legal notice of any claim of infringement or a reasonable ability to evaluate your statements, claims, or proposal. Unless we receive this information by Friday, January 27, 2017, we will consider this matter closed."*

10. On 1-18-17 after Defendant reviewed the above noted letter, Defendant called Plaintiff's Attorney Douglas Panzaer to open a dialog and to further discuss the matter.

11. During the conversation with Douglas Panzer, Defendant restated that a negotiation period would be the best way to move forward and that the provided Litigation Standstill Agreement would maintain the status-quo between both parties.

12. Within the conversation Douglas Panzer asked the following question: *"If you were to file a lawsuit would it be in the Eastern District of PA?"*

13. Defendant did not specifically answer the stated question but answered as follows: *"I have no intention in filing a lawsuit, and if I did I would have filed one already."*

14. Defendant believes that Douglas Panzer posed the above question as a result of seeing an Eastern District phone number on his caller ID when Defendant placed the call.

15. Further during the conversation of 1-18-17 Plaintiff's attorney Douglas Panzer agreed, promised and reassured Defendant that if Defendant provided at a minimum, his full legal name prior to Plaintiff signing said agreement(which Defendant agreed to provide) he (Douglas Panzer) would recommend to his client to enter into the Litigation Standstill Agreement and provide Defendant with a communication confirming his client's approval or response.

16. Following the conversation of 1-18-17, Defendant emailed attorney Douglas Panzer referencing the above noted phone conversation **(Exhibit D)**.

17. Within Defendant email sent on 1-18-17, Defendant directly answered the question attorney Douglas Panzer posed during the 1-18-17 conversation as stated in point 12 as follows:

*"With regards to your question as to whether or not the litigation would be filed in your district, the clear answer is NO. I randomly picked the number you seen on your caller ID to identify with your area; I am not located in that area."*

18. The written answer Defendant disclosed was specifically addressing, within the narrowest of context, 'only' the question attorney Douglas Panzer posed. Defendant's answer does not reflect the 'agreement or covenant of understanding' that was reached by the Defendant and Plaintiff's attorney Douglas Panzer during the phone conversation of 1-18-17.

19. The oral agreement or covenant of understanding that was reached between the Defendant and Plaintiff's attorney Douglas Panzer during the conversation of 1-18-17 was that attorney Panzer agreed, promised and reassured Defendant that he would recommend to his client (the Plaintiff), to enter into the Litigation Standstill Agreement and respond back to Defendant with respect to his clients response to entering into said agreement. In return, Defendant would disclose his full legal name prior to Plaintiff signing said agreement and after the agreement was signed, Defendant then would fully disclose all pertinent information regarding the matter with the goal of Defendant and Plaintiff reaching a resolution without having any legal entanglements.

20. **Exhibit E** contains several email correspondences between Defendant and Plaintiff's attorney Douglas Panzer which clearly support the oral agreement or covenant of understanding reached between the parties as outlined in point 19 above.

21. **In Exhibit E** an email was sent to Defendant by Plaintiff's attorney Douglas Panzer dated 1-25-17, which is the final email Mr. Panzer sent to Defendant prior to Plaintiff filing this action, wherein Mr. Panzar states:

*"As you may know, Dan Schantz had a serious fire this month that caused damage and disruption. I will have a substantive response for you as soon as possible."*

22. Within two days after the above stated email was sent to Defendant, Plaintiff's attorney
Douglas Panzer filed this instant action and provided NO prior response as defined in his
email dated 1-25-17 and failed to respond to Defendant's emails of 1-30-17 and 2-1-17.

23. When Defendant found out through the internet that Plaintiff's attorney Douglas Panzer
filed this instant action, Defendant was more than outraged.

24. Defendant immediately called Plaintiff's attorney Douglas Panzer late in the afternoon of 2-
1-17 and expressed to him that he is an officer of the court and his blatant lies about moving
forward with the Litigation Standstill Agreement and getting back to Defendant with respect to
his client entering into said agreement, while all along preparing and filling this action,
constitutes a very strong showing of 'Bad Faith' which is completely adverse with the Rules of
Professional Conduct and Rules of Civility.

25. Further during the conversation of 2-1-17, Plaintiff's attorney Douglas Panzer stated that he
had to be first to file the lawsuit in the Eastern District because of his duty to his client. Mr.
Parizer went on to say that: "There are many advantages in being the Plaintiff."

   "Federal declaratory judgment is not a prize to the winner of a race to the courthouse."

   (Federal Insurance Co. v. May Department Stores, 808 F. Supp. 347, 350 (S.D.N.Y. 1992).

26. Defendant followed up with an email of 2-2-17 recapping the conversation of 2-1-17
sending it directly to his client (the Plaintiff) and to Mr. Panzer (refer to **Exhibit F**).

(It should be noted that Defendant has not yet made any statements to the press regarding this lawsuit as stated in
Defendants letter of 2-2-17. Furthermore, Defendant has not filed a disciplinary action with the disciplinary board,
but rather has filed a 'Motion for Disciplinary Action' with this honorable court concurrently with this brief. Lastly,
the last paragraph of Defendants letter of 2-2-17 is governed under FRE 408 and as a result, was redacted from the
communication.)

## A. **The Complaint Fails to State a Claim Because Declaratory Judgment Venue is not Proper**.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it does not contain allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,570 (U.S. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2007). Here, Defendant never revealed a specific patent or patent application that Plaintiff was infringing. Defendant never stated a specific infringing product nor provided any product UPC code or product number. Defendant only referred to the product as "Decorative Planters" as affirmed in Plaintiff's letter of 1-18-17. Plaintiff's letter of 1-18-17 further states that Defendant must: *"Identify, with particularity, the products you allege to infringe such patent."* (refer to **Exhibit C**). Defendant never provided any further details about the product at any time after the 1-18-17 letter. Defendant never made a demand of any kind nor did Defendant provide any claim chart identifying any claims which Plaintiff's product infringes. Defendant again refers to Plaintiff's letter of 1-18-17 (**Exhibit C**) to affirm every statement in this paragraph and to further affirm that Plaintiff agrees and clearly states that there is no "Colorable Claim" or Controversy. To reiterate, the following excerpts from that letter should be duly noted:

*"Due to the intentional omissions of material information in your telephone call, email and the proposed Litigation Standstill Agreement, they fail to provide any legal notice to DSFG of a colorable claim."*

*Should you desire to discuss this matter further, you must:*

*1. Identify a valid United States patent you claim to be infringed or patent application that*

*you claim would be infringed if issued;*
*2. Identify, with particularity, the products you allege to infringe such patent;*
*3. Identify, with particularity, the claims you allege to be infringed and the corresponding*
   *elements of such product, which you allege constitute infringement;.*
*4. Identify the true party in interest of your alleged claims; and*
*5. Specify the relationship to the true party in interest.*

*Absent the above information, DSFG does not have proper legal notice of any claim of*
*infringement or a reasonable ability to evaluate your statements, claims, or proposal. Unless we*
*receive this information by Friday, January 27, 2017, we will consider this matter closed."*

On the very same day Plaintiff filed this instant action (1-27-17), Plaintiff stated in the 1-18-17

letter that this matter would be closed on 1-27-17 if Defendant did not provide the above

Information, of which Defendant did not provide the stated information on or before 1-27-17.

The Declaratory Judgment Act does not provide an independent basis of subject matter

Jurisdiction Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72, 70 S.Ct. 876, 94

L.Ed. 1194 (1950). Instead, "[i]ts remedy may lie only if the court has jurisdiction from some

other source." Cat Tech, 528 F.3d at 879; see Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240,

57 S.Ct. 461, 81 L.Ed. 617 (1937). The party seeking to establish declaratory judgment

jurisdiction bears the burden of demonstrating that an Article III case or controversy exists at the

time the claim for declaratory relief is filed._ Arris Grp., Inc. v. British Telecomms., PLC, 639

F.3d 1368, 1373 (Fed.Cir.2011). Hear, Plaintiff filed this instant action within 9-days after

entering into an oral agreement or covenant of understanding with the Defendant and providing

the Defendant with the letter of 1-18-17, wherein said letter states there is no "Colorable Claim"

or Controversy with the Defendant. At the time this action was filed, Defendant had not

supplied any of the information requested in said letter to trigger a "Colorable Claim" or

Controversy. (Again, Refer to Plaintiff's letter of 1-18-17 **Exhibit C.**)

Because Article III of the Constitution restricts the judicial power to the adjudication of "Cases" or "Controversies," U.S. Const. Art. III, § 2, a court may not adjudicate "a difference or dispute of a hypothetical or abstract character" or "one that is academic or moot." Aetna, 300 U.S. at 240. Instead, a justiciable controversy exists only where a dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," and will "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. at 240–41; see MedImmune, 549 U.S. at 127.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Accordingly, even if a case or controversy exists, the trial court has significant discretion in determining whether or not to exercise declaratory judgment jurisdiction. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).

Defendant owns several patents along with two design patent applications that will be issuing this year (2017). One of the said design applications has already received a 'Notice of Allowance' from the Patent and Tradmark office and Defendant is currently expecting issuance. The stated Notice of Allowance was received by Defendant well prior to Defendant contacting Plaintiff. Based on current communications from the Patent and Trademark office, Defendant is further expecting a Notice of Allowance for the second design application mentioned herein.

Because Plaintiff came across litigation that involved Defendant's patent No. 7,653,959, (the '959 patent) does not give Plaintiff legal standing to move forward with the claims asserted within the complaint. Plaintiff attempts to provide the court with a type of 'circumstantial

evidence' to 'infere' or 'speculate' Defendant's intent, which clearly is not conclusive and is completely adverse to Article III of the Constitution previously denoted and again partially noted as follows:

Because Article III of the Constitution restricts the judicial power to the adjudication of "Cases" or "Controversies," U.S. Const. Art. III, § 2, a court may not adjudicate "a difference or dispute of a hypothetical or abstract character" or "one that is academic or moot." Aetna, 300 U.S. at 240. Instead, a justiciable controversy exists only where a dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests."

No further information was provided by the Defendant to the Plantiff from the time Defendant received Plaintiff's email letter of 1-18-17 (**Exhibit C**) up to the time this action was filed. Again, in Plaintiff's letter of 1-18-17 Plaintiff states that Defendant: *"fails to provide any legal notice to DSFG of a colorable claim. DSFG does not have proper legal notice of any claim of infringement or a reasonable ability to evaluate your statements, claims, or proposal. Unless we receive this information by Friday, January 27, 2017, we will consider this matter closed."*

Again, Defendant restates the following as published in Arris Grp., Inc. v. British Telecomms., PLC, 639 F.3d 1368, 1373 (Fed.Cir.2011). The party seeking to establish declaratory judgment jurisdiction bears the burden of demonstrating that an Article III case or controversy exists at the time the claim for declaratory relief is filed.

Plaintiff's attorney Douglas Panzer states in the complaint on Page 4 Point 14 that during the conversation of 1-18-17 Defendant stated that he previously filed suit for infringement of his patent and had entered into numerous license agreements as a result thereof. Defendant further denies these statements and asserts that attorney Douglas Panzer used only public disclosure to

identify infringement lawsuits filed by Defendant along with public disclosed statements made regarding settlements (refer to Plaintiff's Exhibit B to Exhibit C).

Plaintiff further states in the complaint on Page 4 point 16 that Defendant contacted other parties to allege infringement refusing to provide full information regarding his identity or the identity of the patent and demanding execution of a "litigation standstill agreement" contemplating a 30-day discussion and non-suit period. See Plaintiff's Exhibit C at ¶¶ 13-14. What Plaintiff does not disclose is that in Plaintiff's Exhibit C at ¶ 15, Defendant did provide to ("other parties") Plaintiff (Blue Box) "full information" including Defendant's identity, the patent at issue, the specific product infringing said patent, a claim chart identifying every claim that infringed said patent along with a draft complaint. The Party sited in Plaintiff's Exhibit C clearly had a 'Colorable Claim' or 'Controversy' with Defendant wherein the filing of a Declaratory Judgment action by the plaintiff was appropriate.

Plaintiff further states in the complaint that Defendant has filed several infringement lawsuits in the middle district involving the 7,653,959 patent (refer to Plaintiff's Exhibit B). What Plaintiff does not state is that Defendant was compelled to file those lawsuits as a direct result of an order handed down by Federal Judge Dan Aaron Polster Case No. 1:13 CV 996 (Refer to **Exhibit G**). As soon as Case No. 1:13 CV 996 settled, Defendant dismissed each and every one of those referenced lawsuits.

Defendant was not compelled to file a lawsuit against Plaintiff and Defendant assured Plaintiff this was not his intention. An agreement or covenant of understanding was reached between the Defendant and Plaintiff's attorney Douglas Panzer during the conversation of 1-18-

17 when attorney Panzer agreed, promised and reassured Defendant that he would recommend to his client (the Plaintiff), to enter into the Litigation Standstill Agreement and respond back to Defendant with respect to his clients response to entering into said agreement. In return, Defendant would disclose his full legal name prior to Plaintiff signing said agreement. After the agreement was signed, Defendant then would fully disclose all pertinent information regarding the matter with the goal of Defendant and Plaintiff reaching a resolution without having any legal entanglements.

Plaintiff's attorney Douglas Panzer blatantly lied to Defendant when he said he would recommend to his client enter into the Litigation Standstill Agreement and then get back to Defendant with respect thereof while all along preparing and filling this action. Mr. Panzaer has demonstrated 'Bad Faith' which is completely adverse with the Rules of Professional Conduct and Rules of Civility and has shown complete contempt toward Defendant. Plaintiff's attorney Douglas Panzer has clearly stated that there is No Colorable Claim or Controversy with Defendant since Defendant has not supplied any information to Plaintiff at the time of this filling, that would rise to a Colorable Claim or Controversy.

## B. **This honorable court further lacks subject matter jurisdiction over the case since the claim is not ripe for adjudication**

Federal jurisdiction over claims under the Declaratory Judgment Act is also restricted by the doctrine of ripeness. Article III of the Constitution, which prohibits federal courts from issuing advisory opinions, is the source of the ripeness doctrine. See Hurley v. Columbia Casualty Co., 976 F. Supp. 268, 272 (D. Del. 1997) (citing Armstrong, 961 F.2d at 410). Thus, if a case is not ripe, a federal court lacks subject matter jurisdiction to adjudicate the claim. Id.

Determining the ripeness of a claim for declaratory relief, in which a court may properly render judgment "before an 'accomplished' injury has been suffered," is particularly difficult. Obusek, 72 F.3d at 1154 (quoting Step-Saver Data Systems, Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990). Generally, a court should focus on the timing of the plaintiff's claim in order "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Armstrong, 961 F.2d at 410 (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967) (abrogated on other grounds)). Here, there is no affirmative facts presented by Defendant to Plaintiff to establish a colorable claim or controversy rendering the matter 'Not Ripe' for adjudication. (Defendant refers again to Plaintiff's letter of 1-18-17 **Exhibit C**.) With respect to the literal timing of the filing of this action, Defendant reiterates that during a conversation of 2-2-17, Plaintiff's attorney Douglas Panzer stated that he had to be first to file the lawsuit (in the Eastern District) because of his duty to his client. Mr. Parizer went on to say that: "There are many advantages in being the Plaintiff." Defendant reiterates that in Federal Insurance Co. v. May Department Stores, 808 F. Supp. 347, 350 (S.D.N.Y. 1992, the court states: "Federal declaratory judgment is not a prize to the winner of a race to the courthouse."

## C. **This action has been filed in Bad Faith and exemplary damages should be awarded to Defendant.**

Defendant and Plaintiff's attorney Douglas Panzer entered into an oral agreement or covenant of understanding during the conversation of 1-18-17, wherein Mr. Panzer agreed, promised and reassured Defendant he was going to recommend to his client to enter into the Litigation Standstill Agreement provided by Defendant and then get back to Defendant with a response thereof. In return, Defendant agreed he would provide his full legal name prior to

Plaintiff signing said agreement, then after the agreement was signed, Defendant would provide all relevant information.

Mr. Panzer is an officer of the court and has blatantly lied about recommending to his client to move forward with the litigation standstill agreement and getting back to Defendant with respect to his client entering into said agreement while all along preparing and filling this action. Mr. Panzer's 'intent to deceive behavior' constitutes a very strong showing of 'Bad Faith' which is completely adverse with the Rules of Professional Conduct and Rules of Civility. As an officer of the court, Mr. Panzer has also demonstrated complete contempt toward Defendant as a result of his malicious, grossly reckless actions and conduct. (Defendant again refers to the emails in **Exhibit E** and **Exhibit F** to support the oral agreement or covenant between the parties.)

Attorney Douglas Panzer has clearly stated that there is No Colorable Claim or Controversy as denoted within his letter of 1-18-17 (**Exhibit C**). Since Defendant has not supplied any information to Plaintiff at the time of this filling that would rise to a Colorable Claim or Controversy, the filing of this action should be viewed as frivolous and in step with the Bad Faith actions taken by attorney Douglas Panzer, all in an effort to get his client first to the court house to establish home town Jurisdiction and Venue to 'unfairly disadvantage' the Defendant. Defendant again reiterates that during a conversation of 2-2-17, Plaintiff's attorney Douglas Panzer stated that he had to be first to file the lawsuit because of his duty to his client. Mr. Parizer went on to say that: "There are many advantages in being the Plaintiff."

## CONCLUSION

For the forging reasons, Defendant David J. Catanzaro respectfully requests dismissal on the merits and asks this honorable court for exemplary damages.

Respectfully submitted,                    Dated: March 16, 2017

*s/ David J. Catanzaro*
David J. Catanzaro
Defendant *Pro Se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

## **CERTIFICATE OF SERVICE**

I, David Catanzaro, hereby certify that a true and correct copy of the forgoing Brief in Support of

Motion to Dismiss was sent by First Class Mail to the United States District Court for the

Eastern District of Pennsylvania and served via First Class Mail upon Plaintiff this 16th day of

March 2017 to the following person:

DAN SCHANTZ FARM &
GREENHOUSES, LLC
C/O DOUGLAS PANZER
FITZPATRICK LENTZ & BUBBA
4001 Schoolhouse Lane
Center Valley, PA 18034

*s/ David J. Catanzaro*
David J. Catanzaro

# Exhibit A

## LITIGATION STANDSTILL AGREEMENT

This Litigation Standstill Agreement ("Agreement") is entered into and effective as of January 13, 2017 ("Effective Date") by and between Dan Schantz Farm & Greenhouses, LLC ("DSFG"), having a principle place of business at 8025 Spinnerstown Road, Zionsville, PA 18092 and _____, Patent Owner ("Owner") having a principle place of business at _____
(hereinafter sometimes individually referred to as "Party" and collectively referred to as the "Parties").

### Recitals

A.      Whereas Owner has evidence that Owner asserts establishes that DSFG infringed his patent (patent no. _____, the "Patent") with one or more products;

B.      Whereas DSFG denies infringing Owner's patent

C.      Whereas Owner and DSFG desire to have full and frank discussions regarding Owner's claim prior to the commencement of patent infringement litigation to avoid such litigation if possible ("Discussions");

D.      Whereas Owner and DSFG desire to preserve the litigation *status quo* for a short period of time to enable such Discussions;

### Now therefore the Parties agree as follows:

1.      In consideration for the mutual promises set forth herein, Owner and DSFG agree to a discussion period from the Effective Date of this Agreement through and including March 13, 2017 ("Discussion Period").

2.      DSFG agrees that it will not file any action against Owner's Patent or file any lawsuit against Owner for declaratory relief or otherwise until fourteen (14) calendar days after the expiration of the Discussion Period.

3.      Owner in consideration for DSFG agreeing to the Discussion Period, agrees that Owner will not file any lawsuit against DSFG for patent infringement or otherwise until seven (7) calendar days after the expiration of the Discussion Period.

4.      The Parties agree that the making of this Agreement shall not be used by either party for purposes of establishing venue or jurisdiction in the event the Parties are unable to resolve their differences without litigation.

5.      DSFG agrees that during the Discussion Period, and prior to any active lawsuit, it will not disclose the Patent, the Patent number, licenses and the name of Owner/inventor to any third party, other than its financial and legal advisors.

7.      The Parties hereby agree that this Agreement shall constitute, for the Party breaching this Agreement, a Stipulation for Dismissal Without Prejudice for any action filed in violation of this Agreement.

8.      This Agreement shall be governed by Pennsylvania law without regard to its conflict of law principles.

9.      This Agreement shall constitute the entire understanding between the Parties and supersede, according to their terms, all prior-understandings, whether oral or written, of the Parties hereto relating to the subject matter herein and cannot be changed or terminated orally.

10.     The Parties shall execute any such other documents as may be reasonably required or as may reasonably be necessary to effectuate any other requirement or agreement herein.

11.     This Agreement may be executed in several counterparts, each of which shall be deemed an original.

12.     Execution of this Agreement may be effected by facsimile, pdf or other electronic transmission.

Dan Schantz Farm & Greenhouses, LLC:

Signature:_____     Date: _____

Printed Name:_____

Title:_____

Patent Owner

Signature:_____     Date: _____

Printed Name:_____

# Exhibit B

 Gmail                                                    David mts <davemts1213@gmail.com>

## Patent Infringement Matter

**David Joseph** <davemts1213@gmail.com>                                   Fri, Jan 13, 2017 at 1:46 PM
To: info@danschantz.com

Dear Lisa Myers,

Attached  please find the Litigation Standstill Agreement I stated I would be sending per our conversation on
Wednesday.

Once the agreement is signed by DSFG, I will fully execute and will provide all pertinent information.

I look forward to receiving the signed agreement at your earliest convenience.

Regards,

David

**DSFG_LITIGATION_ STANDSTILL_ AGREEMENT.pdf**
83K

# Exhibit C



FITZPATRICK LENTZ & BUBBA

ATTORNEYS AT LAW

FITZPATRICK LENTZ & BUBBA, P.C.· 4001 SCHOOLHOUSE LANE· PO BOX 219· CENTER VALLEY, PA 18034-0219
STABLER CORPORATE CENTER · PHONE: 610-797-9000 · FAX: 610-797-6663 · WWW.FLBLAW.COM

Edward J. Lentz

Joseph A. Fitzpatrick, Jr.

Joseph A. Bubba

Timothy D. Charlesworth

Douglas J. Smillie*

Emil W. Kantra II

Joseph S. D'Amico, Jr.*

Michael R. Nesfeder

Catherine E. N. Durso

Jane P. Long

Erich J. Schock

James A. Bartholomew

Jacob M. Sitman*

Steven T. Boell

Joshua A. Gildea

Marie K. McConnell*

Anthony S. Rachuba, IV*

Karl H. Kline

Thomas J. Schlegel*

Barbara Zicherman†

Maraleen D. Shields

Abigail M. Martin

Colin J. Keefe†

Gretchen L. Geisser*

Kenneth R. Charette*

Mallory J. Sweeney*

Veronica M. DeAngelo

John A. Weiss

Peter E. Iorio

James G. Kellar
1927-2002

Douglas Panzer* #
Of Counsel
Intellectual Property Law

Albertina D. Lombardi*
Kathleen M. Mills
Of Counsel

E-mail:  dpanzer@flblaw.com
Direct Dial:  610-797-9000 ext 390

**January 18, 2017**

**VIA EMAIL (davemts1213@gmail.com)**
"David"

### RE: Alleged Patent Infringement

Dear Sir:

This firm represents Dan Schantz Farm & Greenhouses, LLC ("DSFG").  DSFG has informed us that you contacted them by telephone on January 11, 2017, alleging that certain decorative planters sold by DSFG infringe a patent.  We are also in receipt of a proposed "Litigation Standstill Agreement" that you delivered to DSFG by email on January 13, 2017, which purports to propose negotiations related to such allegation.  Through your telephone call, email, and by the substance of the proposed agreement, however, you have expressly declined to identify yourself, any patent or patent application, any rights holder of a patent or patent application, or any features you allege to be claimed in any such patent or patent application.

Due to the intentional omission of material information in your telephone call, email, and the proposed Litigation Standstill Agreement, they fail to provide any legal notice to DSFG of a colorable claim.  Furthermore, these communications are insufficient to permit DSFG to evaluate your allegation, or to properly consider or agree to the terms of your Litigation Standstill Agreement.  Should you desire to discuss this matter further, you must:

1) Identify a valid United States patent you claim to be infringed or patent application that you claim would be infringed if issued;

2) Identify, with particularity, the products you allege to infringe such patent;

† Also admitted in New York
*Also admitted in New Jersey
# Registered Patent Attorney



FITZPATRICK LENTZ & BUBBA
ATTORNEYS AT LAW

January 18, 2017
Page 2

3) Identify, with particularity, the claims you allege to be infringed and the corresponding elements of such product, which you allege constitute infringement;

4) Identify the true party in interest of your alleged claims; and

5) Specify your relationship to the true party in interest.

Absent the above information, DSFG does not have proper legal notice of any claim of infringement or a reasonable ability to evaluate your statements, claims, or proposal. Unless we receive this information by Friday, January 27, 2017, we will consider this matter closed.

Very truly yours,

Douglas Panzer

# Exhibit D

 Gmail                             David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**                                   Wed, Jan 18, 2017 at 4:09 PM
To: Douglas Panzer <dpanzer@flblaw.com>

Dear Douglas,

I appreciate our recent conversation. Per our conversation, It is my desire that your client (DSFG) opens up a dialog wherein I would provide them with all necessary information. By entering into the standstill agreement, DSFG will have all necessary information to make an informed decision as to whether or not litigation could be prevented.

With regards to your question as to whether or not the litigation would be filed in your district, the clear answer is NO. I randomly picked the number you seen on your caller ID to identify with your area, I am not located in that area.

Thanks,
David
[Quoted text hidden]

# Exhibit E

 Gmail

**David mts <davemts1213@gmail.com>**

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**
To: Douglas Panzer <dpanzer@flblaw.com>

Mon, Jan 23, 2017 at 11:29 AM

Douglas,

Several days have passed since our phone communication, at this time has your client reconsidered moving forward with the standstill agreement?

Thanks,
David
[Quoted text hidden]

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**Douglas Panzer** <dpanzer@flblaw.com>
To: David mts <davemts1213@gmail.com>

Mon, Jan 23, 2017 at 12:23 PM

We are discussing the matter and will be back to you shortly.

**From:** David mts [mailto:davemts1213@gmail.com]
**Sent:** Monday, January 23, 2017 11:30 AM
**To:** Douglas Panzer <dpanzer@flblaw.com>
**Subject:** Fwd: Dan Schantz Farm & Greenhouses, LLC

[Quoted text hidden]
[Quoted text hidden]

 **Gmail**

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**
To: Douglas Panzer <dpanzer@flblaw.com>

Wed, Jan 25, 2017 at 11:51 AM

Douglas,

Please provide me with an update today.

Thanks,
David
[Quoted text hidden]

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**Douglas Panzer** <dpanzer@flblaw.com>
To: David mts <davemts1213@gmail.com>

Wed, Jan 25, 2017 at 6:01 PM

As you may know, Dan Schantz had a serious fire earlier this month that caused major damage and disruption. I will have a substantive response for you as soon as possible.

**From:** David mts [mailto:davemts1213@gmail.com]
**Sent:** Wednesday, January 25, 2017 11:51 AM
**To:** Douglas Panzer <dpanzer@flblaw.com>

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

M Gmail                                                    David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts** <davemts1213@gmail.com>                     Mon, Jan 30, 2017 at 2:26 PM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

Per the phone message I recently left.

I was not aware of the Fire.

As far as I understand from our conversation, you are making the decision as to weather or not your client will be signing the stand still agreement along with reviewing the materials and providing your recommendation.

Please let me know what time you are available to speak today.

Thanks,
David


[Quoted text hidden]

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts** <davemts1213@gmail.com>
To: Douglas Panzer <dpanzer@flblaw.com>

Wed, Feb 1, 2017 at 11:45 AM

Douglas,

At this time, please provide me with an update per your client entering into the standstill agreement.

Thanks,
David
[Quoted text hidden]

# Exhibit F

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC v. Catanzaro - Expiration of Unassigned Patent

David mts <davemts1213@gmail.com>                                      Thu, Feb 2, 2017 at 3:39 PM
To: Douglas Panzer <dpanzer@flblaw.com>
Cc: Dan Schantz Farm <info@danschantz.com>

Mr. Panzer,

I cannot tell you how upset, angry and disheartening I still am to find out that you on behalf of you
client filed a DR action against me when I failed to provide any legal notice to your client of a
colorable claim as stated in your letter of 1/18/17. NO oral or written controversy (as defined by
law) existed between me or your client at the time you filed the DR action or thereafter. Also, what
further enraged me is that from our phone conversation on 1.18.17 I was of the belief that there
was a a good faith understanding between us that you would be providing a further answer  per
your client entering into the standstill agreement and I would in return provide you with my full
name and any other reasonable consideration to move forward with the standstill agreement.
Being an officer of the court, you blatantly lied and filed the DR action continuing to "Play me" as
you sent me emails stating the Fire your client sustained was the reason for the delay
reconnecting with me. The clear representations you made on the 18th over the phone are
affirmed within your email responses. Your emails and letter will be apart of my response to the
court. Your letter is clear and correct, but your follow up emails will support your true intention to
deceive which is  adverse to the Rules of Professional Conduct and Rules of Civility. To further
show your lack of integrity, on 2/1/17 I called you after seeing the filed DR action online and I
stated among other things, that "you really tried to got one over on me…you're the man" and your
response in a most proud underhanded tone was: "I am the man."

If we cannot resolve this matter prior to me answering the complaint, I will be asking the court to
dismiss the action based on the fact that Personnel Jurisdiction is not proper and Declaratory
Judgment Jurisdiction is not proper. The bad faith you displayed as an officer of the court will
further support my position. I will also be filling a disciplinary action with the disciplinary board
regarding your False Representations along with the option of publishing it. (I have
previously brought a disciplinary action against an attorney representing my mother and that
attorney hired a firm to represent him in the matter but he ended up receiving discipline. From that
experience, I have established direct contact with one of the boards head case attorneys. (I will
provide you with a letter denoting the discipline that attorney received if you like.)

1.  I never stated how any product of your client infringed on any identified patent

2. I never identified any patent that your client was infringing.

3. I never asked for a licensing fee for any identified patent

4. I never stated that a lawsuit would be filed identifying a specific US patent.

5. I never identified who I was.

6. Your letter of 1/18/17 clearly states that I failed to provide any legal notice to your client of a colorable claim

Your client has not endured any of the following to substantiate a Controversy:

1. The plaintiff must have suffered an injury in fact.

2. There must be a causal connection between the injury and the defendant's conduct complained of.

3. It must be "likely" that the injury would be redressed by a favorable decision.

Because of your deception and lies and your clients willingness to go along with it, I must consider releasing a press release and or taking out a page in a paper in your area about your client and how you went about representing them in this matter. I may also visit local news or radio stations to inform viewers in your area about my story and how to avoid patent traps such as Declaratory relief actions. I'm sure with the advent of the show shark tank people in your area would love to learn how a Christian PA native with a high school diploma married with three little girls was able to license with many international companies.

The PR release and newspaper write up may contain the following:

1. The head line may read:

Several Weeks after major fire, Don Schantz Farm & Greenhouses, refuses olive branch extended by Christian Inventor and prefers litigation.

2. Douglas Panzer of Fitzpatrick Lentz & Bubba, P.C. agrees to open a dialog with christian inventor, makes promises in good faith to continue to communicate with him, but them immediately files suit against him. "Douglas Panzer acted in such a low manner of morality, he actually used the fire Don Schantz Farm & Greenhouses sustained in January as an excuse to delay responding to me so he could, at the same time file suit against me."

3. The website of Dan Schantz Farm & Greenhouses, LLC claims to be *"dedicated to providing a safe Christian environment for all employees with morality and honesty as the framework for all present and future plans."*

By allowing and condoning the immorality of Douglas Panzer and his blatant lies, Dan Schantz Farm & Greenhouses is promoting nothing less than pure secular anti Christianity and should take down their Christian statement... *for you will know them by their works.*

The above outline is just an example of what may be in a PR release or taken out in a page in a newspaper in your area along with calling local Christians to action. Prior to releasing anything I will engage a publicist.

As a Christian, I am very saddened that you were able to push me to such a defensive mind set. If you only acted in an ethical manner following through on your words and promises, this email and its objectives would not have been conceived or considered, but again, it is the result of your unhonest behavior and your client allowing it. To restate, none of the above should be considered a threat, but a necessary response as a result of you and your clients willingness to support your unethical action enacted by your lies and contempt for me.

# Exhibit G

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID CATANZARO, | ) | CASE NO. 1:13CV996 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SEAMAN GARSON LLC/LLP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On May 2, 2013, Plaintiff David Catanzaro initiated a legal malpractice action against the Defendants by filing a Complaint in this Court. Catanaro alleges that he suffered damages as a result of the Defendants' "failure to properly represent" him in a patent infringement action that he filed in the Middle District of Pennsylvania, *Catanzaro v. Procter & Gamble*, et al, Case No. 3:09cv2231 (the "Pennsylvania Action"). Specifically, Plaintiff alleges that he was induced to enter into a Patent Purchases, Assignment and Settlement Agreement which caused him to alienate his interest in U.S. Patent No. 6, 026,532 ("the '532 Patent") and give up his interest in a continuation patent, U.S. Patent No. 7, 653,959 ("the '959 Patent"). As part of this settlement agreement, Plaintiff alleges that he was advised by his lawyers to agree to "sell and assign all right, title and interest in the '532 Patent to Church and Dwight" and to grant a non-exclusive use license to Proctor & Gamble and Church & Dwight under the '959 Patent.

Plaintiff alleges that after the parties settled the Pennsylvania Action he continued to bring infringement claims in connection with the '959 patent. Plaintiff alleges that in May 2012, while he was negotiating an infringement claim against Elmer's Products, Inc., ("Elmer") he was

informed by Elmer's attorney that he lost his rights in the '959 Patent. According to Catanzaro, the attorney told him that the '959 Patent had a "Terminal Disclaimer" which rendered his '959 Patent unenforceable because it required that the '532 and '959 Patents be jointly owned. Based on what this attorney allegedly told him, Catanzaro filed the instant malpractice case, contending that Defendants never advised him he would lose the right to enforce his '959 Patent when he settled the Pennsylvania Action.

The Court has determined that this case cannot be litigated in its current posture. Plaintiff Catanzaro is seeking damages from his former counsel for the loss of his '959 Patent rights, alleging that his patent is no longer enforceable due to the Terminal Disclaimer. The problem with this claim is that there has been no judicial determination that Catanzaro cannot enforce the '959 Patent. Defendants maintain that the patent is still enforceable, and until recently, Catanzaro has been enforcing it.

Federal courts cannot issue advisory opinions. *See Bowler v. Young,* 55 F. App'x 187, 188 (4th Cir. 2003) ( "In order for a federal court to exercise jurisdiction over an action, the dispute must satisfy the case or controversy requirement of Article III of the Constitution. A case or controversy exists if the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests. [T]he court may not issue what amounts to an advisory opinion on what the law would be under a hypothetical set of facts."). As part of his case, Catanzaro wants this court to invalidate his '959 Patent, or to hold that he has lost the right to enforce it, but there is nobody in this case who is allegedly infringing his patent and maintaining that Catanzaro has lost his right to enforce it. To be entitled to damages against his former counsel, Catanzaro must demonstrate that he has lost the right to enforce his patent due to Defendants' malpractice in

-2-

connection with the Terminal Disclaimer. Since Defendants maintain that Catanzaro has not lost

the right to enforce his '959 Patent, the only way this issue can be decided is through a true

adversarial proceeding, one in which the plaintiff (Catanzaro) seeks to enforce his patent, and the

defendant (someone using Catanzaro's patent) defends on the basis that Catanzaro has lost the

right to enforce it. If Catanzaro prevails in his patent litigation, his malpractice case against his

former attorneys evaporates. If a court should determine in the patent litigation that Catanzaro

cannot enforce the '959 Patent on some basis other than the Terminal Disclaimer, Catanzaro's

malpractice case against his former attorneys also evaporates. If, however, Catanzaro loses his

patent enforcement case on the basis of the Terminal Disclaimer, then he has a basis to refile his

malpractice case against his former attorneys.

Accordingly, this case is dismissed without prejudice. The Court tolls the statute of

limitations as of today for a period of six months (June 12, 2015) to permit Catanzaro to file

a patent enforcement action against an alleged infringer. Should Catanzaro file such an action,

the tolling of the statute of limitations will remain in place until there is a final judgment in the

patent enforcement litigation.


IT IS SO ORDERED.


/s/ Dan A. Polster    December 15, 2014
**Dan Aaron Polster**
**United States District Judge**

-3-