IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : |
| Plaintiff, | : Docket No. 5:17-cv-00403-JLS |
| v. | : **JURY DEMAND** |
| DAVID J. CATANZARO, | : **ORAL ARGUMENT** |
| Defendant. | : **REQUESTED** |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCIPLINARY ACTION

Attorney Douglas Panzer respectfully requests that this Court <u>deny</u> Defendant David J. Catanzaro's Motion for Disciplinary Action and presents this Response in Opposition thereto. Attorney Panzer incorporates herein Plaintiff Dan Schantz Farm & Greenhouses, LLC's (DSF&G) Response in Opposition to Defendant's Motion to Dismiss in this matter.

Based on the frivolous and baseless nature of this Motion for Disciplinary Action, Attorney Panzer, further requests that this Court order Defendant to pay Plaintiff's attorney's fees and costs associated with the preparation and filing of this Response.

## BACKGROUND

Defendant David J. Catanzaro asks this court to exercise its power to impose disciplinary action against Attorney Douglas Panzer, in an effort, and consistent with a pattern of attempting, to intimidate Plaintiff, intimidate Plaintiff's attorneys, dissuade Attorney Panzer's zealous, ethical representation of Plaintiff in this matter, and to increase Defendant's own chances of extracting a financial settlement payment from Plaintiff.

Mr. Catanzaro is a serial litigant and the courts are his weapon of intimidation in seeking financial gain. Defendant has filed at least eight (8) patent infringement suits in Federal District

1

Courts since 2015, and at least two (2) additional patent suits prior to 2015. Defendant was also the plaintiff or counterclaimant in at least four (4) Magisterial Court matters in Lackawanna County since 2010, seeking total damages of nearly $40,000. Defendant has sued his former patent litigation counsel for professional malpractice seeking "damages in excess of $75,000.00" plus attorney's fees; <u>the basis of that malpractice suit being his former counsel's alleged advice leading Defendant to cause the patent in suit to irretrievably expire and become unenforceable in 2011</u>. (See **Exhibit A**, <u>Complaint</u> in *Catanzaro v. Seaman Garson, et. al.*, ¶2). Despite knowing and expressly pleading this fact in his prior litigation, Defendant persists in his attacks and his pursuit of payment.

Defendant's tactics of intimidation and abuse of the courts and the bar further include claims to have "brought a disciplinary action against an attorney representing [his] mother," and now threats of the same against Attorney Panzer, in addition to the filing of this motion. (See **Exhibit B**, email exchange of February 1 – 2, 2017 at p. 1.)

Defendant Catanzaro is angry that Plaintiff did not simply accede to Defendant's desire for income and is angry at an attorney who would represent a client who resists Defendant. Mr. Catanzaro has been extremely vocal about his anger that he has been unmasked and that he is now required to defend the present suit. In fact, Mr. Catanzaro says he is "more than outraged." (See <u>Def.'s Brief in Support of Mot. to Dismiss</u>, ¶23.) He has voiced that one source of this anger is the placement in the public record of the prior art offered in Plaintiff's complaint in this matter, which Mr. Catanzaro heatedly insists is a showing of "contempt" toward him and a direct attack on his ability to demonstrate the value of his patent to others and cause them to pay his settlement demands. This Motion for Disciplinary Action is a manifestation of that anger.

Attorney Panzer respectfully submits that the present motion should be denied as it is baseless, and is filed by Defendant, an experienced and serial litigant, as a means of delay, to increase the costs associated with the present matter, to simply restate and take a second bite at the apple of Defendant's subject matter jurisdiction challenge, and to intimidate Plaintiff and Plaintiff's counsel.

**DEFENDANT CATANZARO**

Defendant is wont to mischaracterize oral communications and to otherwise deceive and divert. From the outset of his contacts in this matter he has employed tactics of subterfuge to gain improper advantage. Defendant refused to give his name or to identify the asserted patent when he first contacted DSF&G and proffered his proposed "Litigation Settlement Agreement" ("LSA") to DSF&G. He maintained his unwillingness to provide this information unless DSF&G agreed to the terms of the LSA – which terms, as discussed below, cannot be accepted by any reasonable party – and unless DSF&G agreed to enter into the LSA without identification of the countersigning party or patent in issue. Defendant next endeavored to evade identification in his telephone communications with Attorney Panzer and to continue to leverage his anonymity in negotiating a financial payoff from Plaintiff. Attached hereto as **Exhibit C** is a partial log of telephone calls between Defendant and Attorney Panzer, evidencing Defendant's abuse of the telephone system for the purposes of avoiding identification, whereby Mr. Catanzaro "spoofs" his caller ID, in violation of the federal Truth in Caller ID Act[1], causing the telephone system to display a false origin telephone number.

---

[1] See Truth in Caller ID Act, 47 U.S.C. §227(e)(1) ("It shall be unlawful for any person within the United States, in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph

3

Mr. Catanzaro's routine denials of fact and his earlier, unfounded accusations that Mr. Panzer had lied to him eventually led Mr. Panzer to insist that all communications between him and Mr. Catanzaro be in writing. (See **Exhibit D**, email exchange of February 3 – 10, 2017.)

Mr. Catanzaro is also a regular practitioner of "sword and shield" strategies. He uses his anonymity as leverage in attempting to extract settlement payments and then claims his accusations of infringement are shielded from the jurisdiction of this Court by that anonymity. Similarly, by the present motion he impugns Attorney Panzer's comportment with the Rules of Professional, while Mr. Catanzaro abuses his own status as a non-lawyer, *pro se* litigant to undertake and threaten to undertake actions that the Rules would prohibit. For example, Mr. Catanzaro threatens to publish a press release or news story claiming, among other things, that DSF&G "is promoting nothing less than pure secular anti Christianity" and "calling local Christians to action" to somehow harm DSF&G and Attorney Panzer's law firm. (See **Exhibit B**, p. 2.) This action would contravene at least PA R.P.C. 3.6, regarding trial publicity. Mr. Catanzaro's above described actions of deceit and false statements regarding his express allegations would also arguably contravene Rules 3.3 (Candor Toward the Tribunal) and 4.1 (Truthfulness in Statements to Others), if they applied to him.

It is against this backdrop, from this position, and upon further false statements that Mr. Catanzaro baselessly asks this Court to discipline Attorney Panzer.

---

(3)(B)."); See also Def.'s Mot. to Dismiss, Exh. D ("I randomly picked the number you seen (sic) on your caller ID to identify with your area[.] I am not located in that area.")

## ATTORNEY PANZER HAS DEALT HONESTLY AND ETHICALLY WITH MR. CATANZARO

Mr. Catanzaro's Motion for Disciplinary Action does not allege with specificity any Rule violation. However, Attorney Panzer is well aware that the Pennsylvania Rules of Professional Conduct state, with respect to dealing with those other than clients or the court:

> In the course of representing a client a lawyer shall not knowingly:
>
> (a) make a false statement of material fact or law to a third person; or
>
> (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid aiding and abetting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

PA ST RPC Rule 4.1.

The explanatory comments to this rule add that "[a] lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts." PA ST RPC Rule 4.1, Comm. 1.

Defendant contends that filing of this action without first consulting with him is "a very strong showing of bad faith" on the part of Attorney Panzer. Attorney Panzer has not, nor has he attempted or intended, to even test the bounds of ethical behavior under the Rules of Professional Conduct. Whereas some cases may test the limits of zealous representation, bordering on (or exceeding) fair dealing, Attorney Panzer has simply advocated for his client as a reasonable attorney would, identified risks associated with the present circumstances, and provided advice and counsel to his client, well within the bounds of the Rules. Mr. Panzer's statements to Mr. Catanzaro regarding the occurrence of a major fire at the headquarters of DSF&G and the resultant disorder have at all times been true. Mr. Panzer never entered into, let alone breached, Mr. Catanzaro's fantasized "agreement or covenant of understanding." And Mr. Panzer's action of filing the present declaratory judgment suit on behalf of DSF&G, without first announcing his intention to do so to a serial litigant who had threatened suit against DSF&G and expressly stated

5

that any suit against DSF&G would be outside of this judicial district is, plain and simply, aimed at resolving the legal dispute while protecting DSF&G's interests in avoiding potentially extensive cost, inconvenience, and disruption resulting from a lawsuit far from the domicile of the parties.

Attorney Panzer has made no false statements and has at all times dealt honestly and honorably with Defendant Catanzaro.

**STATEMENTS REGARDING THE FIRE**

After the parties' initial contacts in this matter, Defendant and Attorney Panzer spoke by telephone on January 18, 2017. While no resolution was reached at that time (and Defendant still remained unidentified), Attorney Panzer indicated that he and DSF&G would consider the LSA and other facts in this matter and provide a response. Defendant sought information regarding the status of DSF&G's decision by email several times thereafter. In an email of January 25, 2017, Mr. Panzer stated in response to Mr. Catanzaro, "[a]s you may know, Dan Schantz had a serious fire earlier this month that caused major damage and disruption. I will have a substantive response for you as soon as possible." Defendant contends that Mr. Panzer's statement represented an unethical or false statement, somehow aimed at misleading Defendant or attempting to confer an improper advantage to Plaintiff. This could not be further from the truth, as a business dependent on its growing and shipping capabilities contended with physically rebuilding, rearranging its operations, dealing with insurers, dealing with contractors, attempting to maintain business as usual – and being forced to discuss potential patent litigation with counsel. Arranging discussions or meetings of any kind was indeed difficult. Mr. Panzer's statements were – at all times – true.

The fire at Dan Schantz Farm & Greenhouses occurred on January 3, 2017. Reporting of the aftermath is illustrative of the effect. (See **Exhibit E**, Media reports of January 6 – February 20, 2017.) Days after the fire, the *Morning Call* reported "Dan Schantz Farm owners believe their

6

losses in Tuesday's fire will be 'many millions' of dollars, as insurance and fire officials continue their investigation." Two weeks after the fire, January 17, GreenhouseGrower.com blog reported "[o]nce workers clear the area, the rebuild will start, with an expected mid-summer completion." Over six weeks from the date of the fire, WFMZ reported, on February 20:

> Rebuilding is underway at Dan Schantz Farm in Lower Milford Township.
>
> A large fire in early January destroyed much of the farm's production and storage areas.
>
> Owner Patrick Flanley said his team started to clean-up and plan the rebuild two days after the fire.
>
> "It's going to go in stages, I'm hoping to have a shell up…by the end of March," he said.
> Flanley said dealing with the aftermath of the fire can be stressful but he's looking forward to the future.

To imply that this loss, upheaval and logistical nightmare – spanning the time before and after the instantiation of this matter – represented anything other than an uncertainty regarding the timing and manner of response available in, and a distraction from, the present (then potential-) litigation is patently irrational. Attorney Panzer represented DSF&G properly and honestly, by receiving Mr. Catanzaro's communications, communicating with DSF&G timely, and responding to Mr. Catanzaro as needed. Mr. Panzer remained responsive to Mr. Catanzaro and, contrary to Defendant's conclusory and unsupported assertions, never stated or implied any misleading or inaccurate fact with respect to the DSF&G fire or its effect. This purported basis of support for Defendant's motion is simply wrong.

## NO AGREEMENT EXISTED BETWEEN PANZER AND CATANZARO, NOR WAS ANY DUTY BREACHED

Defendant next contends that he and Attorney Panzer entered into "[a]n agreement or covenant of understanding," imposing upon Attorney Panzer a duty to Mr. Catanzaro, which was

7

breached, in "bad faith," by the filing of the declaratory judgment complaint in the underlying matter. This is seemingly a contorted theory of contract law that is inapposite here and has no rational basis. No such agreement or covenant existed. No such duty existed. And Attorney Panzer engaged in no improper action in this regard. Mr. Panzer's duty is, and has been, to conduct himself ethically and in accordance with the Rules of Professional Conduct, which he has done, without exception.

Defendant offers that the "agreement or covenant of understanding" arose between Defendant and Attorney Panzer out of a telephone call between them on January 18, 2017. This "agreement," Defendant further theorizes, bore the responsibility that "[a]long with having a Duty (sic) to his client (the Plaintiff) attorney Douglas Panzer has a Duty (sic) to the Defendant," whereby, Attorney Panzer "would recommend to his client (the Plaintiff), to enter into the Litigation Standstill Agreement" proposed by Defendant in the instant matter "and respond back to Defendant." (See Def.'s Mot. Disc. Action., ¶7.)

First, Defendant's own evidence contradicts the utterance of any definitive statement by Attorney Panzer to Mr. Catanzaro. Mr. Catanzaro's email to Attorney Panzer on January 30, 2017 – after the filing of this suit, but prior to formal service – stated "[a]s far as I understand from our conversation, you are making the decision as to weather (sic) or not your client will be signing the stand still (sic) agreement." Def.'s Mot. to Dismiss, Exh. E. Second, even accepting Defendant's version of the conversation as true, a statement that an attorney "would recommend" certain action to his client is not dispositive of any question of fact, nor does it represent a meeting of the minds rising to the level of a contractual obligation. Third, in all discussions between Messrs. Panzer and Catanzaro, Mr. Panzer made clear that the proposed LSA was, by its terms, unacceptable due to the fact that Mr. Catanzaro would be granted an exclusive seven-day period during which he

8

could file suit against DSF&G, while DSF&G would agree not to file any related suit during such time. (See **Exhibit F**, ¶¶2-3.)

Reserving to the fullest extent Plaintiff's attorney/client privilege, attached as **Exhibit G** are Attorney Panzer's contemporaneous notes (partially redacted) of the January 18 telephone call. These include a notation, "wants protection against declaratory relief." Such note is consistent with Attorney Panzer and Mr. Catanzaro's discussion that the LSA was unacceptable due to the unequal non-suit periods and Mr. Catanzaro's indication that, in any acceptable form of an agreement not to sue, he would have to receive assurances against suits like the present one, from which he believed the unacceptable, unequal non-suit period in the proposed LSA protected him. Attorney Panzer would not, and did not, make any agreement during the January 18 telephone call, either for himself or on behalf of DSF&G, regarding execution of the LSA, recommendations regarding assent to the LSA, or otherwise, as the LSA in its proposed form was unacceptable and would have been to the detriment of DSF&G.

Examining all that remains of Defendant's theory, he seems to rest his argument on the idea that Attorney Panzer had an affirmative duty to inform Defendant prior to the filing of a declaratory judgment action against him. As cited above, the Rules of Professional conduct expressly offer that an attorney, acting ethically in representation of his client has <u>no affirmative duty to inform an opposing party of relevant facts</u>. PA ST RPC Rule 4.1, Comm. 1 (emphasis added). To volunteer to a serial litigant, hiding behind a cloak of anonymity, who has accused one's client of patent infringement and stated that he could file suit, which suit would be in an unknown jurisdiction, the fact that the attorney intended to file suit[2], on behalf of his client against

---

[2] The designation of the decision to file suit as a "fact" is likely far outside the bounds of the definition of that word as used in the Rules of Professional Conduct. Such decision is more appropriately regarded as a privileged, strategic decision.

said serial litigant is simply preposterous. Moreover, it would run counter to the best interests of that client and counter to the attorney's <u>actual</u> obligations to his client under the Rules.

With no substance left to Defendant's argument, even giving him every remaining benefit of the doubt, his theory here falls short. Accepting his facts and assuming his legal theory of formation of a "covenant" by the means described is even possible, Defendant and Attorney Panzer would be agreeing that Attorney Panzer would <u>recommend</u> to DSF&G that Defendant and DSF&G would <u>agree</u>. "Under Pennsylvania law, an agreement to agree is not an enforceable contract. 'Where the existence of an informal contract is alleged, it is essential to the enforcement of such an informal contract that the minds of the parties should meet on all the terms as well as the subject matter. If anything is left open for future negotiation, the informal paper cannot form the basis of a binding contract.'" <u>Mongeluzzi v. Pansini & Lessin</u>, 61 Pa. D. & C.4th 52, 69 (Com. Pl. 2001)(citing *Onyx Oils & Resins Inc. v. Moss*, 367 Pa. 416, 420, 80 A.2d 815, 816-17 (1951)). Attorney Panzer and Defendant had no such contract-type meeting of the minds, let alone one sufficiently definite to avoid doubt as to future contingencies. The subject matter – Mr. Panzer's act of recommendation or DSF&G's future agreement – appears to be in question. The certainty of a third party's (DSF&G) acceptance of such recommendation is speculative at best. The theory is simply implausible.

**CONCLUSION**

As discussed at length above, Attorney Panzer has comported himself wholly within the bounds of the Rules of Professional Conduct in the present matter. His actions have been reasonable, honest and aimed solely and diligently at representing Plaintiff. The present Motion for Disciplinary Action is a tactical, ad hominem attack, not based in fact or supported by law.

Mr. Panzer, carefully reviewing all of the circumstances surrounding Defendant's contacts with Plaintiff and with Attorney Panzer on Plaintiff's behalf in this matter, the information provided by Defendant and located through public information, and the associated legal uncertainties presented by all of the above led Mr. Panzer to the reasonable conclusion that the actions of Defendant Catanzaro represented a significant risk that Plaintiff may face imminent suit and that the related risks to Plaintiff and its business relationships warranted filing of the present action. The acts of advising Plaintiff in this regard and filing the instant suit on behalf of Plaintiff are the opposite of wrongdoing on the part of a diligent attorney. Moreover, these actions have been undertaken honestly and respectfully, and Attorney Panzer therefore asks that this Court <u>deny</u> Defendant's Motion for Disciplinary Action and order that Defendant Catanzaro pay Plaintiff's attorney's fees and costs associated with the preparation and filing of this Response.

FITZPATRICK LENTZ & BUBBA, P.C.

Date: 3/30/2017

BY: _____
Douglas Panzer
PA Bar I.D. #203354
Attorney for Plaintiff
4001 Schoolhouse Lane
P.O. Box 219
Center Valley, PA 18034-0219
(610) 797-9000