## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : NO. 5:2017-cv-00403 |
| | : |
| DAVID J. CATANZARO | : THE HONORABLE |
| | : JEFFREY L. SCHMEHL |
| Defendant | : |

**FILED**

APR 1 0 2017

KATE BARKMAN, Clerk
By _____ Dep. Clerk

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RESPONSE
### IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, by its Complaint and First Amended Complaint does not state well-pleaded claims

for declaratory judgment since the patent in suit has never once been raised against Plaintiff by

Defendant to incur a justifiable claim or controversy among the parties. The claims arise out of a

desire by the attorney for the Plaintiff to push a narrative based on hypotheticals and a type of

'Circumstantial Evidence' to unethically persuade the court that an actual controversy exists to

disadvantage the Defendant. Defendant never once demanded any monetary compensation for

infringement of any known patent or patent application prior to or after the filing of this suite.

This Court does not have subject matter jurisdiction over the parties' since an actual controversy

does not exist or has not been established at the time of the filing of this action. The claim is not

ripe. Without subject matter jurisdiction, Defendant asserts that Venue cannot be proper as per

the following: Defendant never provided Plaintiff with a specific product or products they sold

(Accused Products) that infringed any specific patent or patent application. Plaintiff 'alone'

1

develops and plots out a narrative to inject a 'specific' Product in its complaint against
Defendant to assert Venue is proper under 28 U.S.C. § 1391(b). Plaintiff alone provides the court
with the patent at suite to establish a Controversy, all in an effort to somehow punish or
disadvantage the Defendant for reaching out and contacting Plaintiff and trying to open a
dialog.  From the time Defendant first contacted Plaintiff to the filling of this suite, to the filling
of this response, Defendant only provided the following information: That Plaintiff was selling
'Decorative Planters' that Defendant believed had similarities to a patent or patent application in
Defendant's possession. Plaintiff has the burden "to establish that jurisdiction over its
declaratory judgment action existed at, and has continued since, the time the [claim] was filed."
Sierra Applies Scis., Inc. v. Advanced Energy Indus., 363 F.3d 1361, 1373 (Fed. Cir. 2004)
(citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enters. Holdings, Inc., 787 F.2d
572, 575 (Fed. Cir. 1986)). (This citing has been corrected from the original citing as contained
within Defendant's Brief in Support of Motion to Dismiss.)

### Referring to Plaintiff's Response In Opposition To Defendant's Motion To Dismiss page 2.

Defendant takes serious issue with Plaintiff's accretions that Defendant makes a living with
"threats" of litigation and that Defendant employs numerous tactics to complicate and prolong
litigation, of which Defendant's motions presently before the court are but two examples.
Defendant's motions are factual and the exhibits that accompany the motions speak for
themselves. Unlike Plaintiff, which relies on a narrative based on untruths and a type of
circumstantial evidence produced through the public domain, to underhandedly persuade the
court that an actual controversy exists.

Through Plaintiff's response, Plaintiff tries to convince this Court that there is evidence

2

of a justifiable case by citing Defendants blank proposed Litigation Standstill Agreement

(**Exhibit A**). As stated in Defendants Brief in Support, Plaintiff's letter of 1-18-17 (**Exhibit C**)

clearly states throughout the entire letter that Defendant did not provide any information to rise

to a colorable claim which includes "omissions" in the Litigation Standstill Agreement.

   Several excerpts from Plaintiff's 1-18-17 letter state:

1.   We are also in receipt of a proposed "Litigation Standstill Agreement"...

2.   Due to the intentional omission of material information in your telephone call,

     they fail to provide any legal notice to DSFG of a colorable claim.

3.   Should you desire to discuss this matter further, **you must:**

   **1) Identify a valid United States patent you claim to be infringed or patent
   application that you claim would be infringed if issued;**

   **2) Identify, with particularity, the products you allege to infringe such patent;**

   **3) Identify, with particularity, the claims you allege to be infringed and the
   corresponding elements of such product, which you allege constitute
   infringement;**

   4) Identify the true party in interest of your alleged claims; and

   5) Specify your relationship to the true party in interest.

**4. Absent the above information, DSFG does not have proper legal notice of any
claim of infringement or a reasonable ability to evaluate your statements, claims, or
proposal. Unless we receive this information by Friday, January 27, 2017, we will
consider this matter closed.**

   Defendant has never supplied Plaintiff with any of the above information from the first time

Defendant contacted Plaintiff up to the filling of this response. However, Plaintiff uses public

disclosure about the Defendant to create the narrative for this action and has the audacity to try to

convince this court that Defendant is "initiating this dispute in a purposeful effort to divest this

court of jurisdiction and gain leverage for himself over DSF&G"... when the complete opposite

is apparent.

As stated in Defendant's Brief in Support of Motion to Dismiss, Defendant owns several patents along with applications that will be issuing soon. Also, Plaintiff sells many different product lines of 'Decorative Planters.' Because Plaintiff came across litigation that involved Defendant's patent No. 7,653,959, (the '959 patent) does not give Plaintiff legal standing to move forward with the claims asserted against the '959 patent in this action. This court lacks jurisdiction over this matter and this case is completely adverse to Article III of the Constitution, Defendant's right to Due Proses and lacks Standing. Declaratory judgment jurisdiction cannot be proper because an Article III Controversy did not exist at the time the claim for declaratory relief was filed. Defendant restates Plaintiff has the burden "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed." Sierra Applies Scis., Inc. v. Advanced Energy Indus., 363 F.3d 1361, 1373 (Fed. Cir. 2004) (citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enters. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)).

Plaintiff tries to further influence the court with the fact that Defendant has been involved with several infringement actions that took place in 2015. Defendant only was involved with those actions because Defendant believed he was compelled to file them as a direct result of an order handed down by Federal Judge Dan Aaron Polster in Case No. 1:13 CV 996 (Refer to **Exhibit G**). As soon as Case No. 1:13 CV 996 settled, Defendant dismissed each and every one of those referenced lawsuits.

It should be noted that in *In Cisco Systems, Inc. v. Sprint Communications Co.,* LP, Case No. 15-431-SLR (D. Del. Feb. 2016). Declaratory Judgment Action was Dismissed when Cisco Could Not Show Case or Controversy Based on Suits Against Customers and Aggressive

Litigation and Licensing Tactics.

## Referring to Plaintiff's Response In Opposition To Defendant's Motion To Dismiss page 3.

Further in Plaintiff's response, Plaintiff asserts that Defendant acted in an unlawful manner when he provided his first name and a third party phone number during his first two calls to Plaintiff. Defendant categorically rejects this assertion and in NO way intended or committed any fraud, harm or wrongfully obtained anything of value from Plaintiff.

Plaintiff asserts that Defendant did not provide his name and "made the first of his related monetary demands" when he first contacted DSF&G (on 1-11-17). Defendant categorically DENIES plaintiff's statement. Defendant <u>did provide</u> Plaintiff with his first name along with a contact email address during that first call which is apparent within Defendant's **Exhibit B** provided herein and in Defendant's Brief in Support of Motion to Dismiss. Defendant again tries to develop a narrative that a real controversy exists when attorney Panzer states that Defendant "made the first of his related monetary demands" when he first contacted DSF&G (on 1-11-17). This is a complete fabrication of the truth and Mr. Panzer's letter of 1-18-17 confirms this Fabrication by not asserting this substantive fact. Mr. Phanzer desperately attempts to advance this part of the narrative 'as another building block' to persuade the court that this case is justifiable.

Question to consider:

If Defendant did in fact make a monetary demand during the first call to Plaintiff on 1-11-17, wouldn't that extremely substantive fact be included within Mr. Panzers <u>well detailed well outlined letter of 1-18-17?</u> Obviously the answer is 'YES'. Since Defendant never made such a demand it was NOT denoted in Mr. Panzer's letter of 1-18-17 or within any communication prior

5

to the filing of this action. Defendant restates that No Justifiable case or controversy existences between Defendant and Plaintiff at this time or at the time this action was filed and the Court should grant Defendant's Motion to Dismiss. Defendant again restates Declaratory judgment jurisdiction cannot be proper because an Article III Controversy did not exist at the time the claim for declaratory relief was filed.

Plaintiff rightly points out that Defendant conflated several potential Rule 12 defenses within Defendant's Motion to Dismiss. Defendant is asking this honorable court to consider the merits of Defendant's Brief and this response in light of Rule 12 (b)(1), (b)(3) and (b)(6). Although Defendant's Motion refers to the above stated Rule 12 defenses within its description, it does not specifically identify each by number or rule. This was an inadvertent mistake made by litigant.

## Referring to Plaintiff's Response In Opposition To Defendant's Motion To Dismiss page 4.

### This Court Does Not Properly have Subject-Matter Jurisdiction.

The parties here do not have clear; adverse legal interests; of sufficient immediacy and reality. Defendant never once provided Plaintiff with the information requested in Plaintiff's letter of 1-18-17. The term 'decorative planters' is a generic term used by Defendant to inform Plaintiff that they sell decorative planters which have similarities to a patent or patent application in Defendant's possession. Plaintiff references the identified term decorative planters in Plaintiff's 1-18-17 letter (**Exhibit C**). Further in Plaintiff's 1-18-17 letter Plaintiff demands the following Information from Defendant:

"*Identify, with particularity, the products you allege to infringe such patent;*" (emphasis on the word "particularity"). No such product of particularity was ever identified by Defendant. To restate, Plaintiff sells many different product lines of 'Decorative Planters.'

6

In *3M Company v. Avery Dennison Corp.*, No. 11-1339 (Fed. Cir. Mar. 26, 2012), The court offered as a safe harbor a suitably vague letter that "merely" identifies the patent and the other party's "product line," i.e., not a specific product. This "safe harbor' language will not trigger a declaratory Judgment action.

In this instant matter, Defendant never even provided Plaintiff the patent or patent application at issue and only provided the Plaintiff a general "product line" description when stating 'decorative planters.' In view of the 3m case alone this case should be dismissed.

## Referring to Plaintiff's Response In Opposition To Defendant's Motion To Dismiss page 5.

Defendant never provided Plaintiff with an infringing patent or patent application at any time prior to the filling of this action or thereafter. Defendant only stated on 1-11-17 that Plaintiff was selling decorative Planter products that Defendant believed had similarities to a patent or patent application in possession by Defendant. When Defendant stated in his Brief in Support of Motion to Dismiss that "Defendant never made a demand of any kind" from Plaintiff, Plaintiff asserts that this statement is a "blatantly false statement". Defendant asserts that this statement is true and accurate and refers specifically to the time 'prior to the filling of this suite'. Plaintiff asserts that Defendant "is presently demanding recompense from DSF&G for alleged acts of infringement". Defendant adamantly DENIES this statement. Defendant is NOT presently demanding recompense from DSF&G for alleged acts of infringement as this is another fabrication made up by Attorney Panzer. However, Defendant is currently demanding compensation mainly for 'Pain & Suffering' as a direct result of the filling of this frivolous lawsuit by Mr. Panzer and for his 'Bad Faith' conduct associated thereto. (Defendant suffers from health issues and has been taking lifesaving medication on a daily bases since 2013-2014)

7

Again, Defendant has made this Pain & Suffering settlement demand only AFTER this suit was filed and the demand was first made in Defendant's email to Plaintiff of 2-2-17 (**Exhibit F**) denoted herein and in Defendant's Brief in Support of Motion to Dismiss. THE SETTLEMENT DEMAND WAS MADE BASED ON A DIRECT REQUEST BY ATTORNEY PANZER. As denoted in Defendant's Brief in Support of Motion to Dismiss, Defendant was completely caught off guard when Mr. Panzer filed this baseless action in bad faith after entering into the oral agreement and covenant of understanding with Defendant. After finding out about the filing of this action, Defendant expressed his complete disappointment with Mr. Panzer during a phone call on 2-1-17, and Mr. Panzer made several telling statements as to why he really filed this action, as already denoted within Defendant's Brief in Support of Motion to Dismiss. What has not been stated in Defendant's brief is that Mr. Panzer further stated the following several times within the 2-1-17 conversation: "David you want money...You want money right?...Just let me know how much money you want." Mr. Panzer's instruction led Defendant to submit a demand to Plaintiff as stated and redacted in the 2-2-17 email (**Exhibit F**). Defendant voluntarily marked the bottom section of that email FRE 408 **'only' as a result of this litigation and Mr. Panzer's instruction to reveal a settlement amount.** Plaintiff continues to try to deceive this court in furtherance of developing a controversy, by accreting Defendant's communications were marked FRE 408 **PRIOR to the filing of this litigation** and that settlement demands are based on infringement of the '959 patent. Plaintiff states: Defendant marked communications with FRE 408 because of "his subjective contemplation of litigation..." and "DSFG faces a real likelihood of imminent suit." Again, this accusation is clearly being made to the court by Plaintiff to persuade the court that a defined controversy existed between the parties prior to the filing of this action. Defendant adamantly DENIES any such

communication exists. There is NO evidence to support Plaintiff's untruthful desperate assertion. **Defendant demands Plaintiff produce communications marked FRE 408 prior to the filing of this suite.** This is an extremely important 'documented material fact' being accreted by plaintiff's attorney and the court should demand the production of such a document if indeed it exists . When Defendant made his demand within the 2-2-17 email, Defendant voluntarily marked the bottom section with FRE 408. Since this communication was marked FRE 408 voluntarily, Defendant would like to provide the court with the unreacted version of that document to support the fact that Defendant's settlement demand is not based on infringement of the '959 patent, hut rather on pain and suffering as outlined above.

It should be further noted that Plaintiff tried to 'Bait' Defendant into responding to an email regarding settlement dated 2-1-17. Plaintiff sent the stated email within an hour following the phone conversation of 2-1-17. As stated above, further during the a call on 2-1-17 Mr. Panzer stating several times: "David you want money...You want money right?...Just let me know how much money you want." Mr. Panzer concluded the conversation by stating why he believed the '959 patent was unenforceable. Mr. Panzer then sent the first of two emails to Defendant. **Exhibit H** refers to the first email Plaintiff sent that day. Defendant responded with an email **(Exhibit I)** denoting the reasons why the '959 patent was enforceable. This email Defendant sent Plaintiff on 2-1-17 regarding the enforceability of the '959 patent in NO WAY established or establishes that the '959 patent is the patent of contention as claimed in this instant action filed on 1-27-17. Defendant never asserted the '959 patent against the Plaintiff and he certainly did not assert it against Plaintiff within the 2-1-17 email. Defendant only addressed the enforceability question that plaintiff posed and Defendant would have answered the same question posed by any individual and answered it in the same like manner via email. After

9

Plaintiff received Defendant's email (**Exhibit I**) Plaintiff then forwarded the second stated email

on 2-1-17 (**Exhibit J**), which states:

1) During what period do you believe the '959 patent was valid and enforceable?

2) During what period are you alleging infringement against Dan Schantz Farm & Greenhouses?

3) What do you believe is a reasonable royalty during that period.

As stated, Plaintiff attempts to bate Defendant with this email and to acquire admissions for the

three statements stated above, as contained within Plaintiff's second email (**Exhibit J**). As a

result, Defendant emailed the 2-2-17 email (**Exhibit F**) denying the above three admissions and

demanding settlement for pain and suffering as a direct result of the filling of this frivolous

lawsuit by Mr. Panzer and for his 'Bad Faith' conduct associated thereto.

## **Referring to Plaintiff's Response In Opposition To Defendant's Motion To Dismiss page 6.**

Plaintiff asserts that "A patentee's prior enforcement litigation is a factor supporting

jurisdiction where a patentee has directly asserted infringement allegations against a declaratory

judgment plaintiff." (cases omitted). Again, Defendant has never "directly asserted

infringement' of the '959 patent against the Plaintiff and Defendant never made a statement prior

to or after the filling of this action stating Defendant "has evidence that...DSFG infringed

his ('959) patent." Defendant again restates Plaintiff has the burden "to establish that

jurisdiction over its declaratory judgment action existed at, and has continued since, the time the

[claim] was filed." Sierra Applies Scis., Inc. v. Advanced Energy Indus., 363 F.3d 1361, 1373

(Fed. Cir. 2 004) (citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enters. Holdings,

Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)).

Defendant submits to the court that Defendant provided ALL substantive written

communications between Plaintiff and Defendant that were made between the parties prior to
Plaintiff filing this action on 1-27-17.

It clearly is Plaintiff's attorney who undertakes contortions and gymnastics in an effort to
maintain jurisdiction of this court. It is because of conduct demonstrated by Mr. Panzer, that a
Litigation Standstill Agreement should be entered into 'prior' to any substitutive discussions
with respect to patents and issuing applications and many attorneys agree and have published
writings regarding the usefulness and fairness of said agreements. Plaintiff again references
Defendant's communications under FRE 408 to continue to press upon the court the made-up
controversy between the parties. Again, Defendant demands Plaintiff produce communications
marked FRE 408 prior to the filing of this suit and for infringement of the '959 patent.

Plaintiff's 1-18-17 letter is the 'corner stone document' that sums up the facts or lack there of
with respect to this matter. NO further information as solicited within plaintiff's 1-18-17 letter,
was ever provided by Defendant to Plaintiff prior to the filing of this action, whereby NO
changes in the factual information contained within Plaintiff 1-18-17 letter establishes a
controversy or jurisdiction . Plaintiff's attorney makes completely false statements when he
asserts that during a phone call on 1-18-17 Defendant "set into motion accusations, demands of
payment, identification of the patent in suit, ongoing…"

Again, I ask this honorable court to demand the Plaintiff provide 'documented evidence' as
provided by the Defendant to the plaintiff that shows Defendant provided the following
information prior to the filing of this action of 1-27-17 as follows:

1. A communications from the Defendant after Plaintiff's 1-18-17 letter that Defendant provided
   Plaintiff the '959 patent as the patent in controversy

2. A communication from Defendant after Plaintiff's 1-18-17 letter that Defendant identified

11

with 'particularly' the specific decorative planter products that infringed the '959 patent

3.  A communication from Defendant prior to or after Plaintiff's 1-18-17 letter wherein
    Defendant demands payment for infringement of the '959 patent.

4.  A communication from Defendant prior to or after Plaintiff's 1-18-17 letter wherein
    Defendant Identifies, with particularity, the claims alleged to be infringed and the
    corresponding elements of such product, which allege constitute infringement.

Plaintiff cannot provide the above information provided by Defendant prior to the filling of this
action on 1-27-17 to establish the claim, nor could Plaintiff provide any of the said information
any time thereafter. All Plaintiff offers is a blank Litigation Standstill Agreement wherein
Plaintiff admits there is significant "omissions to establish a colorable claim", public discloser
information for the bases of the filing, and a narrative which he attempts to weave both together.
This court does not have jurisdiction over this matter and/or the claims are not 'ripe'. Defendant
again submits that this case is completely adverse to Article III of the Constitution and
Defendant's right to Due Proses along with over all standing. Defendant's Motion to Dismiss
should be generously granted by this honorable court.

## Referring to Plaintiff's Response In Opposition To Defendant's Motion To Dismiss page 7.

Plaintiff has entered into an "Oral agreement or covenant of understanding" with Defendant as
outlined in Defendant's Brief in Support of Motion to dismiss and in Defendant Motion for
Disciplinary Action. During the conversation of 1-18-17 attorney Panzer agreed, promised and
reassured Defendant that he would recommend to his client (the Plaintiff), to enter into the
Litigation Standstill Agreement and respond back to Defendant with respect to his clients
response to entering into said agreement. In return, Defendant would disclose his full legal name

12

prior to Plaintiff signing said agreement and after the agreement was signed, Defendant then would fully disclose all pertinent information regarding the matter with the goal of Defendant and Plaintiff reaching a resolution without having any legal entanglements. Mr. Panzer states that Defendant's email of 1-30-17 (contained within **Exhibit E**) is inconsistent with the above stated agreement when Defendant states in that email: "as far as I understand from our conversation, you are making the decision as to whether or not your client will be signing the stand still agreement." Defendant adamantly DENIES this accretion. This email was sent 12 days after the parties entered into the above stated agreement and Defendant began to question the integrity of Mr. Panzer, hence the stronger tone. Mr. Panzer deliberately leaves out the last several words of the above quoted statement. Defendant includes thoses words as follows:

*"as far as I understand from our conversation, you are making the decision as to whether or not your client will be signing the stand still agreement along with reviewing the materials **and** providing your recommendation.* "* (Emphases on the words 'providing your recommendation' )

This email is completely consistent with the facts provided with regards to the oral agreement or covenant of understand reached between the parties. The lines of communication exchanged within the emails of **Exhibit E** are undeniable facts which strongly support the oral agreement between the parties as outlined by Defendant. Defendant provides the court with the following overview of those communications.

1. Email by Defendant to Mr. Panzer 1-23-17 "Several days have passed since our phone communication, at this time has your client reconsidered moving forward with the standstill agreement?"

2. Response Email by Mr. Panzer 1-23-17  "We are discussing the matter and will be back to you Shortly"

3.  Email by Defendant to Mr. Panzer 1-25-17 "Please provide me with an update today."

4. Response Email by Mr. Panzer 1-25-17  "As you may know, Dan Schantz had a serious fire earlier this month that caused major damage and disruption. I will have a substantive response for you as soon as possible".

5. Email by Defendant to Mr. Panzer 1-30-17 "As far as I understand from our conversation, you are making the decision as to weather or not your client will be signing the stand still agreement along with reviewing the materials and providing your recommendation. Please let me know what time you are available to speak today."

6. Email by Defendant to Mr. Panzer 2-1-17 "At this time, please provide me with an update per your client entering into the standstill agreement."

Based on the undeniable Facts stated above, Defendant had more than a reasonable 'Reliance' on Plaintiff to follow through on the stated oral agreement as the emails by the Plaintiff clearly state: "We are discussing the matter and we will be back to you shortly" and "I will have a substantive response for you as soon as possible". To further prove the evasiveness of Mr. Panzer, Mr. Panzer uses the fire sustained by his client the Plaintiff, to kept Defendant at bay while all along preparing to file this suit and filing it just two days after sending the above stated email of 1-25-17. Mr. Panzer admits he has already further discussed the matter with his client when he states in his 1-23-17 email the following: "We are discussing the matter and will be back to you shortly" (emphases on "We are discussing the matter") Fact: Mr. Panzer reached his client and discussed the matter on 1-23-17. This whole charade and act clearly crosses the line of ethics and when Defendant ponders on this fact, he truly believes that Mr. Panzer has shown and established 'Contempt' for Defendant. This is the main reason why Defendant is asking this court for Exemplary Damages and for this court to apply discipline to attorney Panzer. It is

14

Defendant that urges this court to see the clear misleading nature of Mr. Panzer. It is Mr. Panzer who uses all available tactics as sword or shield, as it suits him. As outlined over and over herein, Mr. Panzer twist and contorts Plaintiff's pleadings in an all-out effort to maintain the unjust jurisdiction of this court. Jurisdiction is clearly and irrefutably NOT demonstrated here.

"Federal declaratory judgment is not a prize to the winner of a race to the courthouse."

(Federal Insurance Co. v. May Department Stores, 808 F. Supp. 347, 350 (S.D.N.Y. 1992).

## Referring to Plaintiff's Response In Opposition To Defendant's Motion To Dismiss page 8.

Venue cannot be proper since Defendant never asserted the '959 patent against Plaintiff. Defendant never provided Plaintiff with a specific product or products they sold (Accused Products) that infringed any specific patent or patent application. Plaintiff 'alone' develops and plots out a narrative to inject a 'specific' Product in its complaint against Defendant to assert Venue is proper under 28 U.S.C. § 1391(b). Defendant reasserts that Plaintiff fails to state a valid claim since the '959 patent has never been accreted against Plaintiff.

### Additional Law That Applies Under Rule 12(b)(1)

Under Rule 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction may be raised any time. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004). See also LibertyMut. Ins. Co. v. Ward TruckingCorp., 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of theirsubject matter jurisdiction and to decide the issue sua sponte.") Rule 12(b)(1) challenges are either facial or factual attacks. Kestelboym v. Chertoff, 538 F. Supp. 2d 813, 815 (D.N.J. 2008). "A facial attack questions the sufficiency of the pleading," and "[i]n reviewing a facial attack, a trial court accepts the allegations in the complaint astrue." Id. However,"when a court reviews a complaint under a

15

factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Id. See also Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

In evaluating a Rule 12(b)(l) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891. See also Carpet Group Int'l, 227 F.3d at 69. "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891. The plaintiff has the burden of proving that jurisdiction does in fact exist. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006) (quoting Mortensen, 549 F.2d at 891). In addition, the plaintiff must demonstrate that a controversy existed when the suit was filed and that the controversy continues to exist throughout the litigation. See Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992).

Generally, the trial court should not allow "its consideration of jurisdiction to spill over into a determination of the merits of the case." Kestelboym, 538 F. Supp. 2d at 815 (quoting Dugan v. Coastal Indus., Inc., 96 F. Supp. 2d 481, 483 (E.D. Pa. 2000)). However, a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) based on the legal insufficiency of a claim "is proper. . . when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

## CONCLUSION

For the reasons set forth above and included within Defendant's Motion to Dismiss and Brief in Support of Motion to Dismiss, Defendant David J Catanzaro has demonstrated that: this Court DOES NOT hold proper subject matter jurisdiction over this action since Plaintiff FAILS to establish a controversy exists between the parties. No events or omissions have been established in this judicial district to render Venue is proper. Defendant respectfully requests dismissal on the merits or lack thereof and asks this honorable court for exemplary damages as a result of the Bad Faith actions taken by plaintiff's attorney Douglas Panzer.

Respectfully submitted,                              Dated: April 8, 2017

*s/ David J. Catanzaro*
David J. Catanzaro
Defendent *Pro Se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 5:2017-cv-00403 |
| DAVID J. CATANZARO | : | THE HONORABLE JEFFREY L. SCHMEHL |
| Defendant | : | |

## Proposed ORDER

Now, this _____ day of _____, 2017, the Honorable Jeffery L. Schmehl,

having considered Defendant David J. Catanzaro's Motion to Dismiss,  and the parties' briefs

and the arguments in relation thereto, Defendant's Motion to Dismiss is GRANTED.


SO ORDERED


_____
Honorable Jeffrey L. Schmehl

## CERTIFICATE OF SERVICE

I, David Catanzaro, hereby certify that a true and correct copy of the forgoing Defendant's

Response in Opposition to Plantiff's Response in Opposition to Defendant's Motion to Dismiss

was sent by First Class Mail to the United States District Court for the Eastern District of

Pennsylvania and served via First Class Mail upon Plaintiff this 8th day of April 2017

to the following person:


DAN SCHANTZ FARM &
GREENHOUSES, LLC
c/o DOUGLAS PANZER
FITZPATRICK LENTZ & BUBBA
4001 Schoolhouse Lane
Center Valley, PA 18034


                                            s/ David J. Catanzaro
                                            David J. Catanzaro

# EXHIBIT A

# LITIGATION STANDSTILL AGREEMENT

This Litigation Standstill Agreement ("Agreement") is entered into and effective as of January 13, 2017 ("Effective Date") by and between Dan Schantz Farm & Greenhouses, LLC ("DSFG"), having a principle place of business at 8025 Spinnerstown Road, Zionsville, PA 18092 and _____, Patent Owner ("Owner") having a principle place of business at _____ (hereinafter sometimes individually referred to as "Party" and collectively referred to as the "Parties").

## Recitals

A.      Whereas Owner has evidence that Owner asserts establishes that DSFG infringed his patent (patent no. _____, the "Patent") with one or more products;

B.      Whereas DSFG denies infringing Owner's patent

C.      Whereas Owner and DSFG desire to have full and frank discussions regarding Owner's claim prior to the commencement of patent infringement litigation to avoid such litigation if possible ("Discussions");

D.      Whereas Owner and DSFG desire to preserve the litigation *status quo* for a short period of time to enable such Discussions;

### Now therefore the Parties agree as follows:

1.      In consideration for the mutual promises set forth herein, Owner and DSFG agree to a discussion period from the Effective Date of this Agreement through and including March 13, 2017 ("Discussion Period").

2.      DSFG agrees that it will not file any action against Owner's Patent or file any lawsuit against Owner for declaratory relief or otherwise until fourteen (14) calendar days after the expiration of the Discussion Period.

3.      Owner in consideration for DSFG agreeing to the Discussion Period, agrees that Owner will not file any lawsuit against DSFG for patent infringement or otherwise until seven (7) calendar days after the expiration of the Discussion Period.

4.      The Parties agree that the making of this Agreement shall not be used by either party for purposes of establishing venue or jurisdiction in the event the Parties are unable to resolve their differences without litigation.

5.      DSFG agrees that during the Discussion Period, and prior to any active lawsuit, it will not disclose the Patent, the Patent number, licenses and the name of Owner/inventor to any third party, other than its financial and legal advisors.

7.    The Parties hereby agree that this Agreement shall constitute, for the Party breaching this Agreement, a Stipulation for Dismissal Without Prejudice for any action filed in violation of this Agreement.

8.    This Agreement shall be governed by Pennsylvania law without regard to its conflict of law principles.

9.    This Agreement shall constitute the entire understanding between the Parties and supersede, according to their terms, all prior-understandings, whether oral or written, of the Parties hereto relating to the subject matter herein and cannot be changed or terminated orally.

10.   The Parties shall execute any such other documents as may be reasonably required or as may reasonably be necessary to effectuate any other requirement or agreement herein.

11.   This Agreement may be executed in several counterparts, each of which shall be deemed an original.

12.   Execution of this Agreement may be effected by facsimile, pdf or other electronic transmission.

Dan Schantz Farm & Greenhouses, LLC:

Signature:_____    Date: _____

Printed Name:_____

Title:_____

Patent Owner

Signature:_____    Date: _____

Printed Name:_____

# EXHIBIT B

3/6/2017                                          Gmail - Patent Infringement Matter

 Gmail                                    David mts <davemts1213@gmail.com>

## Patent Infringement Matter

**David Joseph** <davemts1213@gmail.com>                     Fri, Jan 13, 2017 at 1:46 PM
To: info@danschantz.com

Dear Lisa Myers,

Attached please find the Litigation Standstill Agreement I stated I would be sending per our conversation on
Wednesday.

Once the agreement is signed by DSFG, I will fully execute and will provide all pertinent information.

I look forward to receiving the signed agreement at your earliest convenience.

Regards,

David

📎 **DSFG_LITIGATION_ STANDSTILL_ AGREEMENT.pdf**
   83K

# EXHIBIT C



## FITZPATRICK LENTZ & BUBBA
ATTORNEYS AT LAW

FITZPATRICK LENTZ & BUBBA, P.C. · 4001 SCHOOLHOUSE LANE· PO BOX 219· CENTER VALLEY, PA 18034-0219
STABLER CORPORATE CENTER · PHONE: 610-797-9000 · FAX: 610-797-6663 · WWW.FLBLAW.COM

Edward J. Lentz

Joseph A. Fitzpatrick, Jr.

Joseph A. Bubba

Timothy D. Charlesworth

Douglas J. Smillie*

Emil W. Kantra II

Joseph S. D'Amico, Jr.*

Michael R. Nesfeder

Catherine E. N. Durso

Jane P. Long

Erich J. Schock

James A. Bartholomew

Jacob M. Sitman*

Steven T. Boell

Joshua A. Gildea

Marie K. McConnell*

Anthony S. Rachuba, IV*

Karl H. Kline

Thomas J. Schlegel*

Barbara Zicherman†

Haraleen D. Shields

Abigail M. Maron

Colin J. Kaofet

Gretchen L. Geisser*

Kenneth R. Charette*

Mallory J. Sweeney*

Veronica H. DeAngelo

John A. Weiss

Peter E. Iorio

† Also admitted in New York
* Also admitted in New Jersey
# Registered Patent Attorney

James G. Kellar
1927-2003

Douglas Panzer* #
Of Counsel
Intellectual Property Law

Albertina D. Lombardi*
Kathleen M. Mills
Of Counsel

E-mail:  dpanzer@flblaw.com
Direct Dial: 610-797-9000 ext 390

January 18, 2017

**VIA EMAIL (davemts1213@gmail.com)**
"David"

### RE: Alleged Patent Infringement

Dear Sir:

This firm represents Dan Schantz Farm & Greenhouses, LLC ("DSFG").  DSFG has informed us that you contacted them by telephone on January 11, 2017, alleging that certain decorative planters sold by DSFG infringe a patent.  We are also in receipt of a proposed "Litigation Standstill Agreement" that you delivered to DSFG by email on January 13, 2017, which purports to propose negotiations related to such allegation. Through your telephone call, email, and by the substance of the proposed agreement, however, you have expressly declined to identify yourself, any patent or patent application, any rights holder of a patent or patent application, or any features you allege to be claimed in any such patent or patent application.

Due to the intentional omission of material information in your telephone call, email, and the proposed Litigation Standstill Agreement, they fail to provide any legal notice to DSFG of a colorable claim.  Furthermore, these communications are insufficient to permit DSFG to evaluate your allegation, or to properly consider or agree to the terms of your Litigation Standstill Agreement.  Should you desire to discuss this matter further, you must:

1) Identify a valid United States patent you claim to be infringed or patent application that you claim would be infringed if issued;

2) Identify, with particularity, the products you allege to infringe such patent;



FITZPATRICK LENTZ & BUBBA
ATTORNEYS AT LAW

January 18, 2017
Page 2

    3) Identify, with particularity, the claims you allege to be infringed and the corresponding elements of such product, which you allege constitute infringement;

    4) Identify the true party in interest of your alleged claims; and

    5) Specify your relationship to the true party in interest.

       Absent the above information, DSFG does not have proper legal notice of any claim of infringement or a reasonable ability to evaluate your statements, claims, or proposal.  Unless we receive this information by Friday, January 27, 2017, we will consider this matter closed.

                               Very truly yours,

                               Douglas Panzer

# EXHIBIT E

 **Gmail**                                         David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts** <davemts1213@gmail.com>                          Mon, Jan 23, 2017 at 11:29 AM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

Several days have passed since our phone communication, at this time has your client reconsidered moving forward
with the standstill agreement?

Thanks,
David
[Quoted text hidden]

3/8/2017                                      Gmail - Dan Schantz Farm & Greenhouses, LLC

 Gmail                                            **David mts <davemts1213@gmail.com>**

## Dan Schantz Farm & Greenhouses, LLC

**Douglas Panzer** <dpanzer@flblaw.com>                         Mon, Jan 23, 2017 at 12:23 PM
To: David mts <davemts1213@gmail.com>

We are discussing the matter and will be back to you shortly.


**From:** David mts [mailto:davemts1213@gmail.com]
**Sent:** Monday, January 23, 2017 11:30 AM
**To:** Douglas Panzer <dpanzer@flblaw.com>
**Subject:** Fwd: Dan Schantz Farm & Greenhouses, LLC

[Quoted text hidden]
[Quoted text hidden]

 Gmail                                         David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts** <davemts1213@gmail.com>                              Wed, Jan 25, 2017 at 11:51 AM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

Please provide me with an update today.

Thanks,
David
[Quoted text hidden]

 Gmail

David mts <davemts1213@gmail.com>

---

## Dan Schantz Farm & Greenhouses, LLC

---

Douglas Panzer <dpanzer@flblaw.com>                             Wed, Jan 25, 2017 at 6:01 PM
To: David mts <davemts1213@gmail.com>

As you may know, Dan Schantz had a serious fire earlier this month that caused major damage and disruption. I will have a substantive response for you as soon as possible.


From: David mts [mailto:davemts1213@gmail.com]
Sent: Wednesday, January 25, 2017 11:51 AM
To: Douglas Panzer <dpanzer@flblaw.com>

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

 **Gmail**

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts** <davemts1213@gmail.com>                                    Mon, Jan 30, 2017 at 2:26 PM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

Per the phone message I recently left.

I was not aware of the Fire.

As far as I understand from our conversation, you are making the decision as to weather or not your client will be signing the stand still agreement along with reviewing the materials and providing your recommendation.

Please let me know what time you are available to speak today.

Thanks,
David


[Quoted text hidden]

Gmail - Dan Schantz Farm & Greenhouses, LLC

 Gmail                                                     **David mts <davemts1213@gmail.com>**

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**                                    Wed, Feb 1, 2017 at 11:45 AM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

At this time,  please provide me with an update per your client entering into the standstill agreement.

Thanks,
David
[Quoted text hidden]

# EXHIBIT F

 Gmail

David mts <davemts1213@gmail.com>

---

## Dan Schantz Farm & Greenhouses, LLC v. Catanzaro - Expiration of Unassigned Patent

**David mts** <davemts1213@gmail.com>                                    Thu, Feb 2, 2017 at 3:39 PM
To: Douglas Panzer <dpanzer@flblaw.com>
Cc: Dan Schantz Farm <info@danschantz.com>

Mr. Panzer,

I cannot tell you how upset, angry and disheartening I still am to find out that you on behalf of you client filed a DR action  against me when I failed to provide any legal notice to your client of a colorable claim as stated in your letter of 1/18/17.  NO oral or written controversy (as defined by law) existed between me or your client at the time you filed the DR action or thereafter. Also, what further enraged me is that from our phone conversation of 1.18.17 I was of the belief that there was a a good faith understanding between us that you would be providing a further answer   per your client entering into the standstill agreement and I would in return provide you with my full name and any other reasonable consideration to move forward with the standstill agreement. Being an officer of the court, you blatantly lied and filed the DR action continuing to "Play me" as you sent me emails stating the Fire your client sustained was the reason for the delay reconnecting with me. The clear representations you made on the 18th over the phone are affirmed within your email responses. Your emails and letter will be apart of my response to the court. Your letter is clear and correct, but your follow up emails will support your true intention to deceive which is  adverse to the Rules of Professional Conduct and Rules of Civility. To further show your lack of integrity, on 2/1/17 I called you after seeing the filed DR action online and I stated among other things, that "you really tried to got one over on me...you're the man" and your response in a most proud underhanded tone was: "I am the man."

If we cannot resolve this matter prior to me answering the complaint, I will be asking the court to dismiss the action based on the fact that Personnel Jurisdiction is not proper and Declaratory Judgment Jurisdiction is not proper. The bad faith you displayed as an officer of the court will further support my position. I will also be filling a disciplinary action with the disciplinary board regarding your False Representations along with the option of publishing it. (I have previously brought a disciplinary action against an attorney representing my mother and that attorney hired a firm to represent him in the matter but he ended up receiving discipline. From that experience, I have established direct contact with one of the boards head case attorneys. (I will provide you with a letter denoting the discipline that attorney received if you like.)

1.  I never stated how any product of your client infringed on any identified patent

2. I never identified any patent that your client was infringing.

3. I never asked for a licensing fee for any identified patent

4. I never stated that a lawsuit would be filed identifying a specific US patent.

5. I never identified who I was.

6. Your letter of 1/18/17 clearly states that I failed to provide any legal notice to your client of a colorable claim

Your client has not endured any of the following to substantiate a Controversy:

    1. The plaintiff must have suffered an injury in fact.

    2. There must be a causal connection between the injury and the defendant's conduct complained of.

    3. It must be "likely" that the injury would be redressed by a favorable decision.

Because of your deception and lies and your clients willingness to go along with it, I must consider releasing a press release and or taking out a page in a paper in your area about your client and how you went about representing them in this matter. I may also visit local news or radio stations to inform viewers in your area about my story and how to avoid patent traps such as Declaratory relief actions. I'm sure with the advent of the show shark tank people in your area would love to learn how a Christian PA native with a high school diploma married with three little girls was able to license with many international companies.

The PR release and newspaper write up may contain the following:

1. The head line may read:

    Several Weeks after major fire, Don Schantz Farm & Greenhouses, refuses olive branch extended by Christian Inventor and prefers litigation.

2. Douglas Panzer of Fitzpatrick Lentz & Bubba, P.C. agrees to open a dialog with christian inventor, makes promises in good faith to continue to communicate with him, but them immediately files suit against him. "Douglas Panzer acted in such a low manner of morality, he actually used the fire Don Schantz Farm & Greenhouses sustained in January as an excuse to delay responding to me so he could, at the same time file suit against me."

3. The website of Dan Schantz Farm & Greenhouses, LLC claims to be *"dedicated to providing a safe Christian environment for all employees with morality and honesty as the framework for all present and future plans."*

By allowing and condoning the immorality of Douglas Panzer and his blatant lies. Dan Schantz Farm & Greenhouses is promoting nothing less than pure secular anti Christianity and should take down their Christian statement... *for you will know them by their works.*

The above outline is just an example of what may be in a PR release or taken out in a page in a newspaper in your area along with calling local Christians to action. Prior to releasing anything I will engage a publicist.

As a Christian, I am very saddened that you were able to push me to such a defensive mind set. If you only acted in an ethical manner following through on your words and promises, this email and its objectives would not have been conceived or considered, but again, it is the result of your unhonest behavior and your client allowing it. To restate, none of the above should be considered a threat, but a necessary response as a result of you and your clients willingness to support your unethical action enacted by your lies and contempt for me.

Redacted

# EXHIBIT G

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **DAVID CATANZARO,** ) | **CASE NO. 1:13CV996** |
| ) | |
| **Plaintiff,** ) | **JUDGE DAN AARON POLSTER** |
| ) | |
| **vs.** ) | **ORDER** |
| ) | |
| **SEAMAN GARSON LLC/LLP, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

On May 2, 2013, Plaintiff David Catanzaro initiated a legal malpractice action against the

Defendants by filing a Complaint in this Court. Catanaro alleges that he suffered damages as a

result of the Defendants' "failure to properly represent" him in a patent infringement action that

he filed in the Middle District of Pennsylvania, *Catanzaro v. Procter & Gamble,* et al, Case No.

3:09cv2231 (the "Pennsylvania Action"). Specifically, Plaintiff alleges that he was induced to

enter into a Patent Purchases, Assignment and Settlement Agreement which caused him to

alienate his interest in U.S. Patent No. 6, 026,532 ("the '532 Patent") and give up his interest in a

continuation patent, U.S. Patent No. 7, 653,959 ("the '959 Patent"). As part of this settlement

agreement, Plaintiff alleges that he was advised by his lawyers to agree to "sell and assign all

right, title and interest in the '532 Patent to Church and Dwight" and to grant a non-exclusive

use license to Proctor & Gamble and Church & Dwight under the '959 Patent.

Plaintiff alleges that after the parties settled the Pennsylvania Action he continued to

bring infringement claims in connection with the '959 patent. Plaintiff alleges that in May 2012,

while he was negotiating an infringement claim against Elmer's Products, Inc., ("Elmer") he was

informed by Elmer's attorney that he lost his rights in the '959 Patent. According to Catanzaro, the attorney told him that the '959 Patent had a "Terminal Disclaimer" which rendered his '959 Patent unenforceable because it required that the '532 and '959 Patents be jointly owned. Based on what this attorney allegedly told him, Catanzaro filed the instant malpractice case, contending that Defendants never advised him he would lose the right to enforce his '959 Patent when he settled the Pennsylvania Action.

The Court has determined that this case cannot be litigated in its current posture. Plaintiff Catanzaro is seeking damages from his former counsel for the loss of his '959 Patent rights, alleging that his patent is no longer enforceable due to the Terminal Disclaimer. The problem with this claim is that there has been no judicial determination that Catanzaro cannot enforce the '959 Patent. Defendants maintain that the patent is still enforceable, and until recently, Catanzaro has been enforcing it.

Federal courts cannot issue advisory opinions. *See Bowler v. Young*, 55 F. App'x 187, 188 (4th Cir. 2003) ( "In order for a federal court to exercise jurisdiction over an action, the dispute must satisfy the case or controversy requirement of Article III of the Constitution. A case or controversy exists if the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests. [T]he court may not issue what amounts to an advisory opinion on what the law would be under a hypothetical set of facts."). As part of his case, Catanzaro wants this court to invalidate his '959 Patent, or to hold that he has lost the right to enforce it, but there is nobody in this case who is allegedly infringing his patent and maintaining that Catanzaro has lost his right to enforce it. To be entitled to damages against his former counsel, Catanzaro must demonstrate that he has lost the right to enforce his patent due to Defendants' malpractice in

-2-

connection with the Terminal Disclaimer.  Since Defendants maintain that Catanzaro has not lost

the right to enforce his '959 Patent, the only way this issue can be decided is through a true

adversarial proceeding, one in which the plaintiff (Catanzaro) seeks to enforce his patent, and the

defendant (someone using Catanzaro's patent) defends on the basis that Catanzaro has lost the

right to enforce it.  If Catanzaro prevails in his patent litigation, his malpractice case against his

former attorneys evaporates.  If a court should determine in the patent litigation that Catanzaro

cannot enforce the '959 Patent on some basis other than the Terminal Disclaimer, Catanzaro's

malpractice case against his former attorneys also evaporates.  If, however, Catanzaro loses his

patent enforcement case on the basis of the Terminal Disclaimer, then he has a basis to refile his

malpractice case against his former attorneys.

     Accordingly, this case is dismissed without prejudice.  The Court tolls the statute of

limitations as of today for a period of six months (June 12, 2015) to permit Catanzaro to file

a patent enforcement action against an alleged infringer.  Should Catanzaro file such an action,

the tolling of the statute of limitations will remain in place until there is a final judgment in the

patent enforcement litigation.


     IT IS SO ORDERED.


                                   */s/ Dan A. Polster    December 15, 2014*
                                   **Dan Aaron Polster**
                                   **United States District Judge**

# EXHIBIT H

from   **Douglas
Panzer** <dpanzer@flblaw.com>

to   David mts
<davemts1213@gmail.com>

date   Wed, Feb 1, 2017 at 4:16 PM

subject   Dan Schantz Farm &
Greenhouses, LLC v.
Catanzaro - Expiration of
Unassigned Patent


Mr. Catanzaro,

As discussed on our telephone call a few minutes ago, I am attaching the case *Merck & Co., Inc. v. U.S. Int'l Trade Comm'n*. As you will see, this case clearly states that a patent subject to a terminal disclaimer will expire <u>immediately</u> upon separation of ownership between it and the patent or application over which the terminal disclaimer was required. It also states that it cannot be "revived or recreated" by a later assignment. This is a holding of the Court of Appeals for the Federal Circuit, which is responsible for interpretation of all United States patent appeals and whose opinions are binding precedent upon all lower federal courts, including the Eastern District of Pennsylvania. This case remains the binding law of the land and has been upheld in multiple federal courts in recent years.

In the present matter, your assignment of the '532 patent to Church & Dwight (attached) without assignment of the '959 patent, in view of your terminal disclaimer (attached) in the prosecution of the '959 patent, caused the '959 patent to immediately expire on February 28, 2011. While you state that you have "reacquired" the '532 patent from Church & Dwight, the above case makes clear, in unambiguous terms, that this later assignment was not capable of reviving, recreating or reactivating the '959 patent. Any attempt to assert the '959 patent is improper, as the patent is irretrievably expired.

I trust that after your review of the attached you will agree that the '959 patent cannot be asserted in good faith in this matter and we will look forward to speedy disposition of the matter.

Sincerely,

**DOUGLAS PANZER | REGISTERED PATENT ATTORNEY | FITZPATRICK LENTZ & BUBBA, P.C.**

4001 Schoolhouse Lane, Center Valley, PA 18034

Tel: (610) 797-9000, ext. 390 | Fax: (610) 797-6663

Administrative Assistant: Stephanie Wentzel, ext. 378

Email| Admin Email| Website | Bio| LinkedIn

:

# EXHIBIT I

from:   **David**
        **mts** <davemts1213@gmail.com>

to:     Douglas Panzer
        <dpanzer@flblaw.com>

date:   Wed, Feb 1, 2017 at 7:16 PM

subject: Re: Dan Schantz Farm &
         Greenhouses, LLC v. Catanzaro
         - Expiration of Unassigned
         Patent

Douglas,

In Merck the terminal disclaimer reads as follows:

[I]t is agreed (pursuant to the Commission's notice appearing at 860 O.G. 661-2) that the patent issuing on [this] application ... shall expire immediately if it ceases to be commonly owned with the patents issuing on applications serial nos. 605,171, 695,332, 635,362, and 605,154 [the four other patents].

In the terminal disclaimer with my 959 patent it clearly says the following:

...The owner hereby agrees that any patent so granted on the patent application *shall be enforceable* only for and during such period that  it and the prior patent are commonly owned.

*The words "Enforceable" (in my terminal disclaimer) Verses the words "Expire Immediately" will make all the difference when arguing the enforsability of the commonly owned 959 patent.*

*Please go the the below link after reviewing the below paragraph.*

*http://openjurist.org/774/f2d/483/merck-co-inc-v-us-international-trade-commission*

21 2. The provision in the terminal disclaimer that the '284 patent would "expire immediately" if it ceased to be commonly owned with the other four patents conformed to the requirements of the Patent and Trademark Office that were in effect when the disclaimer was filed. Commissioner's Notice, 848 O.G. 1 (Feb. 14, 1968). See generally In re Van Ornum, 686 F.2d 937, 214 USPQ 761 (CCPA 1982). An amendment to 37 C.F.R. Sec. 1.321 (1971), **effective April 30, 1971, changed this requirement to provide that disclaimers need state only that the patent be unenforceable during the period it is not commonly owned with the other patents recited in the disclaimer. This amendment was publicly proposed at 35 Fed.Reg. 20,012 (1970) and published at 36 Fed.Reg. 7312 (1971), both before the date on which the '284 patent issued. Sumitomo, however, never attempted to have the language of its disclaimer changed to incorporate this new and less severe standard.**

Emphasis on the words: "new and less severe standard."

The langue of the terminal disclaimer of the 959 patent is unambiguous, the 959 pant will be enforceable when commonly owned.

I look forward to your response.

Thanks,
David

# EXHIBIT J

from:   **Douglas
        Panzer** <dpanzer@fiblaw.com>

to:     David mts
        <davemts1213@gmail.com>

date:   **Wed, Feb 1, 2017 at 7:23 PM**

subject. **RE: Dan Schantz Farm &
        Greenhouses, LLC v.
        Catanzaro - Expiration of
        Unassigned Patent**

mailed  **fiblaw.com**
  by

David,

While I do not agree with your legal assessment, let's assume for the sake of discussion that you are
correct.

      1)   During what period do you believe the '959 patent was valid and enforceable?

      2)   During what period are you alleging infringement against Dan Schantz Farm &
Greenhouses?

      3)   What do you believe is a reasonable royalty during that period?

DOUGLAS PANZER | REGISTERED PATENT ATTORNEY | FITZPATRICK LENTZ & BUBBA, P.C.

4001 Schoolhouse Lane, Center Valley, PA 18034

Tel: (610) 797-9000, ext. 390 | Fax: (610) 797-6663

Administrative Assistant: Stephanie Wentzel, ext. 378

Email| Admin Email| Website | Bio| LinkedIn

David Catanzaro
Defendent *Pro Se*
286 Upper Powderly Street
Carbondale, PA 18407

US court house and federal building
The clerk's office suite 1601
504 west Hamilton St.
Allentown, pa 18101



**UNITED STATES POSTAL SERVICE.**  **Retail**

P

**US POSTAGE PAID**
**$6.65**

Origin: 18407
Destination: 18101
0 Lb 13.50 Oz
Apr 08, 17                    1005
4111600407-13

**PRIORITY MAIL ®2-Day**

Expected Delivery Day: 04/10/2017      C017

**USPS TRACKING NUMBER**

9505 5124 1052 7098 0680 18

David Catanzaro
Defendent *Pro Se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

April 8, 2017

US court house and federal building
The clerk's office suite 1601
504 west Hamilton St.
Allentown, pa 18101

**Re: Dan Schantz Farm & Greenhouses v. Catanzaro Case No.: 5:2017-cv-00403**

Dear Clerk of Court,

Please file the enclosed Defendant's Response in Opposition to Plaintiff's Response in
Opposition to Defendant's Motion to Dismiss and Defendant's Response in Opposition to
Plaintiff's Response in Opposition to Defendant's Motion for Disciplinary Action. A Certificate
of Service is further enclosed for each.

Regards,

David Catanzaro