IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : | Docket No. |
| Plaintiff, | : | 5:17-cv-00403-JLS |
| | : | |
| v. | : | **JURY DEMAND** |
| | : | |
| DAVID J. CATANZARO, | : | |
| Defendant. | : | |
| | : | |

### PLAINTIFF'S FIRST AMENDED
### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Dan Schantz Farm & Greenhouses, LLC ("DSF&G" or "Plaintiff"), by its attorneys, Fitzpatrick Lentz & Bubba, P.C., files the instant First Amended Complaint against the Defendant, David J. Catanzaro ("Catanzaro" or "Defendant") for, *inter alia*, declaratory judgment under 28 U.S.C. §§ 2201 and 2202, and, in support thereof, avers as follows:

### NATURE OF THE ACTION

1.  This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. DSF&G seeks declaratory judgment that the claims of U.S Patent 7,653,959 ("the '959 Patent") are not infringed by DSF&G and/or are invalid under one or more of the provisions of 35 U.S.C. §§ 101, 102, 103 and 112. An actual controversy over the infringement, validity and enforceability of the '959 Patent exists between DSF&G and Catanzaro, as evidenced by the allegations of Catanzaro detailed below.

### THE PARTIES

2.  Plaintiff Dan Schantz Farm & Greenhouses, LLC is a limited liability company organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 8025 Spinnerstown Road, Zionsville, Pennsylvania 18092.

3.   On information and belief, Defendant David J. Catanzaro is an individual residing in the Commonwealth of Pennsylvania at 286 Upper Powderly Street, Carbondale, Pennsylvania 18407.

## JURISDICTION AND VENUE

4.   Plaintiff's claims arise under the patent laws of the United States, 35 U.S.C. §§ 1, et seq., and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the subject matter under 28 U.S.C. §§ 1331 and 1338(a).

5.   This Court has personal jurisdiction over Catanzaro because Catanzaro is domiciled in the Commonwealth of Pennsylvania.

6.   This Court further has personal jurisdiction over Catanzaro because Catanzaro has conducted business in the Commonwealth of Pennsylvania by systematically and continuously availing himself of the federal district courts of the Commonwealth to exploit the '959 patent.

7.   Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## CONTROVERSY BETWEEN THE PARTIES

8.   An actual and justiciable controversy exists between DSF&G and Catanzaro as to whether the claims of the '959 Patent, attached hereto as **Exhibit A**, are infringed by DSF&G, whether the '959 Patent is invalid, and whether the '959 Patent is enforceable.

9.   On January 11, 2017, a man contacted DSF&G by telephone and stated that DSF&G was selling "decorative planter" products that were similar to a patent or pending patent application that the man owned.

10. The caller identified himself as "David."   The caller refused to provide additional personally identifying information or to identify the patent alleged to be infringed.

11. The products that the caller identified as the accused products are the 2 Qt. Poinsettia Santa and 2 Qt. Poinsettia Elf products shown here:



12. The caller stated that in exchange for execution by DSF&G of a "Litigation Standstill Agreement" ("LSA"), the caller would disclose "all pertinent information" in connection with the allegation of patent infringement.

13. On January 13, 2017, "David" sent an email to DSF&G from davemts1213@gmail.com, further identifying the sender as "David Joseph," and attaching the proposed "LSA." (Attached hereto as **Exhibit G.**)

14. The subject line of the January 13, 2017 email transmitting the LSA is "Patent Infringement Matter."

15. The parties have never negotiated the terms of the LSA.

16. The parties have never agreed to the terms of or executed the LSA.

17. The LSA contemplates a 30-day discussion period between the parties and agreements not to sue or otherwise seek declaration of invalidity of the patent during such period. The LSA further contemplates that DSF&G will refrain from suing the patent owner for an additional fourteen (14) days after the discussion period and that the owner will refrain from suing DSF&G for seven (7) days after the discussion period.

18. The LSA states in part:

    a. "Whereas Owner has evidence that Owner asserts establishes that DSFG infringed his patent (patent no. _____, the 'Patent') with one or more products;

    b. Whereas DSFG denies infringing Owner's patent;

     c.   Whereas Owner and DSFG desire to have full and frank discussions regarding Owner's claim prior to the commencement of patent infringement litigation to avoid such litigation if possible.

19. On January 18, 2017, counsel for DSF&G sent, via email, a letter to "David" stating that "David" had not provided sufficient information to DSF&G to permit it to evaluate "David's" allegations.

20. On January 18, 2017, in response to counsel for DSF&G's letter, a man identifying himself as "Dave" called counsel for DSF&G.

21. "David" and "Dave" are the same person.

22. "David" and counsel for DSF&G discussed possible patent litigation that "David" could bring against DSF&G, including potential venues for such litigation.

23. The caller stated that he had previously filed suit for infringement of his patent and had entered into numerous license agreements as a result thereof.

24. "David," via electronic means, purposefully falsified the caller identification information transmitted by his call in an effort to avoid being identified.

25. After this telephone call, "David" emailed (**Exhibit H**) counsel for DSF&G stating:

> I appreciate our recent conversation. Per our conversation, It is my desire that your client (DSFG) opens up a dialog wherein I would provide them with all necessary information. By entering into the standstill agreement, DSFG will have all necessary information to make an informed decision as to whether or not litigation could be prevented.
>
> With regards to your question as to whether or not the litigation would be filed in your district, the clear answer is NO. I randomly picked the number you seen on your caller ID to identify with your area, I am not located in that area.

26. Searches of publicly available information reveal that Defendant Catanzaro has filed numerous suits for infringement of U.S. Patent No. 7,653,959 ("the '959 Patent"). See **Exhibit B**.

27. Searches of publicly available information reveal that Defendant Catanzaro has contacted other parties to allege infringement of the '959 patent, refusing to provide full information

regarding his identity or the identity of the patent and demanding execution of a "litigation standstill agreement" contemplating a 30-day discussion and non-suit period. See **Exhibit C** at ¶¶ 13-14.

28. Exhibit B to **Exhibit C** further identifies Defendant Catanzaro as David Joseph Catanzaro and refers to "a few settlement/licensing agreements I have already obtained."

29. Defendant David J. Catanzaro is the caller, "David."

30. The patent that Defendant Catanzaro alleges to be infringed by the accused "decorative planter" products is the '959 patent.

31. On January 27, 2017, DSF&G filed its initial Complaint for Declaratory Judgment in this matter.

32. Defendant has not filed a responsive pleading.

## COUNT I
### (Declaratory Judgment of Non-Infringement)

33. Plaintiff incorporates by reference Paragraphs 1-32, above, as if fully set forth herein.

34. DSF&G has not infringed, nor is it infringing, directly or indirectly, any valid claim of the '959 Patent.

## COUNT II
### (Declaratory Judgment of Invalidity)

35. Plaintiff incorporates by reference Paragraphs 1-34, above, as if fully set forth herein.

36. Each claim of the '959 Patent is invalid and unenforceable for failure to satisfy the requirements for patentability under Title 35 of the United States Code, including the respective provisions of §§ 102, 103, and 112.

37. Without limiting the allegations of this Complaint, each claim of the '959 patent is invalid and unenforceable in view of at least the prior art shown in **Exhibit D**, hereto:

a.  One or more claims of the '959 Patent is invalid and unenforceable as anticipated or obvious in view of *Bowl with Human Feet*, produced ca. 3900–3650 B.C.

b.  One or more claims of the '959 Patent is invalid and unenforceable as anticipated or obvious in view of *Grimace*, produced ca. 1985.

c.  One or more claims of the '959 Patent is invalid and unenforceable as anticipated or obvious in view of Kellogg Company bowls and cups, produced ca. 1981.

d.  One or more claims of the '959 Patent is invalid and unenforceable as anticipated or obvious in view of Milton Bradley *Bash*, produced ca. 1965.

e.  One or more claims of the '959 Patent is invalid and unenforceable as anticipated or obvious in view of Carlton Walking Ware, produced ca. 1980.

## COUNT III
(Declaratory Judgment of Unenforceability)

38. Plaintiff incorporates by reference Paragraphs 1-37, above, as if fully set forth herein.

39. A search of the publicly available file history for the '959 Patent reveals that Catanzaro filed a Terminal Disclaimer dated August 27, 2001, to obviate a double patenting rejection over U.S. Patent No. 6,026,532 (the "'532 Patent"). In the Terminal Disclaimer, Catanzaro agreed "that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned." The application 09/505,791, to which the Terminal Disclaimer applies, issued as the '959 Patent on February 2, 2010. A copy of the Terminal Disclaimer is attached hereto as **Exhibit E**.

40. A search of the U.S. Patent and Trademark Office's assignment database reveals that Catanzaro assigned his entire interest in the '532 Patent to Church & Dwight Co., Inc. by way of an assignment executed on February 28, 2011 and recorded June 9, 2011. A copy of the recorded assignment is attached hereto as **Exhibit F**.

41. The '959 Patent has, at no time, been assigned to Church & Dwight Co., Inc.

42. As of February 28, 2011, the '959 Patent no longer maintained common ownership with the '532 Patent.

43. The '959 Patent expired on February 28, 2011.

44. The '959 Patent cannot be revived or reactivated by later assignments.

45. On May 2, 2013, Defendant filed a professional malpractice action (the "Malpractice Suit") against his former patent litigation counsel, case 1:13-cv-00996 (N.D. Ohio).

46. In his complaint in the Malpractice Suit Defendant stated that the facts giving rise to his claim "rendered ineffective…U.S. [Pat.] No. 7, 653,959 (The "959" Patent.")" Malpractice Suit at ¶2. A copy of the Malpractice Suit is attached hereto as **Exhibit I**.

## PRAYER FOR RELIEF

WHEREFORE, DSF&G prays for the following relief:

A. A declaration that DSF&G has not infringed, either directly or indirectly, any valid and enforceable claim of the '959 Patent;

B. A declaration that the '959 Patent is invalid;

C. A declaration that the '959 Patent is unenforceable;

D. Enjoin Catanzaro and his representatives, and any successors and assigns thereof, from charging or asserting infringement of any claim of the '959 patent against DSF&G or anyone in privity with DSF&G;

E. An order declaring that DSF&G is a prevailing party and that this is an exceptional case, awarding DSF&G its costs, expenses, disbursements, and reasonable attorney's fees under 35 U.S.C. § 285, recent precedent promulgated by the United States Supreme Court in *Octane Fitness*, and all other statues, rules and common law;

F. That Catanzaro be ordered to pay all costs associated with this action; and

G.  That DSF&G be granted such other and additional relief as the Court deems just and proper.

## **JURY DEMAND**

47. DSF&G hereby demands a trial by jury on all issues triable of right by jury.

FITZPATRICK LENTZ & BUBBA, P.C.

Date:  3/30/2017

BY:

Douglas Panzer
PA Bar I.D. #203354
Attorney for Plaintiff
4001 Schoolhouse Lane
P.O. Box 219
Center Valley, PA 18034-0219
(610) 797-9000

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : | |
| | : | Docket No. |
| Plaintiff, | : | 5:17-cv-00403-JLS |
| | : | |
| v. | : | **JURY DEMAND** |
| | : | |
| DAVID J. CATANZARO, | : | |
| Defendant. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, Douglas Panzer, attorney for Dan Schantz Farm & Greenhouses, LLC, hereby certify

that I have filed Plaintiff's First Amended Complaint for Declaratory Judgment. Additionally, I

have mailed a copy by first class mail, postage prepaid, to the following:

David J. Catanzaro
286 Upper Powderly Street
Carbondale, PA 18407

FITZPATRICK LENTZ & BUBBA, P.C.

Date: _4/24/2017_          BY: _____

Douglas Panzer
PA Bar I.D. #203354
Attorney for Plaintiff
4001 Schoolhouse Lane
P.O. Box 219
Center Valley, PA 18034-0219
(610) 797-9000

# EXHIBIT A

US007653959B1

(12) **United States Patent**    (10) **Patent No.:**    **US 7,653,959 B1**

Catanzaro    (45) **Date of Patent:**    **Feb. 2, 2010**

(54) **ARTICLE ASSEMBLY**

(76) Inventor: **David Catanzaro**, 626 Penn Ave.,
Mayfield, PA (US) 18433

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/505,791**

(22) Filed: **Feb. 17, 2000**

**Related U.S. Application Data**

(63) Continuation of application No. 08/777,032, filed on
Dec. 30, 1996, now Pat. No. 6,026,532.

(51) **Int. Cl.**
*A46B 9/04*    (2006.01)
(52) **U.S. Cl.** ...................... **15/167.1**; 15/184; 15/143.1;
15/257.01; D4/108; D4/107; D6/534; 248/111;
248/908; 132/308
(58) **Field of Classification Search** ................. D4/104,
D4/107, 108, 125, 126; D6/528, 534; 15/167.1,
15/143.1, 184, 257.01, 146, 246; 248/163.1,
248/188.8, 188.9, 110, 111, 915, 908; 132/308,
132/309; 206/362.3, 349, 457
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D155,668 | S | * | 10/1949 | Zandberg et al. ............. D4/107 |
| 2,539,035 | A | * | 1/1951 | Scanlon et al. .............. 248/111 |
| D197,309 | S | * | 1/1964 | Feverbacher ................. D4/107 |

| | | | | |
|---|---|---|---|---|
| 3,138,813 | A | * | 6/1964 | Kaplan ......................... 15/22 |
| 3,140,782 | A | * | 7/1964 | Schulte ...................... 248/908 |
| D209,574 | S | * | 12/1967 | Zandberg et al. ............. D4/107 |
| D279,248 | S | * | 6/1985 | Oliver ......................... D6/104 |
| 5,269,420 | A | * | 12/1993 | Harrison et al. .......... 206/362.3 |
| 5,353,464 | A | * | 10/1994 | Atkins et al. ............... 15/167.1 |
| 5,444,889 | A | * | 8/1995 | Barre ......................... 15/167.1 |
| D363,166 | S | * | 10/1995 | Perrine ....................... D4/104 |
| D369,932 | S | * | 5/1996 | Petronio ..................... D6/534 |
| D370,146 | S | * | 5/1996 | Petronio ..................... D6/534 |
| D370,147 | S | * | 5/1996 | Petronio ..................... D6/534 |
| 5,590,436 | A | * | 1/1997 | Wright ........................ 15/105 |
| 5,675,859 | A | * | 10/1997 | Barre ......................... 15/167.1 |
| D388,254 | S | * | 12/1997 | Schiffer ...................... D4/107 |
| D392,464 | S | * | 3/1998 | Jesiolowski ................. D4/107 |
| D395,757 | S | * | 7/1998 | Schiffer ...................... D4/107 |
| 6,015,328 | A | * | 1/2000 | Glaser ........................ 15/167.1 |
| 6,026,532 | A | * | 2/2000 | Catanzaro .................. 15/167.1 |
| 6,141,815 | A | * | 11/2000 | Harrison et al. .............. 15/145 |

OTHER PUBLICATIONS

Pictures of SALTON Inc. foot stand, stand includes a copyright mark
of 1990.*
Pictures of SALTON Inc. foot stand, stand was on sale in Mar. 1999.*

* cited by examiner

*Primary Examiner*—Gary K. Graham

(57)    **ABSTRACT**

An assembly comprising a toothbrush having a first and sec-
ond end. A stand in the shape of a pair of feet retains the brush
in a vertical position when the stand is placed on a horizontal
surface. For additional support, a base may be incorporated
with the stand.

**8 Claims, 2 Drawing Sheets**





# FIG.4

# FIG.5




US 7,653,959 B1

1

# ARTICLE ASSEMBLY

This application is a continuation of U.S. Utility Application 08/777,032, filed on Dec. 30, 1996, now U.S. Pat. No. 6,026,532. The earlier filing date of this application is hereby claimed under 35 U.S.C 120.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

This application claim benefit to provisional Application 60/009,323 Dec. 28, 1995.

The instant invention relates generally to toothbrushes, but may also find a useful application in other types of methods differing from the type described herein. More specifically it relates to an assembly which may contain a combination of appealing qualities.

2. Description of the Prior Art

There are various advantages in storing a toothbrush in an upright position, and numerous patents have disclosed holders or stands for retaining a toothbrush in a vertical position when placed on a horizontal surface. For instance, U.S. Pat. No. 5,444,889 (Barre) discloses a toothbrush assembly including a toothbrush and a stand for holding the brush. The stand includes a cup portion having a cavity within, wherein the brush handle can be inserted. A pair of legs separate and unattached to one another support and are connected to the cup portion. Further included is a foot for each leg, each foot being connected to the lower end of the leg opposite the cup portion. The feet are also separate and unattached from one another. U.S. Pat. Des. 369,932 and U.S. Pat. Des. 370,147 (Petronio) discloses a toothbrush holder in the shape of a torso having a front and rear portion. The front portion includes a recess extending therethrough, wherein a brush handle can be inserted. Further included, extending from the front portion, is a pair of feet which are separate and unattached from one another. A tail section extends from the rear portion. While these units may be suitable for the particular purpose to which they address, they would not be suitable for the purposes of the present invention as heretofore described.

## SUMMARY OF THE INVENTION

A first object of the present invention is to provide an assembly that will overcome the shortcomings of the prior art devices.

A second object is to provide an assembly, comprising a toothbrush having a first and second end, and a stand for receiving the second end of the brush handle therein, thereby retaining the handle in a vertical position when the stand is placed on a horizontal surface.

A third object is to provide an assembly, in which the stand is releasably connected to the toothbrush handle.

A forth object is to provide an assembly, in which the stand is a pair of feet which are positioned together to form a continuous bottom supporting surface and a single heel portion, wherein the single heel portion includes a recess for selectively receiving the second end of the toothbrush handle therein.

A fifth object is to provide an article assembly, in which a base is connected to the bottom side of the foot stand for providing additional stability to the foot stand.

A sixth object is to provide an article assembly, in which the base includes a recess extending therethrough and in alignment with the recess in the foot stand for additionally receiving the receivable end of the article therein, for providing additional stability to the foot stand and article.

2

A seventh object is to provide an article assembly, that is simple and easy to use.

An eight object is to provide an article assembly, that is economical in cost to manufacture.

Further objects of the invention will appear as the description proceeds.

To the accomplishment of the above and related objects, this invention may be embodied in the form illustrated in the accompanying drawings, attention being called to the fact, however, that the drawings are illustrative only, and that changes may be made in the specific construction illustrated and described within the scope of the appended claims.

## BRIEF DESCRIPTION OF THE DRAWING FIGURES

FIG. 1 is a front exploded perspective view of the assembly according to the present invention.

FIG. 2 is a front exploded perspective view of the assembly according to the present invention showing a base for the stand.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

With regard to FIGS. 1 and 2, the embodiment of the invention drawn shows an elongated handle 1 having a first end 2 a second end 3 and a first and second side. A stand 5 is in the shape of first and second feet 6a and 6b. Each first and second feet 6a and 6b, are elongated to define a toe end and together a common heel end. First and second feet 6a and 6b are joined together and positioned together to form a continuous bottom supporting surface. The heel end of each first and second feet 6a and 6b, is positioned together to form a single heel portion 7. Single heel portion 7 includes a recess 8 extending through a top side thereof and towards a sole thereof for selectively receiving second end 3 of handle 1 therein, thereby retaining handle 1 in a vertical position when stand 5 is placed on a horizontal surface. First and second feet 6a and 6b each include a side surface, the side surfaces intersect one another in a common plane. The toe end of first and second feet 6a and 6b are at an acute angle to one another.

If desired, a base 9 could be connected to a bottom side of stand 5 as shown in FIG. 2. Base 9 may include a recess 10 extending therethrough and in alignment with recess 8 in stand 5 for additionally receiving second end 3 of handle 1 therein, to provide additional stability to handle 1 and stand 5.

It will be understood that each of the elements described above, or two together, may also find a useful application in other types of methods differing from the type described above.

While certain novel features of this invention have been shown and described and are pointed out in the annexed claims, it is not intended to be limited to the details above, since it will be understood that various omissions, modifications, substitutions and changes in the forms and details of the device illustrated and in its operation can be made by those skilled in the art without departing in any way from the sprit of the present invention.

Without further analysis, the foregoing will so fully reveal the gist of the present invention that others can, by applying current knowledge, readily adapt it for various applications without omitting features that, from the standpoint of prior art, fairly constitute essential characteristics of the generic aspects of this invention.

US 7,653,959 B1

3

4

What is claimed is new and desired to be protected by Letters Patent is set forth in the appended claims:

1. An article assembly comprising:

a) an article having a receivable end, and

b) a stand in the shape of first and second feet, each of said first and second feet being elongated to define a toe end and together a common heel end, said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, said heel end of each of said first and second feet being positioned together to form a single heel portion, said single heel portion including a recess extending through a topside thereof and towards a sole thereof for selectively receiving said receivable end of said article therein, thereby retaining said article when said stand is placed on a horizontal surface, said first and second feet each including a side surface, said side surfaces intersecting one another in a common plane.

2. The article assembly as claimed in claim 1, further comprising a base connected to a bottom side of said stand.

3. The article assembly as claimed in claim 2, wherein said base includes a recess extending therethrough and in alignment with said recess in said stand for additionally receiving said receivable end of said article therein.

4. The article assembly as claimed in claim 1, wherein said toe end of said first and second feet are at an acute angle to one another.

5. An article assembly comprising:

A stand in the shape of first and second feet, each of said first and second feet being elongated to define a toe end and together a common heel end, said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, said heel end of each of said first and second feet being positioned together to form a single heel portion, said single heel portion including a recess extending through a topside thereof and towards a sole thereof, said first and second feet including a side surface, said side surfaces intersecting one another in a common plane.

6. The article assembly as claimed in claim 5, further comprising a base connected to a bottom side of said stand.

7. The article assembly as claimed in claim 6, wherein said base includes a recess extending therethrough and in alignment with said recess in said stand.

8. The article assembly as claimed in claim 5, wherein said toe end of said first and second feet are at an acute angle to one another.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 7,653,959 B1                                              Page 1 of 3
APPLICATION NO.  : 09/505791
DATED                   : February 2, 2010
INVENTOR(S)        : Catanzaro

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

The title page, showing an illustrative figure, should be deleted and substitute therefor the attached title page.

Delete drawing sheets 1-2 and substitute therefor the drawing sheet, consisting of figures 1-2 as shown on the attached page.

Signed and Sealed this

Eighteenth Day of May, 2010

David J. Kappos
Director of the United States Patent and Trademark Office

**CERTIFICATE OF CORRECTION (continued)**     Page 2 of 3

(12) **United States Patent**     (10) **Patent No.:**     **US 7,653,959 B1**
Catanzaro     (45) **Date of Patent:**     **Feb. 2, 2010**

(54) **ARTICLE ASSEMBLY**

(76) Inventor: **David Catanzaro**, 626 Penn Ave.,
Mayfield, PA (US) 18433

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/505,791**

(22) Filed: **Feb. 17, 2000**

**Related U.S. Application Data**

(63) Continuation of application No. 08/777,032, filed on
Dec. 30, 1996, now Pat. No. 6,026,532.

(51) Int. Cl.
*A46B 9/04*     (2006.01)

(52) U.S. Cl. .................. **15/167.1**; 15/184; 15/143.1;
15/257.01; D4/108; D4/107; D6/534; 248/111;
248/908; 132/308

(58) Field of Classification Search ............... D4/104,
D4/107, 108, 125, 126; D6/528, 534; 15/167.1,
15/143.1, 184, 257.01, 146, 246; 248/163.1,
248/188.8, 188.9, 110, 111, 915, 908; 132/308,
132/309; 206/362.3, 349, 457
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D155,668 | S | * | 10/1949 | Zandberg et al. ............. D4/107 |
| 2,539,035 | A | * | 1/1951 | Scanlon et al. .............. 248/111 |
| D197,309 | S | * | 1/1964 | Feverbacher ................. D4/107 |
| 3,138,813 | A | * | 6/1964 | Kaplan ......................... 15/22 |
| 3,140,782 | A | * | 7/1964 | Schulte ....................... 248/908 |
| D209,574 | S | * | 12/1967 | Zandberg et al. ............. D4/107 |
| D279,248 | S | * | 6/1985 | Oliver ......................... D6/104 |
| 5,269,420 | A | * | 12/1993 | Harrison et al. ........... 206/362.3 |
| 5,353,464 | A | * | 10/1994 | Atkins et al. .............. 15/167.1 |
| 5,444,889 | A | * | 8/1995 | Barre ........................ 15/167.1 |
| D363,166 | S | * | 10/1995 | Perrine ....................... D4/104 |
| D369,932 | S | * | 5/1996 | Petronio ..................... D6/534 |
| D370,146 | S | * | 5/1996 | Petronio ..................... D6/534 |
| D370,147 | S | * | 5/1996 | Petronio ..................... D6/534 |
| 5,590,436 | A | * | 1/1997 | Wright ........................ 15/105 |
| 5,675,859 | A | * | 10/1997 | Barre ........................ 15/167.1 |
| D388,254 | S | * | 12/1997 | Schiffer ...................... D4/107 |
| D392,464 | S | * | 3/1998 | Jesiolowski ................. D4/107 |
| D395,757 | S | * | 7/1998 | Schiffer ...................... D4/107 |
| 6,015,328 | A | * | 1/2000 | Glaser ....................... 15/167.1 |
| 6,026,532 | A | * | 2/2000 | Catanzaro ................. 15/167.1 |
| 6,141,815 | A | * | 11/2000 | Harrison et al. .............. 15/145 |

OTHER PUBLICATIONS

Pictures of SALTON Inc. foot stand, stand includes a copyright mark
of 1990.*
Pictures of SALTON Inc. foot stand, stand was on sale in Mar. 1999.*

* cited by examiner

*Primary Examiner*—Gary K. Graham

(57)     **ABSTRACT**

An assembly comprising a toothbrush having a first and second end. A stand in the shape of a pair of feet retains the brush
in a vertical position when the stand is placed on a horizontal
surface. For additional support, a base may be incorporated
with the stand.

**8 Claims, 1 Drawing Sheet**






FIG.1

FIG.2

# EXHIBIT B

# Litigation Campaign CLOSED

:≡ VIEW AS SEARCH RESULTS

What is a Litigation Campaign?

| 11 CASES | 28 DEFENDANTS | 2 PATENTS | ACCUSED PRODUCTS |
|---|---|---|---|

| DATE FILED ▼ | CASE NAME | CASE NUMBER | TERMINATION DATE | JURISDICTION |
|---|---|---|---|---|
| 03/19/2015 | Catanzaro v. Greenbrier International, Inc. et al | 3:15-cv-00555 | 11/12/2015 | PAMDC |
| 03/19/2015 | Catanzaro v. Spin Master, LTD et al | 3:15-cv-00556 | 06/18/2015 | PAMDC |
| 03/19/2015 | Catanzaro v. Candyrific, LLC et al | 3:15-cv-00554 | 06/15/2015 | PAMDC |
| 03/16/2015 | Catanzaro v. Rite Aid Corporation, Inc. et al | 3:15-cv-00524 | 06/17/2015 | PAMDC |
| 03/16/2015 | Catanzaro v. Mattel, Inc. et al | 3:15-cv-00527 | 07/13/2015 | PAMDC |
| 03/16/2015 | Catanzaro v. Goldstein et al | 3:15-cv-00529 | 06/18/2015 | PAMDC |
| 03/16/2015 | Catanzaro v. Schuster Products, LLC et al | 3:15-cv-00526 | 06/18/2015 | PAMDC |
| 03/16/2015 | Catanzaro v. Bandai America Inc. et al | 3:15-cv-00528 | 06/18/2015 | PAMDC |
| 03/13/2015 | Little Kids, Inc. v. Catanzaro | 1:15-cv-00095 | 03/31/2015 | RIDC |
| 02/23/2010 | Catanzaro v. Proctor & Gamble Co. | 1:10-cv-00403 | 02/22/2011 | OHNDC |
| 12/15/2008 | Catanzaro v. Proctor & Gamble Co. | 3:08-cv-02231 | 02/08/2010 | PAMDC |

VIEW LESS

Source: https://search.rpxcorp.com/lit/pamdce-102359-catanzaro-v-rite-aid

# EXHIBIT C

Henry Gabathuler
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, New York 10601
Phone: (914) 288-0022

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BLUE BOX TOYS, INC. | |
| *Plaintiff,* | Civil Action No. |
| v. | **JURY DEMAND** |
| DAVID JOSEPH CATANZARO, | *Filed via ECF* |
| *Defendant.* | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Blue Box Toys, Inc. ("Plaintiff" or "Blue Box") through its counsel, brings this Complaint against Defendant David Joseph Catanzaro ("Defendant" or "Catanzaro") for, *inter alia*, declaratory judgment under 28 U.S.C. §§ 2201 and 2202 as follows.

## NATURE OF THE ACTION

1.    This is a declaratory judgment action seeking a determination that Blue Box does not infringe any valid or enforceable claim of US Patent No. 7,653,959 (the "'959 Patent") under 35 U.S.C. §271.

2.    This is a declaratory judgment action seeking a determination that the '959 Patent is invalid, in whole or in part.

3.    This is a declaratory judgment action seeking a determination that the '959 Patent is unenforceable, in whole or in part.

4.     On information and belief, Catanzaro is the inventor of the '959 Patent, which is entitled "Article Assembly" and issued on February 2, 2010.  A true copy of the '959 Patent is attached as **Exhibit A**.  On information and belief, Catanzaro claims rights under the '959 Patent and has threatened to assert such rights against Blue Box.

## THE PARTIES

5.     Plaintiff Blue Box Toys, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business located at 220 South Orange Ave., Suite 106, Livingston, New Jersey 07039.

6.     On information and belief, Defendant David Joseph Catanzaro is an individual residing in the state of Pennsylvania.

## JURISDICTION AND VENUE

7.     This is a complaint for declaratory relief under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.

8.     Blue Box seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202.

9.     This Court has subject matter jurisdiction over this action under 37 U.S.C. §§ 1331, 1338, 2201 and 2202.

10.    This Court has personal jurisdiction over Catanzaro.  Catanzaro has conducted business directed at the State of New Jersey by systematically and continuously availing itself of the privilege of doing business in New Jersey to exploit to the '959 Patent.

11.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1391(c) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

2

## CONTROVERSY BETWEEN THE PARTIES

12.     On information and belief, Catanzaro is a non-practicing owner of the '959 Patent.

13.     On at least January 21 and 27, 2015, Catanzaro sent correspondence to Blue Box requesting execution of a "Standstill Agreement" to allow Catanzaro and Blue Box to discuss allegations of infringement leveled by Catanzaro against Blue Box.  Such Standstill Agreement purported to contemplate a thirty (30) day discussion period between the parties in which Blue Box would take no legal action against Catanzaro in exchange for detailed information regarding its alleged infringement.

14.     On February 3, 2015, Counsel for Blue Box responded to Catanzaro indicating Blue Box's inability to sign the Standstill Agreement without a full identification of the allegedly infringed patent and information identifying the owner of any such allegedly infringed patent.

15.     On February 23, 2015, Catanzaro sent correspondence to counsel for Blue Box with an attached draft Complaint specifically identifying the '959 Patent and alleging that Blue Box "has infringed, induced others to infringe, and/or contributorily infringed, literally or under the doctrine of equivalents, one or more claims of the '959 Patent."  A copy of this correspondence is attached hereto as **Exhibit B** and a copy of the draft Complaint provided by Catanzaro is attached hereto as **Exhibit C**.

16.     The draft Compliant provided by Catanzaro further identifies the source of Blue Box's alleged infringement as its "manufacturing, having manufactured, importing, using, offering for sale and/or selling products that embody and/or practice the patented invention, known as 'Jungle Friends Shape n' Sort' product line."

3

17.     Blue Box has not and does not infringe, either directly or indirectly, any valid and enforceable claim of the '959 Patent, either literally or under the doctrine of equivalents, or by contributing to or inducing the infringement of others.

18.     A search of the publically available file history for the '959 Patent reveals that Catanzaro filed a Terminal Disclaimer on August 27, 2001 to obviate a double patent rejection over U.S. Patent No. 6,026,532 (the "'532 Patent").   In the Terminal Disclaimer, Catanzaro agreed "that any patent so granted on the instant application shall be enforceable only for and during such period that it ant the prior patent are commonly owned." The instant application to which the Terminal Disclaimer applies issued as the '959 Patent on February 2, 2010. A copy of the Terminal Disclaimer is attached hereto as **Exhibit D**.

19.     A search of the U.S. Patent and Trademark Office's assignment database reveals that Catanzaro assigned his entire interest in the '532 patent to Church & Dwight Co., Inc. by way of an assignment executed on February 28, 2011 and recorded June 9, 2011. As of February 28, 2011, the '959 Patent no longer maintained common ownership with the '532 Patent.

20.     By virtue of the foregoing, a substantial controversy exists between the parties that is of sufficient immediacy and reality to warrant declaratory relief.

## COUNT I
### (Declaratory Judgment of Non-Infringement)

21.     Blue Box realleges and incorporates by reference herein the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

22.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

4

23.    A judicial determination is necessary and appropriate so that Catanzaro may ascertain its rights in the '959 Patent.

24.    Blue Box is entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '959 Patent under 35 U.S.C. §271.

**COUNT II**
(Declaratory Judgment of Invalidity)

25.    Blue Box realleges and incorporates by reference herein the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

26.    Blue Box contends that claims 1, 4, 5 and 8 of the '959 Patent are invalid for failing to comply with the conditions and requirements for patentability set forth by the patent laws of the United States, Title 35, including, but not limited to, §§ 102, 103 and/or 112, and the rules, regulations and laws pertaining thereto.

27.    By way of example and without limiting the allegations of this Complaint, Blue Box contends that claims 1, 4, 5 and 8 of the '959 Patent are rendered at least anticipated and/or obvious, under 35 U.S.C. §§ 102 and 103, respectively, by U.S. Patent No. 2,539,035, U.S. Patent No. 3,105,612 and U.S. Patent No. 3,178,060.

28.    Blue Box is entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring claims 1, 4, 5 and 8 of the '959 Patent invalid under 35 U.S.C. §§ 102, 103 and/or 112.

**COUNT III**
(Declaratory Judgment of Unenforceability)

29.    Blue Box realleges and incorporates by reference herein the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

5

30.    Blue Box contends that the '959 Patent is unenforceable by virtue of not being commonly owned with the '532 Patent over which it is terminally disclaimed.

31.    Blue Box is entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the '959 Patent unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Blue Box prays for the following relief:

A.    A declaration that Blue Box has not infringed, either directly or indirectly, any valid and enforceable claim of the '959 Patent;

B.    A declaration that the '959 Patent invalid as either obvious or anticipated in view of the prior art;

C.    A declaration that the '959 Patent is unenforceable;

D.    An order declaring that Blue Box is a prevailing party and that this is an exceptional case, awarding Blue Box its costs, expenses, disbursements, and reasonable attorney's fees under 35 U.S.C. § 285, recent precedent promulgated by the United States Supreme Court in *Octane Fitness*, and all other statues, rules and common law;

E.    That Catanzaro be ordered to pay all costs associated with this action; and

F.    That Blue Box be granted such other and additional relief as the Court deems just and proper.

Dated: March 16, 2015                              LEASON ELLIS LLP


By: _____
      Henry Gabathuler
      Attorneys for Plaintiff Blue Box, Inc.

6

# EXHIBIT B

| From: | DJ Patent <djpatent@gmail.com> |
|---|---|
| Sent: | Monday, February 23, 2015 11:05 AM |
| To: | Matthew Kaufman |
| Subject: | Re: Patent Infringement Demand... |
| Attachments: | Blue_Box_Toys_Complaint.pdf; Exhibit_A_959_Patent.pdf; Exhibit_B_14117611493.pdf; Blue_Box_Claim_Chart.pdf; Product.pdf; All_Companies_ &_ Products_ 959.pdf |

Dear Mr. Kaufman,

This email is a reply to your 2.3.15 email. I apologies for the delay getting this information to you, but I have been in full negotiations with one other believed infringer and a significant amount of effort was directed to those negotiations.

I have decided to provide you with all relevant information you requested. I have also included a preliminary complaint which contains all relevant facts regarding this matter. I believe Blue Box's exposure to be very minimal and it would serve both of us well if this matter could be resolved without any formal fillings. I would be willing to forgo any and all claims with respect to the patent at issue, for a low five figure amount.

After you review the attached material, I would have no problem sending you a few settlement /licensing agreements I have already obtained to expedite this matter if your client is amendable.

Thanks,
David Joseph Catanzaro
570-282-4889

On Tue, Feb 3, 2015 at 3:16 PM, Matthew Kaufman <Kaufman@leasonellis.com> wrote:

Dear Mr. Joseph:


We are intellectual property counsel for Blue Box Toys, Inc. ("Blue Box") and have been provided with copies of your prior correspondence regarding alleged infringement by Blue Box products. Your correspondence unfortunately lacks any indication as to the identity of the complaining party or the asset that is allegedly infringed. Without such information, we are unable to make an independent determination as to the validity of your claim. We accordingly require at least identification of the US patent number at issue before we are able to determine the proper course of action. After receiving this information and having an opportunity to evaluate the merits of your claim, we would be in a position to determine if entering the proposed litigation standstill agreement is in the best interests of our client.


Please feel free to contact me if you are able to share any additional details that might assist us in evaluating your claim.

1

Warmest regards,


Matthew L. Kaufman

LEASON ELLIS.

One Barker Avenue

Fifth Floor

White Plains, New York 10601

kaufman@leasonellis.com

t. 914.821.3089

f. 914.288.0023


Please visit www.LeasonEllis.com.


This e-mail, including any attached files, may contain information that is privileged, confidential or otherwise exempt from disclosure and is solely for the intended recipient(s). Persons other than the intended recipient are prohibited from disclosing, distributing, copying or otherwise using this e-mail. If you received this e-mail in error, please notify the sender or call Leason Ellis' main number 914.288.0022 and delete it from your computer(s). Thank you.

IN THE UNITED STATES DISTRICT COURT
FOR THE…

| | |
|---|---|
| DAVID J. CATANZARO, <br> 286 Upper Powderly Street <br> Carbondale, Pennsylvania 18407 <br><br> Plaintiff, <br><br> VS. <br><br> BLUE BOX TOYS INC.; <br> and DOES 1 THROUGH 50 <br><br> Defendant. | Case No. _____ <br><br> Judge_____ <br><br> Magistrate Judge _____ <br><br><br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S VERIFIED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, David J. Catanzaro ("Plaintiff" or "Mr. Catanzaro"), complains of Blue Box Toys,

Inc. ("Blue Box Toys") as follows:

## I.    JURISDICTION.

1.    This is a claim for patent infringement under the patent laws of the United States, Title 35 of the United States Code.  This Court and other federal district courts have exclusive jurisdiction over the subject matter of this case under 28 U.S.C.§ 1338(a).

## II.    VENUE.

2.    Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.  Further, venue is proper as to each defendant under 28 U.S.C. §1400(b).

## III.    PARTIES.

3.    Plaintiff currently resides at 286 Upper Powderly Street, Carbondale, Pennsylvania 18407. Plaintiff is the owner of United States Patent No. 7,653,959 B1 (the "'959 patent"), entitled "Article Assembly," that issued on February 2, 2010.  Plaintiff has the sole right to sue for infringement of said patent.  A copy of the '959 patent is attached hereto as **Exhibit A**.

4.    Upon information and belief, defendant Blue Box Toys is a NewJersey company with its principal place of business at 220 South Orange Ave., Suite #106 Livingston, NJ 07039

5.    Plaintiff does not know the true identities of fictitious Defendants Does 1 through 50, but reserves the right to amend this complaint to add said defendants upon discovery of their true identities.

6.    This court has personal jurisdiction over the named defendant.

2

## IV. RELEVANT MATTER

7.      The "959 patent is a continuation of U.S. Patent No. 6,026,532 (the "532 patent") which was assigned to the Church & Dwight Co. on February 28, 2011, as part of a settlement agreement during a patent infringement lawsuit ( *David Catanzaro v. Procter & Gamble Co. et al.)*

8.      The '959 patent contained a Terminal Disclaimer whereby the Disclaimer stated that joint ownership of the '532 and '959 patent was required for the '959 patent to be enforceable.

9.      It is believed Church & Dwight allowed the '532 patent to expire intentionally in February, 2012 for lack of paying the required maintenance fee.

10.      Plaintiff filed a legal malpractice case in the Northern District of Ohio on May 2, 2013 against the attorneys who represented Plaintiff in the *Procter & Gamble Co. et al.* lawsuit (*Case No. 1:13 CV 996 Catanzaro vs. Seamon Garson et al*).

11.      Within the pleadings of the above stated malpractice case Plaintiff alleged that he was induced to enter into a Patent Purchases, Settlement Agreement which caused Plaintiff to alienate his interest in the '532 patent and to give up his interest in the '959 patent.

12.      Defendants maintained that the '959 patent was still enforceable, and that Plaintiff did not lose the right to enforce the '959 patent as a direct result of the expiration of '532 patent.

13.      After near 20 months of litigation, Judge Dan A. Polster presiding Judge in the legal malpractice case, issued an order on December 15, 2014 (hereto as **Exhibit B**) stating that the court cannot issue an advisory opinion on the enforceability or

3

unenforceability of the '959 patent and demanded that a judicial determination or order must be made within the context of a Patent infringement lawsuit.

15.     Judge Dan A. Polster dismissed the case without prejudice and tolled the statue of limitations until there is a final judgment in a patent infringement litigation involving the '959 patent.

16.     As a direct result of information exchanged and obtained in the malpractice lawsuit, along with the directed order imposed by Judge Polster to obtain a final order in an infringement action to be able to reopen the malpractice case, Plaintiff has 'sufficient reason' to presently assert that the '959 patent is enforceable from the time it issued on February 2, 2010 up-and-until its expiration date of December 30, 2016, with the exception being, from February 2011 through February 2012 when the '532 patent was enforceable by Church and Dwight.

## V.     CLAIMS.

### COUNT I – DECLARATORY JUDGMENT

17.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 16, inclusive.

18.     An actual, present and justiciable controversy has arisen between Plaintiff and Defendants regarding the '959 patent.

19.     Pursuant to 28 U.S.C. §§ 2201, *et seq.*, Plaintiff seeks declaratory judgment from this Court that Defendant has infringed upon the '959 patent.

4

## COUNT II – PATENT INFRINGEMENT

20.     Blue Box Toys transacts business in this judicial district related to the '959 patent, without a license or permission from plaintiff.  Defendant has infringed, induced others to infringe, and/or contributorily infringed, literally or under the doctrine of equivalents, one or more claims of the '959 patent.  Defendant did so by manufacturing, having manufactured, importing, using, offering for sale and/or selling products that embody and/or practice the patented invention, known as "Jungle Friends Shape n' Sort" product line.

22.     Defendant Blue Box Toys transacts business in this judicial district and has committed acts of infringement in this judicial district by offering for sale and selling the Jungle Friends Shape n' Sort product line after February 2, 2010.

23.     Plaintiff seeks damages for patent infringement against defendant for the maximum period of time permitted by law.

24.     Defendant has directly infringed claims 1, 4, 5 & 8 of the '959 patent in violation of 35 U.S.C. § 271(a).  Upon information and belief, Defendant has also infringed claims 1, 4, 5 & 8 of the '959 patent by knowingly and actively inducing others to infringe in violation of 35 U.S.C. § 271(b).

25.     Upon information and belief, Defendants infringement of the '959 patent have been willful and deliberate.  Defendants infringement has injured plaintiff.

### VI.     PRAYER FOR RELIEF.

WHEREFORE, Plaintiff, David J. Catanzaro, respectfully requests that this Court enter Judgment against Defendants and against their subsidiaries, successors, parents,

affiliates, directors, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

A.    Issue a declaratory judgment stating that Defendants have infringed the '959 patent;

B.    Order an award of damages adequate to compensate Plaintiff for the infringement that has occurred, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284, together with pre-judgment and post-judgment interest;

C.    Issue a finding that Defendants acts of infringement have been willful and ordering an award of increased damages as provided by 35 U.S.C. § 284;

D.    Order Defendants to pay plaintiff's reasonable attorney fees and costs of this action; and,

E.    Order such other relief that Plaintiff is entitled to under law and any other further relief that this Court or jury may deem just and proper.

## VII.    JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues presented in this complaint.

Respectfully submitted,

David J. Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

6

US007653959B1

US 7,653,959 B1

(12) **United States Patent**
Catanzaro

(10) Patent No.: **US 7,653,959 B1**
(45) Date of Patent: **Feb. 2, 2010**

(54) **ARTICLE ASSEMBLY**

(76) Inventor: **David Catanzaro**, 626 Penn Ave.,
Mayfield, PA (US) 18433

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/505,791**

(22) Filed: **Feb. 17, 2000**

**Related U.S. Application Data**

(63) Continuation of application No. 08/777,032, filed on
Dec. 30, 1996, now Pat. No. 6,026,532.

(51) Int. Cl.
*A46B 9/04* (2006.01)

(52) U.S. Cl. ...................... **15/167.1**; 15/184; 15/143.1;
15/257.01; D4/108; D4/107; D6/534; 248/111;
248/908; 132/308

(58) Field of Classification Search ................. D4/104,
D4/107, 108, 125, 126; D6/528, 534; 15/167.1,
15/143.1, 184, 257.01, 146, 246; 248/163.1,
248/188.8, 188.9, 110, 111, 915, 908; 132/308,
132/309; 206/362.3, 349, 457
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D155,668 | S | * | 10/1949 | Zandberg et al. | D4/107 |
| 2,539,035 | A | * | 1/1951 | Scanlon et al. | 248/111 |
| D197,309 | S | * | 1/1964 | Feverbacher | D4/107 |
| 3,138,813 | A | * | 6/1964 | Kaplan | 15/22 |
| 3,140,782 | A | * | 7/1964 | Schulte | 248/908 |
| D209,574 | S | * | 12/1967 | Zandberg et al. | D4/107 |
| D279,248 | S | * | 6/1985 | Oliver | D6/104 |
| 5,269,420 | A | * | 12/1993 | Harrison et al. | 206/362.3 |
| 5,353,464 | A | * | 10/1994 | Atkins et al. | 15/167.1 |
| 5,444,889 | A | * | 8/1995 | Barre | 15/167.1 |
| D363,166 | S | * | 10/1995 | Perrine | D4/104 |
| D369,932 | S | * | 5/1996 | Petronio | D6/534 |
| D370,146 | S | * | 5/1996 | Petronio | D6/534 |
| D370,147 | S | * | 5/1996 | Petronio | D6/534 |
| 5,590,436 | A | * | 1/1997 | Wright | 15/105 |
| 5,675,859 | A | * | 10/1997 | Barre | 15/167.1 |
| D388,254 | S | * | 12/1997 | Schiffer | D4/107 |
| D392,464 | S | * | 3/1998 | Jesiolowski | D4/107 |
| D395,757 | S | * | 7/1998 | Schiffer | D4/107 |
| 6,015,328 | A | * | 1/2000 | Glaser | 15/167.1 |
| 6,026,532 | A | * | 2/2000 | Catanzaro | 15/167.1 |
| 6,141,815 | A | * | 11/2000 | Harrison et al. | 15/145 |

OTHER PUBLICATIONS

Pictures of SALTON Inc. foot stand, stand includes a copyright mark
of 1990.*
Pictures of SALTON Inc. foot stand, stand was on sale in Mar. 1999.*

* cited by examiner

*Primary Examiner*—Gary K. Graham

(57) **ABSTRACT**

An assembly comprising a toothbrush having a first and sec-
ond end. A stand in the shape of a pair of feet retains the brush
in a vertical position when the stand is placed on a horizontal
surface. For additional support, a base may be incorporated
with the stand.

**8 Claims, 2 Drawing Sheets**



**U.S. Patent**          Feb. 2, 2010          Sheet 1 of 2          US 7,653,959 B1



**U.S. Patent**        Feb. 2, 2010        Sheet 2 of 2        US 7,653,959 B1



FIG.4

FIG.5

US 7,653,959 B1

**1**

## ARTICLE ASSEMBLY

This application is a continuation of U.S. Utility Application 08/777,032, filed on Dec. 30, 1996, now U.S. Pat. No. 6,026,532. The earlier filing date of this application is hereby claimed under 35 U.S.C 120.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This application claim benefit to provisional Application 60/009,323 Dec. 28, 1995.

The instant invention relates generally to toothbrushes, but may also find a useful application in other types of methods differing from the type described herein. More specifically it relates to an assembly which may contain a combination of appealing qualities.

2. Description of the Prior Art

There are various advantages in storing a toothbrush in an upright position, and numerous patents have disclosed holders or stands for retaining a toothbrush in a vertical position when placed on a horizontal surface. For instance, U.S. Pat. No. 5,444,889 (Barre) discloses a toothbrush assembly including a toothbrush and a stand for holding the brush. The stand includes a cup portion having a cavity within, wherein the brush handle can be inserted. A pair of legs separate and unattached to one another support and are connected to the cup portion. Further included is a foot for each leg, each foot being connected to the lower end of the leg opposite the cup portion. The feet are also separate and unattached from one another. U.S. Pat. Des. 369,932 and U.S. Pat. Des. 370,147 (Petronio) discloses a toothbrush holder in the shape of a torso having a front and rear portion. The front portion includes a recess extending therethrough, wherein a brush handle can be inserted, Further included, extending from the front portion, is a pair of feet which are separate and unattached from one another. A tail section extends from the rear portion. While these units may be suitable for the particular purpose to which they address, they would not be suitable for the purposes of the present invention as heretofore described.

### SUMMARY OF THE INVENTION

A first object of the present invention is to provide an assembly that will overcome the shortcomings of the prior art devices.

A second object is to provide an assembly, comprising a toothbrush having a first and second end, and a stand for receiving the second end of the brush handle therein, thereby retaining the handle in a vertical position when the stand is placed on a horizontal surface.

A third object is to provide an assembly, in which the stand is releasably connected to the toothbrush handle.

A forth object is to provide an assembly, in which the stand is a pair of feet which are positioned together to form a continuous bottom supporting surface and a single heel portion, wherein the single heel portion includes a recess for selectively receiving the second end of the toothbrush handle therein.

A fifth object is to provide an article assembly, in which a base is connected to the bottom side of the foot stand for providing additional stability to the foot stand.

A sixth object is to provide an article assembly, in which the base includes a recess extending therethrough and in alignment with the recess in the foot stand for additionally receiving the receivable end of the article therein, for providing additional stability to the foot stand and article.

**2**

A seventh object is to provide an article assembly, that is simple and easy to use.

An eight object is to provide an article assembly, that is economical in cost to manufacture.

Further objects of the invention will appear as the description proceeds.

To the accomplishment of the above and related objects, this invention may be embodied in the form illustrated in the accompanying drawings, attention being called to the fact, however, that the drawings are illustrative only, and that changes may be made in the specific construction illustrated and described within the scope of the appended claims.

### BRIEF DESCRIPTION OF THE DRAWING FIGURES

FIG. 1 is a front exploded perspective view of the assembly according to the present invention.

FIG. 2 is a front exploded perspective view of the assembly according to the present invention showing a base for the stand.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

With regard to FIGS. 1 and 2, the embodiment of the invention drawn shows an elongated handle **1** having a first end **2** a second end **3** and a first and second side. A stand **5** is in the shape of first and second feet **6a** and **6b**. Each first and second feet **6a** and **6b**, are elongated to define a toe end and together a common heel end. First and second feet **6a** and **6b** are joined together and positioned together to form a continuous bottom supporting surface. The heel end of each first and second feet **6a** and **6b**, is positioned together to form a single heel portion **7**. Single heel portion **7** includes a recess **8** extending through a top side thereof and towards a sole thereof for selectively receiving second end **3** of handle **1** therein, thereby retaining handle **1** in a vertical position when stand **5** is placed on a horizontal surface. First and second feet **6a** and **6b** each include a side surface, the side surfaces intersect one another in a common plane. The toe end of first and second feet **6a** and **6b** are at an acute angle to one another.

If desired, a base **9** could be connected to a bottom side of stand **5** as shown in FIG. 2. Base **9** may include a recess **10** extending therethrough and in alignment with recess **8** in stand **5** for additionally receiving second end **3** of handle **1** therein, to provide additional stability to handle **1** and stand **5**.

It will be understood that each of the elements described above, or two together, may also find a useful application in other types of methods differing from the type described above.

While certain novel features of this invention have been shown and described and are pointed out in the annexed claims, it is not intended to be limited to the details above, since it will be understood that various omissions, modifications, substitutions and changes in the forms and details of the device illustrated and in its operation can be made by those skilled in the art without departing in any way from the sprit of the present invention.

Without further analysis, the foregoing will so fully reveal the gist of the present invention that others can, by applying current knowledge, readily adapt it for various applications without omitting features that, from the standpoint of prior art, fairly constitute essential characteristics of the generic aspects of this invention.

US 7,653,959 B1

3

What is claimed is new and desired to be protected by Letters Patent is set forth in the appended claims:

1. An article assembly comprising:

a) an article having a receivable end, and

b) a stand in the shape of first and second feet, each of said first and second feet being elongated to define a toe end and together a common heel end, said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, said heel end of each of said first and second feet being positioned together to form a single heel portion, said single heel portion including a recess extending through a topside thereof and towards a sole thereof for selectively receiving said receivable end of said article therein, thereby retaining said article when said stand is placed on a horizontal surface, said first and second feet each including a side surface, said side surfaces intersecting one another in a common plane.

2. The article assembly as claimed in claim 1, further comprising a base connected to a bottom side of said stand.

3. The article assembly as claimed in claim 2, wherein said base includes a recess extending therethrough and in alignment with said recess in said stand for additionally receiving said receivable end of said article therein.

4

4. The article assembly as claimed in claim 1, wherein said toe end of said first and second feet are at an acute angle to one another.

5. An article assembly comprising:

A stand in the shape of first and second feet, each of said first and second feet being elongated to define a toe end and together a common heel end, said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, said heel end of each of said first and second feet being positioned together to form a single heel portion, said single heel portion including a recess extending through a topside thereof and towards a sole thereof, said first and second feet including a side surface, said side surfaces intersecting one another in a common plane.

6. The article assembly as claimed in claim 5, further comprising a base connected to a bottom side of said stand.

7. The article assembly as claimed in claim 6, wherein said base includes a recess extending therethrough and in alignment with said recess in said stand.

8. The article assembly as claimed in claim 5, wherein said toe end of said first and second feet are at an acute angle to one another.

\* \* \* \* \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.        : 7,653,959 B1                                    Page 1 of  3
APPLICATION NO.  : 09/505791
DATED             : February 2, 2010
INVENTOR(S)      : Catanzaro

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

The title page, showing an illustrative figure, should be deleted and substitute therefor the attached title page.

Delete drawing sheets 1-2 and substitute therefor the drawing sheet, consisting of figures 1-2 as shown on the attached page.

Signed and Sealed this

Eighteenth Day of May, 2010

David J. Kappos
*Director of the United States Patent and Trademark Office*

CERTIFICATE OF CORRECTION (continued)                          Page 2 of 3

(12) **United States Patent**                    (10) Patent No.:     **US 7,653,959 B1**
Catanzaro                                         (45) Date of Patent:      **Feb. 2, 2010**

(54)  **ARTICLE ASSEMBLY**

(76)  Inventor:   **David Catanzaro,** 626 Penn Ave.,
                  Mayfield, PA (US) 18433

( * )  Notice:    Subject to any disclaimer, the term of this
                  patent is extended or adjusted under 35
                  U.S.C. 154(b) by 0 days.

(21)  Appl. No.: 09/505,791

(22)  Filed:      **Feb. 17, 2000**

**Related U.S. Application Data**

(63)  Continuation of application No. 08/777,032, filed on
      Dec. 30, 1996, now Pat. No. 6,026,532.

(51)  Int. Cl.
      *A46B 9/04*          (2006.01)
(52)  U.S. Cl. ....................... **15/167.1**; 15/184; 15/143.1;
              15/257.01; D4/108; D4/107; D6/534; 248/111;
                                              248/908; 132/308
(58)  **Field of Classification Search** ................ D4/104,
          D4/107, 108, 125, 126;  D6/528, 534;  15/167.1,
             15/143.1, 184, 257.01, 146, 246;  248/163.1,
             248/188.8, 188.9, 110, 111, 915, 908;  132/308,
                                    132/309;  206/362.3, 349, 457
      See application file for complete search history.

(56)                   **References Cited**

              U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D155,668 | S | * | 10/1949 | Zandberg et al. ............. D4/107 |
| 2,539,035 | A | * | 1/1951 | Scanlon et al. ............. 248/111 |
| D197,309 | S | * | 1/1964 | Feverbacher ................ D4/107 |
| 3,138,813 | A | * | 6/1964 | Kaplan ......................... 15/22 |
| 3,140,782 | A | * | 7/1964 | Schulte ...................... 248/908 |
| D209,574 | S | * | 12/1967 | Zandberg et al. ............ D4/107 |
| D279,248 | S | * | 6/1985 | Oliver ......................... D6/104 |
| 5,269,420 | A | * | 12/1993 | Harrison et al. ......... 206/362.3 |
| 5,353,464 | A | * | 10/1994 | Atkins et al. .............. 15/167.1 |
| 5,444,889 | A | * | 8/1995 | Barre ......................... 15/167.1 |
| D363,166 | S | * | 10/1995 | Perrine ....................... D4/104 |
| D369,932 | S | * | 5/1996 | Petronio .................... D6/534 |
| D370,146 | S | * | 5/1996 | Petronio .................... D6/534 |
| D370,147 | S | * | 5/1996 | Petronio .................... D6/534 |
| 5,590,436 | A | * | 1/1997 | Wright ....................... 15/105 |
| 5,675,859 | A | * | 10/1997 | Barre ........................ 15/167.1 |
| D388,254 | S | * | 12/1997 | Schiffer ..................... D4/107 |
| D392,464 | S | * | 3/1998 | Jesiolowski ................ D4/107 |
| D395,757 | S | * | 7/1998 | Schiffer ..................... D4/107 |
| 6,015,328 | A | * | 1/2000 | Glaser ...................... 15/167.1 |
| 6,026,532 | A | * | 2/2000 | Catanzaro .................. 15/167.1 |
| 6,141,815 | A | * | 11/2000 | Harrison et al. .............. 15/145 |

                   OTHER PUBLICATIONS

Pictures of SALTON Inc. foot stand, stand includes a copyright mark
of 1990.*
Pictures of SALTON Inc. foot stand, stand was on sale in Mar. 1999.*

* cited by examiner

*Primary Examiner*—Gary K. Graham

(57)                   **ABSTRACT**

An assembly comprising a toothbrush having a first and sec-
ond end. A stand in the shape of a pair of feet retains the brush
in a vertical position when the stand is placed on a horizontal
surface. For additional support, a base may be incorporated
with the stand.

                  **8 Claims, 1 Drawing Sheet**




**CERTIFICATE OF CORRECTION (continued)**
U.S. Pat. No. 7,653,959 B1

Page 3 of 3

# FIG.1



# FIG.2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID CATANZARO, | ) | CASE NO. 1:13CV996 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SEAMAN GARSON LLC/LLP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On May 2, 2013, Plaintiff David Catanzaro initiated a legal malpractice action against the Defendants by filing a Complaint in this Court. Catanaro alleges that he suffered damages as a result of the Defendants' "failure to properly represent" him in a patent infringement action that he filed in the Middle District of Pennsylvania, *Catanzaro v. Procter & Gamble,* et al, Case No. 3:09cv2231 (the "Pennsylvania Action"). Specifically, Plaintiff alleges that he was induced to enter into a Patent Purchases, Assignment and Settlement Agreement which caused him to alienate his interest in U.S. Patent No. 6, 026,532 ("the '532 Patent") and give up his interest in a continuation patent, U.S. Patent No. 7, 653,959 ("the '959 Patent"). As part of this settlement agreement, Plaintiff alleges that he was advised by his lawyers to agree to "sell and assign all right, title and interest in the '532 Patent to Church and Dwight" and to grant a non-exclusive use license to Proctor & Gamble and Church & Dwight under the '959 Patent.

Plaintiff alleges that after the parties settled the Pennsylvania Action he continued to bring infringement claims in connection with the '959 patent. Plaintiff alleges that in May 2012, while he was negotiating an infringement claim against Elmer's Products, Inc., ("Elmer") he was

informed by Elmer's attorney that he lost his rights in the '959 Patent. According to Catanzaro, the attorney told him that the '959 Patent had a "Terminal Disclaimer" which rendered his '959 Patent unenforceable because it required that the '532 and '959 Patents be jointly owned. Based on what this attorney allegedly told him, Catanzaro filed the instant malpractice case, contending that Defendants never advised him he would lose the right to enforce his '959 Patent when he settled the Pennsylvania Action.

The Court has determined that this case cannot be litigated in its current posture. Plaintiff Catanzaro is seeking damages from his former counsel for the loss of his '959 Patent rights, alleging that his patent is no longer enforceable due to the Terminal Disclaimer. The problem with this claim is that there has been no judicial determination that Catanzaro cannot enforce the '959 Patent. Defendants maintain that the patent is still enforceable, and until recently, Catanzaro has been enforcing it.

Federal courts cannot issue advisory opinions. *See Bowler v. Young,* 55 F. App'x 187, 188 (4th Cir. 2003) ( "In order for a federal court to exercise jurisdiction over an action, the dispute must satisfy the case or controversy requirement of Article III of the Constitution. A case or controversy exists if the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests. [T]he court may not issue what amounts to an advisory opinion on what the law would be under a hypothetical set of facts."). As part of his case, Catanzaro wants this court to invalidate his '959 Patent, or to hold that he has lost the right to enforce it, but there is nobody in this case who is allegedly infringing his patent and maintaining that Catanzaro has lost his right to enforce it. To be entitled to damages against his former counsel, Catanzaro must demonstrate that he has lost the right to enforce his patent due to Defendants' malpractice in

-2-

connection with the Terminal Disclaimer. Since Defendants maintain that Catanzaro has not lost the right to enforce his '959 Patent, the only way this issue can be decided is through a true adversarial proceeding, one in which the plaintiff (Catanzaro) seeks to enforce his patent, and the defendant (someone using Catanzaro's patent) defends on the basis that Catanzaro has lost the right to enforce it. If Catanzaro prevails in his patent litigation, his malpractice case against his former attorneys evaporates. If a court should determine in the patent litigation that Catanzaro cannot enforce the '959 Patent on some basis other than the Terminal Disclaimer, Catanzaro's malpractice case against his former attorneys also evaporates. If, however, Catanzaro loses his patent enforcement case on the basis of the Terminal Disclaimer, then he has a basis to refile his malpractice case against his former attorneys.

Accordingly, this case is dismissed without prejudice. The Court tolls the statute of limitations as of today for a period of six months (June 12, 2015) to permit Catanzaro to file a patent enforcement action against an alleged infringer. Should Catanzaro file such an action, the tolling of the statute of limitations will remain in place until there is a final judgment in the patent enforcement litigation.

IT IS SO ORDERED.

*/s/ Dan A. Polster    December 15, 2014*
**Dan Aaron Polster**
**United States District Judge**

-3-

INFRINGEMENT CONTENTIONS -- U.S. 7,653,959 B1

| Claim  1 | Defendants "Jungle Friends Shape n' Sort"<br><br>Article Assembly |
|---|---|
| An Article Assembly Comprising: | Yes.  The product is an article assembly. |
| a) an article having a receivable end, and | Yes. The article assembly has an article with a receivable end. |
| b) a stand in the shape of first and second feet, | Yes.  The article assembly has a stand in the shape of first and second feet. |
| each of said first and second feet being elongated to define a toe end and together a common heel end, | Yes.  Each of the first and second feet are elongated to define a toe end and together a common heel end. |
| said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, | Yes.  Each of the first and second feet are joined together and positioned together to form a continuous bottom supporting structure. |
| said heel end of each of said first and second feet being positioned together to form a single heel portion, | Yes.  The heel end of each of the first and second feet are positioned together to form a single heel portion. |
| said single heel portion including a recess extending through a topside thereof and towards a sole thereof  for selectively receiving said receivable end of said article therein, | Yes.  The single heel portion includes a recess extending through a topside thereof and towards a sole thereof for selectively receiving the receivable end of the article therein. |
| Thereby retaining said article when said stand is placed on a horizontal surface, | Yes.  The article is retained when the stand is placed on a horizontal surface. |
| said first and second feet including a side surface, | Yes.  The first and second feet include a side surface. |
| said side surfaces intersecting one another in a common plane. | Yes.  The side surfaces intersect one another in a common plane. |

| <u>Claim  5</u> | Defendants "Jungle Friends Shape n' Sort"<br><br>Article Assembly |
|---|---|
| An Article Assembly Comprising: | Yes.  The product is an article assembly. |
| A stand in the shape of first and second feet, | Yes.  The article assembly has a stand in the shape of first and second feet. |
| each of said first and second feet being elongated to define a toe end and together a common heel end, | Yes.  Each of the first and second feet are elongated to define a toe end and together a common heel end. |
| said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, | Yes.  Each of the first and second feet are joined together and positioned together to form a continuous bottom supporting structure. |
| said heel end of each of said first and second feet being positioned together to form a single heel portion, | Yes.  The heel end of each of the first and second feet are positioned together to form a single heel portion. |
| said single heel portion including a recess extending through a topside thereof and towards a sole thereof, | Yes.  The single heel portion includes a recess extending through a topside thereof and towards a sole thereof. |
| said first and second feet including a side surface, | Yes.  The first and second feet include a side surface. |
| said side surfaces intersecting one another in a common plane. | Yes.  The side surfaces intersect one another in a common plane. |

| Claim 4 | Defendants "Jungle Friends Shape n' Sort"<br><br>Article Assembly |
|---|---|
| The article assembly as claimed in claim 1, wherein said toe end of said first and second feet are at an acute angle to one another. | Yes.  The Accused Products have all of the limitations of claim 1 and has a toe end of the first and second feet that are at an acute angle to one another. |

| Claim 8 | Defendants "Jungle Friends Shape n' Sort"<br><br>Article Assembly |
|---|---|
| The article assembly as claimed in claim 5, wherein said toe end of said first and second feet are at an acute angle to one another. | Yes.  The Accused Product has all of the limitations of claim 5 and has a toe end of the first and second feet that are at an acute angle to one another. |

**Jungle Friends Shape n' Sort Product**





Companies that entered into agreements under the US 7,653,959 B1
patent and their associated products

Case 2:15-cv-01929-MCA-JBC    Document 1-2    Filed 03/16/15    Page 25 of 25 PageID: 40

| Procter & Gamble Co. and Church & Dwight Co. | Knex Brand L.P. | Bee International | JAKKS Pacific, Inc. | Hasbro, Inc. | Elmer's Products, Inc. | LaRose Industries, LLC | Crayola LLC | Avon Products, Inc. |
|---|---|---|---|---|---|---|---|---|
| Spinbrush (Several Versions) | Sesame Street Collection (All Varieties) | Sports Buddies | Club Penguin (All Varieties) | Play-Doh EZ 2 DO Silly Friends | Fuzzoodles (All Varieties) | CRA-Z-ART Softee Dough | My First Crayola (All Varieties) | Kids Brush & Comb Set |






# EXHIBIT D

A) *Bowl with Human Feet, produced ca. 3900–3650 B.C.*



**Bowl with Human Feet**

| | |
|---|---|
| **Period:** | Predynastic, Late Naqada I–Naqada II |
| **Date:** | ca. 3900–3650 B.C. |
| **Geography:** | From Egypt |
| **Medium:** | Polished red pottery |
| **Dimensions:** | diam. 13.2 x W. 13.7 x D. 9.8 cm (5 3/16 x 5 3/8 x 3 7/8 in.) |
| **Credit Line:** | Rogers Fund, 1910 |
| **Accession Number:** | 10.176.113 |

B) *Grimace,* produced ca. 1985



C) Kellogg Company bowls and cups, produced ca. 1981



D) Milton Bradley *Bash*, produced ca. 1965







E) Carlton Walking Ware, produced ca. 1980



# EXHIBIT E

  

Patent



## THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Inventors: | David Catanzaro | Examiner: | Gary Graham |
| Serial No.: | 09/505,791 | Group Art Unit: | 1744 |
| Filed: | 17 February 2000 | | |
| Title: | ARTICLE ASSEMBLY | | |

RECEIVED
SEP - 6 2001
TC 1700

## TERMINAL DISCLAIMER

Hon. Commissioner
    Of Patents & Trademarks
Washington, D.C. 20231

Dear Sir:

This Terminal Disclaimer is to overcome a potential double patenting rejection for the

above-identified case.

**DATE MAILED:** _____9/1/01_____

02/04/2001 KHOLDER1 00000110 09505791

01 FC:140                         55.00 OP



CORRECTION OF PATENTS                                    1490

PTO/SB/26 (10-99)
Approved for use through 9/30/2000, OMB 0651-0031
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A PRIOR PATENT

Docket Number (Optional)

| | |
|---|---|
| In re Application of: | David Catanzaro |
| Application No.: | 09/505,791 |
| Filed: | February 17, 2000 |
| For: | Article Assembly |

The owner*, David Catanzaro , of ___100___ percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term defined in 35 U.S.C. 154 to 156 and 173, as presently shortened by any terminal disclaimer, of prior Patent No. 6,026,532. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 to 156 and 173 of the prior patent, as presently shortened by any terminal disclaimer, in the event that it later: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims cancelled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. ☐   For submissions on behalf of an organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the organization.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2. ☐   The undersigned is an attorney of record.

_David Catanzaro_     8/27/01
Signature        Date

David Catanzaro _____
Typed or printed name

[X]   Terminal disclaimer fee under 37 CFR 1.20(d) included.

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO/SB/96 may be used for making this statement. See MEPP § 324.

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

       Rev. 1, Feb. 2000

# EXHIBIT F

08/777,032    TOOTHBRUSH ASSEMBLY                                                                01-26-2017  15:11:10

# Patent Assignment Abstract of Title

**Total Assignments: 2**

| | | | |
|---|---|---|---|
| **Application #:** 08777032 | **Filing Dt:** 12/30/1996 | **Patent #:** 6026532 | **Issue Dt:** 02/22/2000 |
| **PCT #:** NONE | **Intl Reg #:** | **Publication #:** NONE | **Pub Dt:** |
| **Inventor:** DAVID CATANZARO | | | |
| **Title:** TOOTHBRUSH ASSEMBLY | | | |

**Assignment: 1**

| | | | |
|---|---|---|---|
| **Reel/Frame:** 026415 / 0151 | **Received:** 06/09/2011 | **Recorded:** 06/09/2011 | **Mailed:** 06/09/2011 | **Pages:** 2 |
| **Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS). | | | |
| **Assignor:** CATANZARO, DAVID | | **Exec Dt:** 02/28/2011 | |

**Assignee:** CHURCH & DWIGHT CO., INC.
469 NORTH HARRISON STREET
LAW DEPT. — PATENTS
PRINCETON, NEW JERSEY 08543-5297

**Correspondent:** JANET B. RUBINSTEIN
469 NORTH HARRISON STREET
CHURCH & DWIGHT CO., INC. LAW DEPT.
PRINCETON, NJ 08543-5297

**Assignment: 2**

| | | | |
|---|---|---|---|
| **Reel/Frame:** 039682 / 0199 | **Received:** 09/09/2016 | **Recorded:** 09/09/2016 | **Mailed:** 09/12/2016 | **Pages:** 2 |
| **Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS). | | | |
| **Assignor:** CHURCH & DEWIGHT CO., INC. | | **Exec Dt:** 08/31/2016 | |

**Assignee:** CATANZARO, DAVID
286 UPPER POWDERLY ST
CARBONDALE, PENNSYLVANIA 18407-3060

**Correspondent:** DAVID CATANZARO
286 UPPER POWDERLY ST.
CARBONDALE, PA 18407

Search Results as of: 01/26/2017 15:11:03 PM

**Disclaimer:**
*Assignment information on the assignment database reflects assignment documents that have been actually recorded.*
*If the assignment for a patent was not recorded, the name of the assignee on the patent application publication or patent may be different.*
*If you have any comments or questions concerning the data displayed, contact OPR / Assignments at 571-272-3350*

**Close Window**

# EXHIBIT G

          David mts <davemts1213@gmail.com>

## Patent Infringement Matter

**David Joseph** <davemts1213@gmail.com>                    Fri, Jan 13, 2017 at 1:46 PM
To: info@danschantz.com

Dear Lisa Myers,

Attached please find the Litigation Standstill Agreement I stated I would be sending per our conversation on
Wednesday.

Once the agreement is signed by DSFG, I will fully execute and will provide all pertinent information.

I look forward to receiving the signed agreement at your earliest convenience.

Regards,

David

📎 DSFG_LITIGATION_ STANDSTILL_ AGREEMENT.pdf
   83K

# LITIGATION STANDSTILL AGREEMENT

This Litigation Standstill Agreement ("Agreement") is entered into and effective as of January 13, 2017 ("Effective Date") by and between Dan Schantz Farm & Greenhouses, LLC ("DSFG"), having a principle place of business at 8025 Spinnerstown Road, Zionsville, PA 18092 and _____, Patent Owner ("Owner") having a principle place of business at _____ (hereinafter sometimes individually referred to as "Party" and collectively referred to as the "Parties").

## Recitals

A.    Whereas Owner has evidence that Owner asserts establishes that DSFG infringed his patent (patent no. _____, the "Patent") with one or more products;

B.    Whereas DSFG denies infringing Owner's patent

C.    Whereas Owner and DSFG desire to have full and frank discussions regarding Owner's claim prior to the commencement of patent infringement litigation to avoid such litigation if possible ("Discussions");

D.    Whereas Owner and DSFG desire to preserve the litigation *status quo* for a short period of time to enable such Discussions;

**Now therefore the Parties agree as follows:**

1.    In consideration for the mutual promises set forth herein, Owner and DSFG agree to a discussion period from the Effective Date of this Agreement through and including March 13, 2017 ("Discussion Period").

2.    DSFG agrees that it will not file any action against Owner's Patent or file any lawsuit against Owner for declaratory relief or otherwise until fourteen (14) calendar days after the expiration of the Discussion Period.

3.    Owner in consideration for DSFG agreeing to the Discussion Period, agrees that Owner will not file any lawsuit against DSFG for patent infringement or otherwise until seven (7) calendar days after the expiration of the Discussion Period.

4.    The Parties agree that the making of this Agreement shall not be used by either party for purposes of establishing venue or jurisdiction in the event the Parties are unable to resolve their differences without litigation.

5.    DSFG agrees that during the Discussion Period, and prior to any active lawsuit, it will not disclose the Patent, the Patent number, licenses and the name of Owner/inventor to any third party, other than its financial and legal advisors.

7.    The Parties hereby agree that this Agreement shall constitute, for the Party breaching this Agreement, a Stipulation for Dismissal Without Prejudice for any action filed in violation of this Agreement.

8.    This Agreement shall be governed by Pennsylvania law without regard to its conflict of law principles.

9.    This Agreement shall constitute the entire understanding between the Parties and supersede, according to their terms, all prior-understandings, whether oral or written, of the Parties hereto relating to the subject matter herein and cannot be changed or terminated orally.

10.    The Parties shall execute any such other documents as may be reasonably required or as may reasonably be necessary to effectuate any other requirement or agreement herein.

11.    This Agreement may be executed in several counterparts, each of which shall be deemed an original.

12.    Execution of this Agreement may be effected by facsimile, pdf or other electronic transmission.


Dan Schantz Farm & Greenhouses, LLC:


Signature:_____    Date: _____

Printed Name:_____

Title:_____


Patent Owner

Signature:_____    Date: _____

Printed Name:_____

# EXHIBIT H

    David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts** <davemts1213@gmail.com>                          Wed, Jan 18, 2017 at 4:09 PM
To: Douglas Panzer <dpanzer@flblaw.com>

Dear Douglas,

I appreciate our recent conversation. Per our conversation, It is my desire that your client (DSFG) opens up a dialog wherein I would provide them with all necessary information. By entering into the standstill agreement, DSFG will have all necessary information to make an informed decision as to whether or not litigation could be prevented.

With regards to your question as to whether or not the litigation would be filed in your district, the clear answer is NO. I randomly picked the number you seen on your caller ID to identify with your area, I am not located in that area.

Thanks,
David
[Quoted text hidden]

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID CATANZARO                                    :
286 Upper Powderly Street                          :
Carbondale, PA 18407                               :
                                                   :
        Plaintiff                                  :
                                                   :   Case No.
        Vs.                                        :
                                                   :   Judge
SEAMAN GARSON LLC/LLP                              :
Rockefeller Building, 16th Floor                   :   Magistrate Judge
614 W. Superior Avenue                             :
Cleveland, Ohio 44113                              :
                                                   :   JURY DEMAND
        and                                        :   ENDORSED HEREON
                                                   :
James A. DeRoche                                   :
Rockefeller Building, 16th Floor                   :
614 S. Superior Avenue                             :
Cleveland, Ohio 44113                              :
                                                   :
        and                                        :
                                                   :
Wayne D. Porter, Jr.                               :
1370 Ontario Street, #600                          :
Cleveland, Ohio 44113-1752                         :
                                                   :
        and                                        :
                                                   :
John and Jane Doe                                  :
Seamon Garson LLC                                  :
Rockefeller Building, 16th Floor                   :
614 W. Superior Avenue                             :
Cleveland, Ohio 44113                              :
                                                   :

```
        and                              :
                                         :
John  or Jane Doe                        :
Law Offices of Wayne Porter, Jr.         :
1370 Ontario Street, #600                :
Cleveland, Ohio 44113-1752               :
                                         :
        Defendants                       :
```

## COMPLAINT

1.      This action is brought in Legal Malpractice resulting from the Defendants'

failure to properly represent Plaintiff in a Patent Infringement suit entitled "David

Catanzaro  v.  Procter & Gamble, et al, a Middle District of Pennsylvania Case No. 3:08-

CV2231.

2.      As a result of the Defendants' representation, Plaintiff was induced to enter a

"Patent Purchases, Assignment and Settlement Agreement" which caused Plaintiff to

alienate his interest in U.S. Patent No. 6,026,532 ("the 532 Patent") and in the process

neglected to preserve and thereby rendered ineffective the Plaintiff intellectual property

interest in a "Continuation Patent" U.S. No. 7, 653,959 (The "959" Patent.")

## THE PARTIES

3.     Plaintiff David Catanzaro is an individual, a resident of the State of Pennsylvania. David Catanzaro is a novice inventor and holds utility patents.

4.     Defendant Seamon Garson LLC is a Law Firm incorporated in the State of Ohio with offices in Cleveland, Ohio.

5.     James A. DeRoche is an attorney practicing in Cleveland, Ohio with the firm of Seamon Garson. DeRoche was engaged by Plaintiff Catanzaro to represent his interests in the Catanzaro v. Procter & Gamble, et al case. At all times herein DeRoche was acting within the scope of his partnership, ownership, employment and/or Agency with the Seamon Garson Firm.

6.     Wayne D. Porter, Jr. is a Cleveland, Ohio Lawyer and is the owner and founder of the Wayne D. Porter, Jr. Law firm and at all times was acting in the scope of his engagement by Seamon Garson as Co-Counsel in the Catanzaro v. Procter & Gamble lawsuit and equally shared in the contingent fee collected by Seamon Garson and the Porter firm in that settlement.

7.     The John or Jane Doe Defendants are any personnel at the Seamon Garson firm or the Wayne D. Porter firm who had responsibility for reviewing the 532

3

and the 959 Patents along with their case history and evaluating them in terms of the

Settlement Agreement language in the Catanzaro Litigation.

## JURISDICTION AND VENUE

8.     The amount in controversy exceeds Seventy-Five Thousand and

00/100 ($75,000.00) dollars and jurisdiction is proper by Diversity of Citizenship under

28 USC § 1332 (a)(1).  This Court's exclusive jurisdiction is also proper in that the

Plaintiffs' right to relief necessarily depends on a resolution of a substantial question of

Federal Patent Law under 28 USC § 1338(a).

9.     Venue is proper in Ohio Court because portions of the business

conducted were conducted out of business offices in this venue and the Defendants all

reside in this venue.

## FACT ALLEGATIONS

10.     David Catanzaro is an Independent Investor who has twice obtained

patents on design utility of his making from the U.S. Patent Office.

11.     The first patent was U.S. Patent No. 6,026,532 (hereinafter "The 532

Patent").  This patent was obtained on February 22, 2000.  It featured a utility patent

design featuring a toothbrush, a stand for the brush in the shape of feet and bristle cover.

The foot stand and bristle cover are so designed that when combined with the brush itself,

4

viewed together the two components with the brush form the embodiment of a desired animate or inanimate object. The desired embodiment could also be achieved without utilizing the toothbrush cover. The foot stand having a recess to accept the toothbrush therein, is the main claimed feature of the patent. The foot stand of the 532 Patent can only accept a toothbrush therein.

12.    The second patent was U.S. Patent No, 7,653,959 (hereinafter "The 959 Patent"). This patent was obtained as a continuation of and on the 532 Patent and featured the design of the foot stand as its essential component itself. Like the 532 Patent, the 959 would maintain the same limitations on foot stand, but this Continuation Patent was obtained to expand the range of other possible articles other than a toothbrush, which could be inserted into the foot stand.

13.    Over time Catanzaro took note of a variety of products whose design infringed upon both of his patents.

14.    On December 15, 2009, Catanzaro filed an action "Pro se" in the U.S. District Court for the Middle District of Pennsylvania entitled David Catanzaro v. Procter and Gamble, et al. The case was assigned #3:08 CV 02231. This action was brought against Procter and Gamble Co. and Church & Dwight Co. for manufacturing, imposing, using and offering for sale a children's product line named "Spinbrush" which, it was alleged, infringed on Catanzaro's 532 Patent.

5

15.    Plaintiff Catanzaro understood that he could not prosecute the case successfully on his own behalf and sought legal counsel by searching the internet using search engines that assured searches that the attorney handled "Intellectual Property Disputes".

16.    In such a search Catanzaro found a website posted by Defendant Seaman Garson advertising Defendant James A. DeRoche and citing "Intellectual Property Disputes" as one of his "areas of practice".

17.    In March of 2009, Catanzaro contacted DeRoche and negations were instituted to hire DeRoche to take representation of Catanzaro in the Case of "David Catanzaro vs. Procter and Gamble et al."

18.    On April 2, 2009, Defendant DeRoche sent Plaintiff Catanzaro a letter outlining the "terms" of his and Seaman Garson's representation of Catanzaro in "Catanzaro vs. Procter and Gamble, et al", and requesting that Catanzaro sign and return a copy of the letter as agreeing to the "terms" of representation.  Catanzaro so agreed and signed the letter of representation.  (See Exhibit "A" attached hereto).

19.    The pertinent "terms" to the agreement were as follows: The case would be handled jointly by Seaman Garson, LLP and the Law Offices of Wayne D. Porter, Jr. who would share equally in a contingent fee of 40%.  The case would be transferred to the Northern District Of Ohio where the law firms officed.

6

20.   Catanzaro filed a Motion To Transfer The Case to the Northern District of Ohio on April 26, 2009. The motion was drafted by Seaman Garson and Porter but signed "Pro se" by Catanzaro.

21.   A report and recommendation was filed in the Middle District of Pennsylvania Court recommending that the Motion to Transfer be denied on June 26, 2009.

22.   This prompted DeRoche, Seaman Garson and Porter to draft a Second Amended Complaint, as filed, and a Leave To File on July 7, 2009 and this Second Amended Complaint, was again, in Catanzaro's name Pro se. An order transferring the case to the Northern District of Ohio was granted on February 8, 2010. The transfer was journalized in Ohio on February 23, 2010.

23.   The Discovery was held in 2010 and the parties agreed to mediation held on February 14, 2011.

24.   As settlement to the Mediation, Plaintiff Catanzaro was advised by his attorneys, Defendants Seaman Garson, DeRoche and Porter to "sell and assign all right, title and interest in the 532 Patent to Church and Dwight" and to grant a license to use (non-exclusive) and enter into a covenant not to sue Procter and Gamble and Church and Dwight under the 959 Patent. In return for the purchase and assignment of the 532 Patent and license and Covenant on the 959 Patent, Plaintiff was paid One Hundred Twenty-Five Thousand and 00/100 ($125,000.00) dollars. Payment was made in Trust to

Attorney-Defendant Wayne Porter.  Porter and Seaman Garson and DeRoche received

40% of that amount plus costs advanced and the balance was paid to Catanzaro.  (See

Exhibit "B" attached hereto).

25.    Catanzaro proceeded to enforce infringement claims utilizing the

959 Patent.  He resolved five (5) such claims for several hundred thousand dollars.

26.    In early May 2012 while negotiating an infringement claim against

Elmer's Products, Inc., (Elmer's Glue) on the 959 Patent, Catanzaro was informed by the

attorney for Elmer's that he had lost his rights in the 959 Patent because Church & Dwight

had purchased the 532 Patent, thus rendering the "Continuation Patent" unenforceable.

The attorney from Elmer's further stated that there was a "Terminal Disclaimer" filed

within the case file of the 959 Patent, which states that the 532 and the 959 Patent must

be jointly owned by the same owner, for the 959 Patent to be enforceable.  He further

went on to state that a Terminal Disclaimer is mandatory instated by the Patent and

Trademark Office when a Continuation Patent has similar claims to the parent patent.

Immediately after the Elmer's meeting Catanzaro found out that Church & Dwight

had allowed the 532 Patent to expire for non-payment of the final maintenance fee which

was due in February 2012.

27.    Catanzaro contacted Defendant Wayne Porter immediately.  Porter

was traveling but promised to address the issue by mid-month.  Catanzaro requested that

8

Porter contact Church & Dwight and Procter and Gamble to give him the opportunity to
enforce his 959 Patent or reacquire rights under the 532.

28.    In late June, Porter emailed Catanzaro:

"C&D is not interested in assigning the expired patent to you.  No
reason was given."

29.    Defendant DeRoche had also been contacted by Catanzaro and
DeRoche's response:

From:  David Catanzaro
Thu, June 28, 2012

Wayne:

Please keep me updated today as to what you and Jim have
discussed regarding C&D.

James A. DeRoche
Thu, June 28, 2012

I am not discussing anything regarding C&D with anybody.  As far as
I am concerned the matter is closed.

30.    Plaintiff Catanzaro had been contemplating 10 different patent
infringement claims that he could make under the 959 Patent from which he now believed
he is foreclosed from pursuing by virtue of Defendants' Malpractice.  The companies
include McDonald's Corp.; The Walt Disney Company; Mattel Inc.; Crayola LLC; the
M&M Company; and others.

31.    The 959 Patent would have been enforceable to December 2016.

9

Defendants, collectively, failed to protect Plaintiff's interest in the 959 Patent while negotiating the Mediation Agreement, though fully aware of Plaintiff's desire to enforce the 959 Patent against other infringers.

## COUNT ONE – PROFESSIONAL NEGLIGENCE

Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 31 of the Complaint as if fully restated herein.

32. At all times relevant, Defendants had a duty to act in accordance with the standard of care to which attorneys, including those practicing patent law, are held.

33. Defendants' acts and omissions while representing Plaintiff violated and fell below the applicable standard of care in the legal profession.

34. As a direct and proximate result of Defendants' malpractice, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT TWO – RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 34 of the Complaint as if fully restated herein.

35. At all times relevant hereto, Defendants DeRoche, Porter, Jr., John and Jane Doe's were acting in the course and scope of their respective partnerships,

10

employment and/or agencies with their law firms and were partners, employees and/or agents of their firms.

36.    As partners, employees and/or agents, Defendants' wrongful conduct as set forth herein is deemed to be the conduct of Defendants Seamon Garson.

37.    Accordingly, Seamon Garson are liable for the wrongful or negligent acts or omissions of their partners, employees and/or agents.

11

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

(a)     Award Plaintiff compensatory damages in excess of $75,000.00;

(b)     Award Plaintiff his reasonable attorneys fees and costs; and

(c)     Grant such further relief as may be just and proper.

Respectfully submitted,


s/MICHAEL P. CASSIDY
MICHAEL P. CASSIDY - #0001087
Cassidy & Associates
Attorney for Plaintiff
11221 Pearl Road
Strongsville, Ohio 44136
(440) 846-0000 Ext. 222
(440) 846-9770 – Facsimile




## JURY DEMAND

Plaintiff hereby demands a trial by jury.

s/MICHAEL P. CASSIDY