## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : CIVIL ACTION |
| Plaintiff, | : |
| v. | : NO. 5:2017-cv-00403 |
| DAVID J. CATANZARO | : THE HONORABLE |
| | : JEFFREY L. SCHMEHL |
| Defendant | : |

## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

This Motion is responsive to Plaintiff's First Amended Complaint. Pursuant to Rule 12(b)(1), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant David J. Catanzaro herby moves to dismiss this action.

Declaratory Judgment Jurisdiction is not proper. This honorable court lacks subject matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure rendering the claim not ripe for adjudication.

Venue is not proper pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure because a substantial part of the events or omissions giving rise to the claim are unfounded.

Without Subject Matter Jurisdiction and without Venue, Plaintiff fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This lawsuit has been filed in Bad Faith and exemplary damages should be awarded to Defendant.

This Motion is based on the Brief in support and Supplemental Memorandum filed concurrently herewith. For the foregoing reasons and for the reasons set forth in the accompanying Brief and Supplemental Memorandum, Defendant David J. Catanzaro respectfully requests dismissal of this action.

Respectfully submitted,                                  Dated: April 27, 2017

*s/ David J. Catanzaro*
David J. Catanzaro
Defendent *Pro Se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

## CERTIFICATE OF SERVICE

I, David Catanzaro, hereby certify that a true and correct copy of the forgoing Motion to Dismiss

Plaintiff's First Amended Complaint was sent by First Class Mail to the United States District

Court for the Eastern District of Pennsylvania and served via First Class Mail upon Plaintiff this

27th   day of April 2017 to the following person:


DAN SCHANTZ FARM &
GREENHOUSES, LLC
c/o DOUGLAS PANZER
FITZPATRICK LENTZ & BUBBA
4001 Schoolhouse Lane
Center Valley, PA 18034


<div align="right">

*s/ David J. Catanzaro*
David J. Catanzaro

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 5:2017-cv-00403 |
| DAVID J. CATANZARO | THE HONORABLE JEFFREY L. SCHMEHL |
| Defendant | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant David J. Catanzaro respectfully submits this brief in support of its Motion to Dismiss Plaintiff's First Amended Complaint.

## RELEVANT FACTS

1. Defendant contacted Plaintiff by phone on 1-11-17.

2. During the phone call of 1-11-17, Defendant only provided his first name along with a limited conversation focused on the fact that Plaintiff was selling 'Decorative Planter' products that Defendant believed had similarities to a patent or patent application in possession by Defendant.

3. Further during the conversation of 1-11-17, Defendant stated that he had absolutely no intention in filing any lawsuit associated with this matter and that Defendant wanted both Defendant and Plaintiff to enter into a draft Litigation Standstill Agreement (attached as **Exhibit**

1

A) to discuss the full merits of the matter.

4. Defendant further stated during the conversation of 1-11-17 that after Plaintiff entered into the litigation standstill agreement, Defendant would provide the patent or patent application number at issue along with any and all other relevant information .

5. Plaintiff stated that the Litigation Standstill Agreement would be reviewed.

6. Defendant emailed Plaintiff the Litigation Standstill Agreement on 1-13-17 and restated in said email that Defendant "will provide all pertinent information once the agreement is signed by DSFG" (refer to **Exhibit B**).

7. On 1-18-17 Defendant received an email with a letter attached from Plaintiff's Attorney Douglas Panzaer (**Exhibit C**).

8. In the letter dated 1-18-17 Plaintiffs Attorney Douglas Panzaer refers to Defendant's call to his client of 1-11-17 and email of 1-13-17 in paragraph two line one as follows:

> *"Due to the intentional omissions of material information in your telephone call, email and the proposed Litigation Standstill Agreement, they fail to provide any legal notice to DSFG of a colorable claim."*

9. Mr. Panzaer's letter of 1-18-17 further stated and concluded as follows:

> *"Should you desire to discuss this matter further, you must:*
>
> *1. Identify a valid United States patent you claim to be infringed or patent application that you claim would be infringed if issued;*
> *2. Identify, with particularity, the products you allege to infringe such patent;*
> *3. Identify, with particularity, the claims you allege to be infringed and the corresponding elements of such product, which you allege constitute infringement;.*
> *4. Identify the true party in interest of your alleged claims; and*
> *5. Specify the relationship to the true party in interest.*

2

*Absent the above information, DSFG does not have proper legal notice of any claim of infringement or a reasonable ability to evaluate your statements, claims, or proposal. Unless we receive this information by Friday, January 27, 2017, we will consider this matter closed."*

10. On 1-18-17 after Defendant reviewed the above noted letter, Defendant called Plaintiff's Attorney Douglas Panzaer to open a dialog and to further discuss the matter.

11. During the conversation with Douglas Panzer, Defendant restated that a negotiation period would be the best way to move forward and that the provided Litigation Standstill Agreement would maintain the status-quo between both parties.

12. Within the conversation Douglas Panzer asked the following question: *"If you were to file a lawsuit would it be in the Eastern District of PA?"*

13. Defendant did not specifically answer the stated question but answered as follows: *"I have no intention in filing a lawsuit, and if I did I would have filed one already."*

14. Defendant believes that Douglas Panzer posed the above question as a result of seeing an Eastern District phone number on his caller ID when Defendant placed the call.

15. Further during the conversation of 1-18-17 Plaintiff's attorney Douglas Panzer agreed, promised and reassured Defendant that if Defendant provided at a minimum, his full legal name prior to Plaintiff signing said agreement(which Defendant agreed to provide) he (Douglas Panzer) would recommend to his client to enter into the Litigation Standstill Agreement and provide Defendant with a communication confirming his client's approval or response.

16. Following the conversation of 1-18-17, Defendant emailed attorney Douglas Panzer referencing the above noted phone conversation **(Exhibit D)**.

3

17. Within Defendant's email of 1-18-17, Defendant directly answered the question attorney

Douglas Panzer posed during the 1-18-17 conversation as stated in point 12 as follows:

*"With regards to your question as to whether or not the litigation would be filed in your district, the clear answer is NO. I randomly picked the number you seen on your caller ID to identify with your area; I am not located in that area."*

18. The written answer Defendant disclosed was specifically addressing, within the narrowest

of context, 'only' the question attorney Douglas Panzer posed. Defendant's answer does not

reflect the 'agreement or covenant of understanding' that was reached by the Defendant and

Plaintiff's attorney Douglas Panzer during the phone conversation of 1-18-17.

19. The oral agreement or covenant of understanding that was reached between the Defendant

and Plaintiff's attorney Douglas Panzer during the conversation of 1-18-17 was that attorney

Panzer agreed, promised and reassured Defendant that he would recommend to his client (the

Plaintiff), to enter into the Litigation Standstill Agreement and respond back to Defendant with

respect to his clients response to entering into said agreement. In return, Defendant would

disclose his full legal name prior to Plaintiff signing said agreement and after the agreement was

signed, Defendant then would fully disclose all pertinent information regarding the matter with

the goal of Defendant and Plaintiff reaching a resolution without having any legal entanglements.

20. **Exhibit E** contains several email correspondences between Defendant and Plaintiff's

attorney Douglas Panzer which clearly support the oral agreement or covenant of understanding

reached between the parties as outlined in point 19 above.

21. In **Exhibit E** an email was sent to Defendant by Plaintiff's attorney Douglas Panzer dated

prior to Plaintiff filing this action, wherein Mr. Panzar states:

4

*"As you may know, Dan Schantz had a serious fire this month that caused damage and disruption. I will have a substantive response for you as soon as possible."*
22. Within two days after the above stated email was sent to Defendant, Plaintiff's attorney

Douglas Panzer filed this instant action and provided NO prior response as defined in his

email dated 1-25-17 and failed to respond to Defendant's emails of 1-30-17 and 2-1-17.

23. When Defendant found out through the internet that Plaintiff's attorney Douglas Panzer

filed this instant action, Defendant was more than outraged.

24. Defendant immediately called Plaintiff's attorney Douglas Panzer late in the afternoon of 2-

1-17 and expressed to him that he is an officer of the court and his blatant lies about moving

forward with the Litigation Standstill Agreement and getting back to Defendant with respect to

his client entering into said agreement, while all along preparing and filling this action,

constitutes a very strong showing of 'Bad Faith' which is completely adverse with the Rules of

Professional Conduct and Rules of Civility.

25. Further during the conversation of 2-1-17, Plaintiff's attorney Douglas Panzer stated that he

had to be first to file the lawsuit in the Eastern District because of his duty to his client. Mr.

Parizer went on to say that: "There are many advantages in being the Plaintiff."

   "Federal declaratory judgment is not a prize to the winner of a race to the courthouse."

   (Federal Insurance Co. v. May Department Stores, 808 F. Supp. 347, 350 (S.D.N.Y. 1992).

26. Defendant followed up with an email of 2-2-17 recapping the conversation of 2-1-17

sending it directly to his client (the Plaintiff) and to Mr. Panzer (refer to **Exhibit F**).

(It should be noted that Defendant has not yet made any statements to the press regarding this lawsuit as stated in Defendants letter of 2-2-17. Furthermore, Defendant has not filed a disciplinary action with the disciplinary board, but rather has filed a 'Motion for Disciplinary Action' with this honorable court concurrently with this brief. Lastly,

5

the last paragraph of Defendants letter of 2-2-17 is governed under FRE 408 and as a result, was redacted from the communication.)

Declaratory Judgment Jurisdiction is not proper. This honorable court lacks subject matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure rendering the claim not ripe for adjudication.

## A. **Declaratory Judgment Jurisdiction is not proper. This honorable court lacks subject matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.**

Defendant never revealed a specific patent or patent application that Plaintiff was infringing. Defendant never stated a specific infringing product nor provided any product UPC code or product number. Defendant only referred to the product as "Decorative Planters" as affirmed in Plaintiff's letter of 1-18-17. Plaintiff's letter of 1-18-17 further states that Defendant must: *"Identify, with particularity, the products you allege to infringe such patent."* (refer to **Exhibit C**). Defendant never provided any further details about the product at any time after the 1-18-17 letter. Defendant never made a demand of any kind prior to the original filing of this action nor did Defendant provide any claim chart identifying any claims which Plaintiff's product infringes. Defendant only made a demand for 'Pain and Suffering" after Mr. Panzer demanded Defendant make such a demand. Defendant again refers to Plaintiff's letter of 1-18-17 (**Exhibit C**) to affirm that Plaintiff agrees and clearly states that there is no "Colorable Claim" or Controversy. To reiterate, the following excerpts from that letter should be duly noted:

*"Due to the intentional omissions of material information in your telephone call, email and the proposed Litigation Standstill Agreement, they fail to provide any legal notice to DSFG of a colorable claim."*

*Should you desire to discuss this matter further, you must:*

6

*1. Identify a valid United States patent you claim to be infringed or patent application that you claim would be infringed if issued;*

*2. Identify, with particularity, the products you allege to infringe such patent;*

*3. Identify, with particularity, the claims you allege to be infringed and the corresponding elements of such product, which you allege constitute infringement;.*

*4. Identify the true party in interest of your alleged claims; and*

*5. Specify the relationship to the true party in interest.*

*Absent the above information, DSFG does not have proper legal notice of any claim of infringement or a reasonable ability to evaluate your statements, claims, or proposal. Unless we receive this information by Friday, January 27, 2017, we will consider this matter closed."*

On the very same day Plaintiff filed this instant action (1-27-17), Plaintiff stated in the 1-18-17 letter that this matter would be closed on 1-27-17 if Defendant did not provide the above Information, of which Defendant did not provide the stated information on or before 1-27-17.

The Declaratory Judgment Act does not provide an independent basis of subject matter Jurisdiction Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Instead, "[i]ts remedy may lie only if the court has jurisdiction from some other source." Cat Tech, 528 F.3d at 879; see Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The party seeking to establish declaratory judgment jurisdiction bears the burden of demonstrating that an Article III case or controversy exists at the time the claim for declaratory relief is filed. Plaintiff has the burden "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed." Sierra Applies Scis., Inc. v. Advanced Energy Indus., 363 F.3d 1361, 1373 (Fed. Cir. 2004) (citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enters. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)). Hear, Plaintiff filed this instant action within 9-days after entering into an oral agreement or covenant of understanding with the Defendant and providing the Defendant with the letter of 1-18-17, wherein said letter states there is no "Colorable Claim"

7

or Controversy with the Defendant. At the time this action was filed, Defendant had not supplied any of the information requested in said letter to trigger a "Colorable Claim" or Controversy. (Again, Refer to Plaintiff's letter of 1-18-17 **Exhibit C**.)

Because Article III of the Constitution restricts the judicial power to the adjudication of "Cases" or "Controversies," U.S. Const. Art. III, § 2, a court may not adjudicate "a difference or dispute of a hypothetical or abstract character" or "one that is academic or moot." Aetna, 300 U.S. at 240. Instead, a justiciable controversy exists only where a dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," and will "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. at 240–41; see MedImmune, 549 U.S. at 127.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Accordingly, even if a case or controversy exists, the trial court has significant discretion in determining whether or not to exercise declaratory judgment jurisdiction. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).

Defendant owns several utility patents along one design patent and one application will be issuing this year (2017). With regards to Defendant's design patent, a Notice of Allowance for was received by Defendant well prior to Defendant contacting Plaintiff. Based on current communications from the Patent and Trademark office, Defendant is further expecting a Notice of Allowance for the above application mentioned herein.

8

Because Plaintiff came across litigation that involved Defendant's patent No. 7,653,959, (the '959 patent) does not give Plaintiff legal standing to move forward with the claims asserted within the first amended complaint. Plaintiff attempts to provide the court with a type of 'circumstantial evidence' to 'infere' or 'speculate' Defendant's intent, which clearly is not conclusive and is completely adverse to Article III of the Constitution previously denoted and again partially noted as follows:

Because Article III of the Constitution restricts the judicial power to the adjudication of "Cases" or "Controversies," U.S. Const. Art. III, § 2, a court may not adjudicate "a difference or dispute of a hypothetical or abstract character" or "one that is academic or moot." Aetna, 300 U.S. at 240. Instead, a justiciable controversy exists only where a dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests."

No further information was provided by Defendant to the Plantiff from the time Defendant received Plaintiff's email letter of 1-18-17 (**Exhibit C**) up to the time this action was filed. Again, in Plaintiff's letter of 1-18-17 Plaintiff states that Defendant: *"fails to provide any legal notice to DSFG of a colorable claim. DSFG does not have proper legal notice of any claim of infringement or a reasonable ability to evaluate your statements, claims, or proposal. Unless we receive this information by Friday, January 27, 2017, we will consider this matter closed."*

Defendant restates the following: Plaintiff has the burden "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed." Sierra Applies Scis., Inc. v. Advanced Energy Indus., 363 F.3d 1361, 1373 (Fed. Cir. 2004) (citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enters. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)).

9

Under Rule 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction may be raised any time. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004). See also LibertyMut. Ins. Co. v. Ward TruckingCorp., 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua sponte.") Rule 12(b)(1) challenges are either facial or factual attacks. Kestelboym v. Chertoff, 538 F. Supp. 2d 813, 815 (D.N.J. 2008). "A facial attack questions the sufficiency of the pleading," and "[i]n reviewing a facial attack, a trial court accepts the allegations in the complaint as true." Id. However, "when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Id. See also Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

In evaluating a Rule 12(b)(I) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891. See also Carpet Group Int'l, 227 F.3d at 69. "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891. The plaintiff has the burden of proving that jurisdiction does in fact exist. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006) (quoting Mortensen, 549 F.2d at 891). In addition, the plaintiff must demonstrate that a controversy existed when the suit was filed and that the controversy continues to exist throughout the litigation. See Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992).

Generally, the trial court should not allow "its consideration of jurisdiction to spill over into a determination of the merits of the case." Kestelboym, 538 F. Supp. 2d at 815 (quoting Dugan v. Coastal Indus., Inc., 96 F. Supp. 2d 481, 483 (E.D. Pa. 2000)). However, a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) based on the legal insufficiency of a claim "is proper. . . when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

Plaintiff's attorney Douglas Panzer states in the complaint on Page 4 Point 22 & 23 that during the conversation of 1-18-17 Defendant stated that he previously filed suit for infringement of his patent and had entered into numerous license agreements as a result thereof. Defendant further denies these statements and asserts that attorney Douglas Panzer used only public disclosure to identify infringement lawsuits filed by Defendant along with public disclosed statements made regarding settlements (refer to Plaintiff's Exhibit B to Exhibit C).

Plaintiff further states in the first amended complaint on Page 4 point 27 that Defendant contacted other parties to allege infringement refusing to provide full information regarding his identity or the identity of the patent and demanding execution of a "litigation standstill agreement" contemplating a 30-day discussion and non-suit period. See Plaintiff's Exhibit C at ¶¶ 13-14. What Plaintiff does not disclose is that in Plaintiff's Exhibit C at ¶ 15, Defendant did provide to ("other parties") Plaintiff (Blue Box) "full information" including Defendant's identity, the patent at issue, the specific product infringing said patent, a claim chart identifying every claim that infringed said patent along with a draft complaint. The Party sited in Plaintiff's Exhibit C clearly had a 'Colorable Claim' or 'Controversy' with Defendant wherein the filing of

11

a Declaratory Judgment action by the plaintiff was appropriate.

Plaintiff further states in the amended complaint that Defendant has filed several infringement lawsuits in the middle district involving the 7,653,959 patent (refer to Plaintiff's Exhibit B). What Plaintiff does not state is that Defendant was compelled to file those lawsuits as a direct result of an order handed down by Federal Judge Dan Aaron Polster Case No. 1:13 CV 996 (Refer to **Exhibit G**). As soon as Case No. 1:13 CV 996 settled, Defendant dismissed each and every one of those referenced lawsuits.

Defendant was not compelled to file a lawsuit against Plaintiff and Defendant assured Plaintiff this was not his intention. An agreement or covenant of understanding was reached between the Defendant and Plaintiff's attorney Douglas Panzer during the conversation of 1-18-17 when attorney Panzer agreed, promised and reassured Defendant that he would recommend to his client (the Plaintiff), to enter into the Litigation Standstill Agreement and respond back to Defendant with respect to his clients response to entering into said agreement. In return, Defendant would disclose his full legal name prior to Plaintiff signing said agreement. After the agreement was signed, Defendant then would fully disclose all pertinent information regarding the matter with the goal of Defendant and Plaintiff reaching a resolution without having any legal entanglements.

Plaintiff's attorney Douglas Panzer blatantly lied to Defendant when he said he would recommend to his client enter into the Litigation Standstill Agreement and then get back to Defendant with respect thereof while all along preparing and filling this action. Defendant relied on Mr. Panzer to follow through on the oral agreement of which he breached. Mr. Panzaer has demonstrated 'Bad Faith' which is completely adverse with the Rules of Professional Conduct

12

and Rules of Civility and has shown complete contempt toward Defendant. Plaintiff's attorney

Douglas Panzer has clearly stated that there is No Colorable Claim or Controversy with Defendant since Defendant has not supplied any information to Plaintiff at the time of this

filling, that would rise to a Colorable Claim or Controversy.

## B. The claim is not ripe for adjudication

Federal jurisdiction over claims under the Declaratory Judgment Act is also restricted by the doctrine of ripeness. Article III of the Constitution, which prohibits federal courts from issuing advisory opinions, is the source of the ripeness doctrine. See Hurley v. Columbia Casualty Co., 976 F. Supp. 268, 272 (D. Del. 1997) (citing Armstrong, 961 F.2d at 410). Thus, if a case is not ripe, a federal court lacks subject matter jurisdiction to adjudicate the claim. Id. Determining the ripeness of a claim for declaratory relief, in which a court may properly render judgment "before an 'accomplished' injury has been suffered," is particularly difficult. Obusek, 72 F.3d at 1154 (quoting Step-Saver Data Systems, Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990). Generally, a court should focus on the timing of the plaintiff's claim in order "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Armstrong, 961 F.2d at 410 (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967) (abrogated on other grounds)). Here, there is no affirmative facts presented by Defendant to Plaintiff to establish a colorable claim or controversy rendering the matter 'Not Ripe' for adjudication. (Defendant refers again to Plaintiff's letter of 1-18-17 **Exhibit C**.) With respect to the literal timing of the filing of this action, Defendant reiterates that during a conversation of 2-2-17, Plaintiff's attorney Douglas Panzer stated that he had to be first to file

13

the lawsuit (in the Eastern District) because of his duty to his client. Mr. Parizer went on to say that: "There are many advantages in being the Plaintiff." Defendant reiterates that in Federal Insurance Co. v. May Department Stores, 808 F. Supp. 347, 350 (S.D.N.Y. 1992, the court states: "Federal declaratory judgment is not a prize to the winner of a race to the courthouse."

## C. Venue is not proper pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure

This honorable court lacks subject matter Jurisdiction as clearly addressed herein. Without subject matter Jurisdiction, a substantial part of the events or omissions giving rise to the claim are clearly unfounded.

## D. Plaintiff fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it does not contain allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,570 (U.S. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (U.S. 2007). Defendant has established within its pleadings, this this honorable court lacks subject matter Jurisdiction. Without subject matter Jurisdiction, a substantial part of the events or omissions giving rise to the claim are clearly unfounded, which establishes improper Venue. Plaintiff fails to state a viable claim upon which relief can be granted since this honorable court lacks subject matter Jurisdiction and Venue is improper.

14

## E. This action has been filed in Bad Faith and exemplary damages should be awarded to Defendant.

Defendant and Plaintiff's attorney Douglas Panzer entered into an oral agreement or covenant of understanding during the conversation of 1-18-17, wherein Mr. Panzer agreed, promised and reassured Defendant he was going to recommend to his client to enter into the Litigation Standstill Agreement provided by Defendant and then get back to Defendant with a response thereof. In return, Defendant agreed he would provide his full legal name prior to Plaintiff signing said agreement, then after the agreement was signed, Defendant would provide all relevant information.

Mr. Panzer is an officer of the court and has blatantly lied about recommending to his client to move forward with the litigation standstill agreement and getting back to Defendant with respect to his client entering into said agreement while all along preparing and filling this action. Mr. Panzer's 'intent to deceive behavior' constitutes a very strong showing of 'Bad Faith' which is completely adverse with the Rules of Professional Conduct and Rules of Civility. As an officer of the court, Mr. Panzer has also demonstrated complete contempt toward Defendant as a result of his malicious, grossly reckless actions and conduct. (Defendant again refers to the emails in **Exhibit E** and **Exhibit F** to support the oral agreement or covenant between the parties.)

Attorney Douglas Panzer has clearly stated that there is No Colorable Claim or Controversy as denoted within his letter of 1-18-17 (**Exhibit C**). Since Defendant has not supplied any information to Plaintiff at the time of this filling that would rise to a Colorable Claim or Controversy, the filing of this action should be viewed as frivolous and in step with the Bad Faith

15

actions taken by attorney Douglas Panzer, all in an effort to get his client first to the court

house to establish home town Jurisdiction and Venue to 'unfairly disadvantage' the Defendant.

Defendant again reiterates that during a conversation of 2-2-17, Plaintiff's attorney Douglas

Panzer stated that he had to be first to file the lawsuit because of his duty to his client. Mr.

Parizer went on to say that: "There are many advantages in being the Plaintiff."

## CONCLUSION

For the forging reasons, Defendant David J. Catanzaro respectfully requests dismissal on the

merits and asks this honorable court for exemplary damages.

Respectfully submitted,                         Dated: April 27, 2017

*s/ David J. Catanzaro*
David J. Catanzaro
Defendent *Pro Se*
286 Upper Powderly Street
Carbondale, PA  18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | NO. 5:2017-cv-00403 |
|  | : |  |
| DAVID J. CATANZARO | : | THE HONORABLE |
|  | : | JEFFREY L. SCHMEHL |
| Defendant | : |  |

## Proposed **ORDER**

Now, this _____ day of _____, 2017, the Honorable Jeffery L. Schmehl,

having considered Defendant David J. Catanzaro's Motion to Dismiss, and the parties' briefs

and the arguments in relation thereto, Defendant's Motion to Dismiss is GRANTED.


SO ORDERED


_____

Honorable Jeffrey L. Schmehl

## CERTIFICATE OF SERVICE

I, David Catanzaro, hereby certify that a true and correct copy of the forgoing Brief in Support of

Motion to Dismiss Plaintiff's First Amended Complaint was sent by First Class Mail to the

United States District Court for the Eastern District of Pennsylvania and served via First Class

Mail upon Plaintiff this 27th day of April 2017 to the following person:

DAN SCHANTZ FARM &
GREENHOUSES, LLC
c/o DOUGLAS PANZER
FITZPATRICK LENTZ & BUBBA
4001 Schoolhouse Lane
Center Valley, PA 18034

                                                    s/ David J. Catanzaro
                                                    David J. Catanzaro

# Exhibit A

## LITIGATION STANDSTILL AGREEMENT

This Litigation Standstill Agreement ("Agreement") is entered into and effective as of January 13, 2017 ("Effective Date") by and between Dan Schantz Farm & Greenhouses, LLC ("DSFG"), having a principle place of business at 8025 Spinnerstown Road, Zionsville, PA 18092 and _____, Patent Owner ("Owner") having a principle place of business at _____
(hereinafter sometimes individually referred to as "Party" and collectively referred to as the "Parties").

### Recitals

A.     Whereas Owner has evidence that Owner asserts establishes that DSFG infringed his patent (patent no. _____, the "Patent") with one or more products;

B.     Whereas DSFG denies infringing Owner's patent

C.     Whereas Owner and DSFG desire to have full and frank discussions regarding Owner's claim prior to the commencement of patent infringement litigation to avoid such litigation if possible ("Discussions");

D.     Whereas Owner and DSFG desire to preserve the litigation *status quo* for a short period of time to enable such Discussions;

#### Now therefore the Parties agree as follows:

1.     In consideration for the mutual promises set forth herein, Owner and DSFG agree to a discussion period from the Effective Date of this Agreement through and including March 13, 2017 ("Discussion Period").

2.     DSFG agrees that it will not file any action against Owner's Patent or file any lawsuit against Owner for declaratory relief or otherwise until fourteen (14) calendar days after the expiration of the Discussion Period.

3.     Owner in consideration for DSFG agreeing to the Discussion Period, agrees that Owner will not file any lawsuit against DSFG for patent infringement or otherwise until seven (7) calendar days after the expiration of the Discussion Period.

4.     The Parties agree that the making of this Agreement shall not be used by either party for purposes of establishing venue or jurisdiction in the event the Parties are unable to resolve their differences without litigation.

5.     DSFG agrees that during the Discussion Period, and prior to any active lawsuit, it will not disclose the Patent, the Patent number, licenses and the name of Owner/inventor to any third party, other than its financial and legal advisors.

7.    The Parties hereby agree that this Agreement shall constitute, for the Party breaching this Agreement, a Stipulation for Dismissal Without Prejudice for any action filed in violation of this Agreement.

8.    This Agreement shall be governed by Pennsylvania law without regard to its conflict of law principles.

9.    This Agreement shall constitute the entire understanding between the Parties and supersede, according to their terms, all prior-understandings, whether oral or written, of the Parties hereto relating to the subject matter herein and cannot be changed or terminated orally.

10.   The Parties shall execute any such other documents as may be reasonably required or as may reasonably be necessary to effectuate any other requirement or agreement herein.

11.   This Agreement may be executed in several counterparts, each of which shall be deemed an original.

12.   Execution of this Agreement may be effected by facsimile, pdf or other electronic transmission.

Dan Schantz Farm & Greenhouses, LLC:

Signature:_____    Date: _____

Printed Name:_____

Title:_____

Patent Owner

Signature:_____    Date: _____

Printed Name:_____

# Exhibit B

 Gmail                    David mts <davemts1213@gmail.com>

## Patent Infringement Matter

**David Joseph** <davemts1213@gmail.com>           Fri, Jan 13, 2017 at 1:46 PM
To: info@danschantz.com

Dear Lisa Myers,

Attached please find the Litigation Standstill Agreement I stated I would be sending per our conversation on Wednesday.

Once the agreement is signed by DSFG, I will fully execute and will provide all pertinent information.

I look forward to receiving the signed agreement at your earliest convenience.

Regards,

David

🖹 **DSFG_LITIGATION_ STANDSTILL_ AGREEMENT.pdf**
    83K

# Exhibit C



# FITZPATRICK LENTZ & BUBBA

ATTORNEYS AT LAW

FITZPATRICK LENTZ & BUBBA, P.C.· 4001 SCHOOLHOUSE LANE· PO BOX 219· CENTER VALLEY, PA 18034-0219
STABLER CORPORATE CENTER · PHONE: 610-797-9000 · FAX: 610-797-6663 · WWW.FLBLAW.COM

Edward J. Lentz

Joseph A. Fitzpatrick, Jr.

Joseph A. Bubba

Timothy D. Charlesworth

Douglas J. Smillie*

Emil W. Kantra II

Joseph S. D'Amico, Jr.*

Michael R. Nesfeder

Catherine E. N. Durso

Jane P. Long

Erich J. Schock

James A. Bartholomew

Jacob M. Sitman*

Steven T. Boell

Joshua A. Gildea

Marie K. McConnell*

Anthony S. Rachuba, IV*

Karl H. Kline

Thomas J. Schieges*

Barbara Zicherman†

Maraleen D. Shields

Abigail M. Hardin

Colin J. Keefet

Gretchen L. Geisser*

Kenneth R. Charette*

Mallory J. Sweeney*

Veronica M. DeAngelo

John A. Weiss

Peter E. Iorio

† Also admitted in New York
*Also admitted in New Jersey
≠ Registered Patent Attorney

James G. Kellar
1927-2002

Douglas Panzer* ≠
Of Counsel
Intellectual Property Law

Albertina D. Lombardi*
Kathleen M. Mills
Of Counsel

E-mail:  dpanzer@flblaw.com
Direct Dial:  610-797-9000 ext 390

January 18, 2017

**VIA EMAIL (davemts1213@gmail.com)**
"David"

### RE: Alleged Patent Infringement

Dear Sir:

This firm represents Dan Schantz Farm & Greenhouses, LLC ("DSFG"). DSFG has informed us that you contacted them by telephone on January 11, 2017, alleging that certain decorative planters sold by DSFG infringe a patent. We are also in receipt of a proposed "Litigation Standstill Agreement" that you delivered to DSFG by email on January 13, 2017, which purports to propose negotiations related to such allegation. Through your telephone call, email, and by the substance of the proposed agreement, however, you have expressly declined to identify yourself, any patent or patent application, any rights holder of a patent or patent application, or any features you allege to be claimed in any such patent or patent application.

Due to the intentional omission of material information in your telephone call, email, and the proposed Litigation Standstill Agreement, they fail to provide any legal notice to DSFG of a colorable claim. Furthermore, these communications are insufficient to permit DSFG to evaluate your allegation, or to properly consider or agree to the terms of your Litigation Standstill Agreement. Should you desire to discuss this matter further, you must:

1) Identify a valid United States patent you claim to be infringed or patent application that you claim would be infringed if issued;

2) Identify, with particularity, the products you allege to infringe such patent;



FITZPATRICK LENTZ & BUBBA
ATTORNEYS AT LAW

January 18, 2017
Page 2

    3) Identify, with particularity, the claims you allege to be infringed and the corresponding elements of such product, which you allege constitute infringement;

    4) Identify the true party in interest of your alleged claims; and

    5) Specify your relationship to the true party in interest.

       Absent the above information, DSFG does not have proper legal notice of any claim of infringement or a reasonable ability to evaluate your statements, claims, or proposal. Unless we receive this information by Friday, January 27, 2017, we will consider this matter closed.

Very truly yours,

Douglas Panzer

# Exhibit D

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**        Wed, Jan 18, 2017 at 4:09 PM
To: Douglas Panzer <dpanzer@flblaw.com>

Dear Douglas,

I appreciate our recent conversation. Per our conversation, It is my desire that your client (DSFG) opens up a dialog wherein I would provide them with all necessary information. By entering into the standstill agreement, DSFG will have all necessary information to make an informed decision as to whether or not litigation could be prevented.

With regards to your question as to whether or not the litigation would be filed in your district, the clear answer is NO. I randomly picked the number you seen on your caller ID to identify with your area, I am not located in that area.

Thanks,
David
[Quoted text hidden]

# Exhibit E

Gmail David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts** <davemts1213@gmail.com> Mon, Jan 23, 2017 at 11:29 AM
To: Douglas Panzer <dpanzer@fiblaw.com>

Douglas,

Several days have passed since our phone communication, at this time has your client reconsidered moving forward with the standstill agreement?

Thanks,
David
[Quoted text hidden]

 Gmail

<div align="right">David mts &lt;davemts1213@gmail.com&gt;</div>

## Dan Schantz Farm & Greenhouses, LLC

**Douglas Panzer** &lt;dpanzer@flblaw.com&gt;             Mon, Jan 23, 2017 at 12:23 PM
To: David mts &lt;davemts1213@gmail.com&gt;

We are discussing the matter and will be back to you shortly.


**From:** David mts [mailto:davemts1213@gmail.com]
**Sent:** Monday, January 23, 2017 11:30 AM
**To:** Douglas Panzer &lt;dpanzer@flblaw.com&gt;
**Subject:** Fwd: Dan Schantz Farm & Greenhouses, LLC

[Quoted text hidden]
[Quoted text hidden]

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**
To: Douglas Panzer <dpanzer@flblaw.com>

Wed, Jan 25, 2017 at 11:51 AM

Douglas,

Please provide me with an update today.

Thanks,
David
[Quoted text hidden]

 **Gmail**

## Dan Schantz Farm & Greenhouses, LLC

**Douglas Panzer** <dpanzer@flblaw.com>
To: David mts <davemts1213@gmail.com>

Wed, Jan 25, 2017 at 6:01 PM

As you may know, Dan Schantz had a serious fire earlier this month that caused major damage and disruption. I will have a substantive response for you as soon as possible.

**From:** David mts [mailto:davemts1213@gmail.com]
**Sent:** Wednesday, January 25, 2017 11:51 AM
**To:** Douglas Panzer <dpanzer@flblaw.com>

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**                Mon, Jan 30, 2017 at 2:26 PM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

Per the phone message I recently left.

I was not aware of the Fire.

As far as I understand from our conversation, you are making the decision as to weather or not your client will be signing the stand still agreement along with reviewing the materials and providing your recommendation.

Please let me know what time you are available to speak today.

Thanks,
David

[Quoted text hidden]

 Gmail                                           David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**                         Wed, Feb 1, 2017 at 11:45 AM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

At this time, please provide me with an update per your client entering into the standstill agreement.

Thanks,
David
[Quoted text hidden]

# Exhibit F

 Gmail

David mts <davemts1213@gmail.com>

---

## Dan Schantz Farm & Greenhouses, LLC v. Catanzaro - Expiration of Unassigned Patent

---

David mts <davemts1213@gmail.com>
To: Douglas Panzer <dpanzer@flblaw.com>
Cc: Dan Schantz Farm <info@danschantz.com>

Thu, Feb 2, 2017 at 3:39 PM

Mr. Panzer,

I cannot tell you how upset, angry and disheartening I still am to find out that you on behalf of you client filed a DR action against me when I failed to provide any legal notice to your client of a colorable claim as stated in your letter of 1/18/17. NO oral or written controversy (as defined by law) existed between me or your client at the time you filed the DR action or thereafter. Also, what further enraged me is that from our phone conversation of 1.18.17 I was of the belief that there was a a good faith understanding between us that you would be providing a further answer per your client entering into the standstill agreement and I would in return provide you with my full name and any other reasonable consideration to move forward with the standstill agreement. Being an officer of the court, you blatantly lied and filed the DR action continuing to "Play me" as you sent me emails stating the Fire your client sustained was the reason for the delay reconnecting with me. The clear representations you made on the 18th over the phone are affirmed within your email responses. Your emails and letter will be apart of my response to the court. Your letter is clear and correct, but your follow up emails will support your true intention to deceive which is adverse to the Rules of Professional Conduct and Rules of Civility. To further show your lack of integrity, on 2/1/17 I called you after seeing the filed DR action online and I stated among other things, that "you really tried to got one over on me...you're the man" and your response in a most proud underhanded tone was: "I am the man."

If we cannot resolve this matter prior to me answering the complaint, I will be asking the court to dismiss the action based on the fact that Personnel Jurisdiction is not proper and Declaratory Judgment Jurisdiction is not proper. The bad faith you displayed as an officer of the court will further support my position. I will also be filling a disciplinary action with the disciplinary board regarding your False Representations along with the option of publishing it. (I have previously brought a disciplinary action against an attorney representing my mother and that attorney hired a firm to represent him in the matter but he ended up receiving discipline. From that experience, I have established direct contact with one of the boards head case attorneys. (I will provide you with a letter denoting the discipline that attorney received if you like.)

1. I never stated how any product of your client infringed on any identified patent

2. I never identified any patent that your client was infringing.

3. I never asked for a licensing fee for any identified patent

4. I never stated that a lawsuit would be filed identifying a specific US patent.

5. I never identified who I was.

6. Your letter of 1/18/17 clearly states that I failed to provide any legal notice to your client of a colorable claim

Your client has not endured any of the following to substantiate a Controversy:

   1. The plaintiff must have suffered an injury in fact.

   2. There must be a causal connection between the injury and the defendant's conduct complained of.

   3. It must be "likely" that the injury would be redressed by a favorable decision.

Because of your deception and lies and your clients willingness to go along with it, I must consider releasing a press release and or taking out a page in a paper in your area about your client and how you went about representing them in this matter. I may also visit local news or radio stations to inform viewers in your area about my story and how to avoid patent traps such as Declaratory relief actions. I'm sure with the advent of the show shark tank people in your area would love to learn how a Christian PA native with a high school diploma married with three little girls was able to license with many international companies.

The PR release and newspaper write up may contain the following:

1. The head line may read:

Several Weeks after major fire, Don Schantz Farm & Greenhouses, refuses olive branch extended by Christian Inventor and prefers litigation.

2. Douglas Panzer of Fitzpatrick Lentz & Bubba, P.C. agrees to open a dialog with christian inventor, makes promises in good faith to continue to communicate with him, but them immediately files suit against him. "Douglas Panzer acted in such a low manner of morality, he actually used the fire Don Schantz Farm & Greenhouses sustained in January as an excuse to delay responding to me so he could, at the same time file suit against me."

    3. The website of Dan Schantz Farm & Greenhouses, LLC claims to be *"dedicated to providing a safe Christian environment for all employees with morality and honesty as the framework for all present and future plans."*

By allowing and condoning the immorality of Douglas Panzer and his blatant lies, Dan Schantz Farm & Greenhouses is promoting nothing less than pure secular anti Christianity and should take down their Christian statement... *for you will know them by their works.*

The above outline is just an example of what may be in a PR release or taken out in a page in a newspaper in your area along with calling local Christians to action. Prior to releasing anything I will engage a publicist.

As a Christian, I am very saddened that you were able to push me to such a defensive mind set. If you only acted in an ethical manner following through on your words and promises, this email and its objectives would not have been conceived or considered, but again, it is the result of your unhonest behavior and your client allowing it. To restate, none of the above should be considered a threat, but a necessary response as a result of you and your clients willingness to support your unethical action enacted by your lies and contempt for me.

---

Redacted

---

# Exhibit G

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID CATANZARO,** | ) | **CASE NO. 1:13CV996** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **SEAMAN GARSON LLC/LLP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

On May 2, 2013, Plaintiff David Catanzaro initiated a legal malpractice action against the Defendants by filing a Complaint in this Court. Catanaro alleges that he suffered damages as a result of the Defendants' "failure to properly represent" him in a patent infringement action that he filed in the Middle District of Pennsylvania, *Catanzaro v. Procter & Gamble,* et al, Case No. 3:09cv2231 (the "Pennsylvania Action"). Specifically, Plaintiff alleges that he was induced to enter into a Patent Purchases, Assignment and Settlement Agreement which caused him to alienate his interest in U.S. Patent No. 6, 026,532 ("the '532 Patent") and give up his interest in a continuation patent, U.S. Patent No. 7, 653,959 ("the '959 Patent"). As part of this settlement agreement, Plaintiff alleges that he was advised by his lawyers to agree to "sell and assign all right, title and interest in the '532 Patent to Church and Dwight" and to grant a non-exclusive use license to Proctor & Gamble and Church & Dwight under the '959 Patent.

Plaintiff alleges that after the parties settled the Pennsylvania Action he continued to bring infringement claims in connection with the '959 patent. Plaintiff alleges that in May 2012, while he was negotiating an infringement claim against Elmer's Products, Inc., ("Elmer") he was

informed by Elmer's attorney that he lost his rights in the '959 Patent. According to Catanzaro, the attorney told him that the '959 Patent had a "Terminal Disclaimer" which rendered his '959 Patent unenforceable because it required that the '532 and '959 Patents be jointly owned. Based on what this attorney allegedly told him, Catanzaro filed the instant malpractice case, contending that Defendants never advised him he would lose the right to enforce his '959 Patent when he settled the Pennsylvania Action.

The Court has determined that this case cannot be litigated in its current posture. Plaintiff Catanzaro is seeking damages from his former counsel for the loss of his '959 Patent rights, alleging that his patent is no longer enforceable due to the Terminal Disclaimer. The problem with this claim is that there has been no judicial determination that Catanzaro cannot enforce the '959 Patent. Defendants maintain that the patent is still enforceable, and until recently, Catanzaro has been enforcing it.

Federal courts cannot issue advisory opinions. *See Bowler v. Young,* 55 F. App'x 187, 188 (4th Cir. 2003) ( "In order for a federal court to exercise jurisdiction over an action, the dispute must satisfy the case or controversy requirement of Article III of the Constitution. A case or controversy exists if the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests. [T]he court may not issue what amounts to an advisory opinion on what the law would be under a hypothetical set of facts."). As part of his case, Catanzaro wants this court to invalidate his '959 Patent, or to hold that he has lost the right to enforce it, but there is nobody in this case who is allegedly infringing his patent and maintaining that Catanzaro has lost his right to enforce it. To be entitled to damages against his former counsel, Catanzaro must demonstrate that he has lost the right to enforce his patent due to Defendants' malpractice in

-2-

connection with the Terminal Disclaimer. Since Defendants maintain that Catanzaro has not lost the right to enforce his '959 Patent, the only way this issue can be decided is through a true adversarial proceeding, one in which the plaintiff (Catanzaro) seeks to enforce his patent, and the defendant (someone using Catanzaro's patent) defends on the basis that Catanzaro has lost the right to enforce it. If Catanzaro prevails in his patent litigation, his malpractice case against his former attorneys evaporates. If a court should determine in the patent litigation that Catanzaro cannot enforce the '959 Patent on some basis other than the Terminal Disclaimer, Catanzaro's malpractice case against his former attorneys also evaporates. If, however, Catanzaro loses his patent enforcement case on the basis of the Terminal Disclaimer, then he has a basis to refile his malpractice case against his former attorneys.

Accordingly, this case is dismissed without prejudice. The Court tolls the statute of limitations as of today for a period of six months (June 12, 2015) to permit Catanzaro to file a patent enforcement action against an alleged infringer. Should Catanzaro file such an action, the tolling of the statute of limitations will remain in place until there is a final judgment in the patent enforcement litigation.

IT IS SO ORDERED.

*/s/ Dan A. Polster    December 15, 2014*
**Dan Aaron Polster**
**United States District Judge**

-3-

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 5:2017-cv-00403 |
| DAVID J. CATANZARO | THE HONORABLE JEFFREY L. SCHMEHL |
| Defendant | |

## SUPPLEMENTAL MEMORANDUM TO BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, by its First Amended Complaint does not state well-pleaded claims for declaratory judgment since the patent in suit has never once been raised against Plaintiff by Defendant to incur a justifiable claim or controversy among the parties. The claims arise out of a desire by the attorney for the Plaintiff to push a narrative based on hypotheticals and a type of 'Circumstantial Evidence' to unethically persuade the court that an actual controversy exists to disadvantage the Defendant. Defendant never once demanded any monetary compensation for infringement of any known patent or patent application prior to or after the filling of this suite. This Court does not have subject matter jurisdiction over the parties' since an actual controversy does not exist or has not been established at the time of the filing of this action. The claim is not ripe. Without subject matter jurisdiction, Defendant asserts that Venue cannot be proper as per the following: Defendant never provided Plaintiff with a specific product or products they sold

1

(Accused Products) that infringed any specific patent or patent application. Plaintiff 'alone' develops and plots out a narrative to inject a 'specific' Product in its complaint against Defendant to assert Venue is proper under 28 U.S.C. § 1391(b). Plaintiff alone provides the court with the patent at suite to establish a Controversy, all in an effort to somehow punish or disadvantage the Defendant for reaching out and contacting Plaintiff and trying to open a dialog. From the time Defendant first contacted Plaintiff to the filling of this suite, to the filling of this response, Defendant only provided the following information: That Plaintiff was selling 'Decorative Planters' that Defendant believed had similarities to a patent or patent application in Defendant's possession. Plaintiff has the burden "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed." Sierra Applies Scis., Inc. v. Advanced Energy Indus., 363 F.3d 1361, 1373 (Fed. Cir. 2004) (citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enters. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)).

Defendant takes serious issue with Plaintiff's pleading accretions made prior to the filling of Plaintiff's first amended complaint (Prior Pleadings) that Defendant makes a living with "threats" of litigation and that Defendant employs numerous tactics to complicate and prolong litigation, of which Defendant's motions presently before the court are but two examples. Defendant's motions are factual and the exhibits that accompany the motions speak for themselves. Unlike Plaintiff, which relies on a narrative based on untruths and a type of circumstantial evidence produced through the public domain, to underhandedly persuade the court that an actual controversy exists.

Plaintiff tries to convince this Court that there is evidence of a justifiable case by citing

2

Defendants blank proposed Litigation Standstill Agreement (attached in Defendant's Brief in

Support of Motion to Dismiss Plaintiff's First Amended Complaint as **Exhibit A**). As stated in

Defendants Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint,

Plaintiff's letter of 1-18-17 (attached in Defendant's Brief in Support of Motion to Dismiss

Plaintiff's First Amended Complaint as **Exhibit C**) clearly states throughout the entire letter that

Defendant did not provide any information to rise to a colorable claim which includes "omissions"

in the Litigation Standstill Agreement.

Several excerpts from Plaintiff's 1-18-17 letter state:

1. We are also in receipt of a proposed "Litigation Standstill Agreement"…

2. Due to the intentional omission of material information in your telephone call,

   they fail to provide any legal notice to DSFG of a colorable claim.

3. Should you desire to discuss this matter further, **you must:**

   **1) Identify a valid United States patent you claim to be infringed or patent
   application that you claim would be infringed if issued;**

   **2) Identify, with particularity, the products you allege to infringe such patent;**

   **3) Identify, with particularity, the claims you allege to be infringed and the
   corresponding elements of such product, which you allege constitute
   infringement;**

   4) Identify the true party in interest of your alleged claims; and

   5) Specify your relationship to the true party in interest.

**4. Absent the above information, DSFG does not have proper legal notice of any
   claim of infringement or a reasonable ability to evaluate your statements, claims, or
   proposal. Unless we receive this information by Friday, January 27, 2017, we will
   consider this matter closed.**

   Defendant has never supplied Plaintiff with any of the above information from the first time

Defendant contacted Plaintiff up to the filling of this response. However, Plaintiff uses public

3

disclosure about the Defendant to create the narrative for this action and has the audacity to try to convince this court in Prior Pleadings that Defendant is "initiating this dispute in a purposeful effort to divest this court of jurisdiction and gain leverage for himself over DSF&G"... when the complete opposite is apparent.

As stated in Defendants Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint, Defendant owns several patents along with an application that will be issuing soon. Also, Plaintiff sells many different product lines of 'Decorative Planters.' Because Plaintiff came across litigation that involved Defendant's patent No. 7,653,959, (the '959 patent) does not give Plaintiff legal standing to move forward with the claims asserted against the '959 patent in this action. This court lacks jurisdiction over this matter and this case is completely adverse to Article III of the Constitution, Defendant's right to Due Process and lacks Standing. Declaratory judgment jurisdiction cannot be proper because an Article III Controversy did not exist at the time the claim for declaratory relief was filed. Defendant restates Plaintiff has the burden "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed." Sierra Applies Scis., Inc. v. Advanced Energy Indus., 363 F.3d 1361, 1373 (Fed. Cir. 2004) (citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enters. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)).

Plaintiff tries to further influence the court with the fact that Defendant has been involved with several infringement actions that took place in 2015. Defendant only was involved with those actions because Defendant believed he was compelled to file them as a direct result of an order handed down by Federal Judge Dan Aaron Polster in Case No. 1:13 CV 996 (Refer to **Exhibit G** contained within Defendants Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint). As soon as Case No. 1:13 CV 996 settled, Defendant dismissed each and

4

every one of those referenced lawsuits.

It should be noted that in *In Cisco Systems, Inc. v. Sprint Communications Co.*, LP, Case No. 15-431-SLR (D. Del. Feb. 2016). Declaratory Judgment Action was Dismissed when Cisco Could Not Show Case or Controversy Based on Suits Against Customers and Aggressive Litigation and Licensing Tactics.

Further in Plaintiff's Prior Pleadings, Plaintiff asserted that Defendant acted in an unlawful manner when he provided his first name and a third party phone number during his first two calls to Plaintiff. Defendant categorically rejects this assertion and in NO way intended or committed any fraud, harm or wrongfully obtained anything of value from Plaintiff.

Plaintiff asserted that Defendant did not provide his name and "made the first of his related monetary demands" when he first contacted DSF&G (on 1-11-17). Defendant categorically DENIES plaintiff's statement. Defendant did provide Plaintiff with his first name along with a contact email address during that first call which is apparent within Defendant's **Exhibit B** provided in Defendant's Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint. In Prior Pleadings Defendant again tries to develop a narrative that a real controversy exists when attorney Panzer states that Defendant "made the first of his related monetary demands" when he first contacted DSF&G (on 1-11-17). This is a complete fabrication of the truth and Mr. Panzer's letter of 1-18-17 confirms this Fabrication by not asserting this substantive fact. Mr. Phanzer desperately attempts to advance this part of the narrative 'as another building block' to persuade the court that this case is justifiable.

Question to consider:

If Defendant did in fact make a monetary demand during the first call to Plaintiff on 1-11-17, wouldn't that extremely substantive fact be included within Mr. Panzers well detailed well

5

outlined letter of 1-18-17? Obviously the answer is 'YES'. Since Defendant never made such a demand it was NOT denoted in Mr. Panzer's letter of 1-18-17 or within any communication prior to the filing of this action. Defendant restates that No Justifiable case or controversy existences between Defendant and Plaintiff at this time or at the time this action was originally filed and the Court should grant Defendant's Motion to Dismiss. Defendant again restates Declaratory judgment jurisdiction cannot be proper because an Article III Controversy did not exist at the time the claim for declaratory relief was filed.

As already denoted, this Court Does Not Properly have Subject-Matter Jurisdiction.

The parties here do not have clear: adverse legal interests; of sufficient immediacy and reality. Defendant never once provided Plaintiff with the information requested in Plaintiff's letter of 1-18-17. The term 'decorative planters' is a generic term used by Defendant to inform Plaintiff that they sell decorative planters which have similarities to a patent or patent application in Defendant's possession. Plaintiff references the identified term decorative planters in Plaintiff's 1-18-17 letter (attached in Defendant's Brief as **Exhibit C**). Further in Plaintiff's 1-18-17 letter Plaintiff demands the following Information from Defendant:

"*Identify, with particularity, the products you allege to infringe such patent;*" (emphasis on the word "particularity"). No such product of particularity was ever identified by Defendant. To restate, Plaintiff sells many different product lines of 'Decorative Planters.'

In *3M Company v. Avery Dennison Corp.*, No. 11-1339 (Fed. Cir. Mar. 26, 2012), The court offered as a safe harbor a suitably vague letter that "merely" identifies the patent and the other party's "product line," i.e., not a specific product. This "safe harbor' language will not trigger a declaratory Judgment action.

In this instant matter, Defendant never even provided Plaintiff the patent or patent application

6

at issue and only provided the Plaintiff a general "product line" description when stating 'decorative planters.' In view of the 3m case alone this case should be dismissed.

Defendant never provided Plaintiff with an infringing patent or patent application at any time prior to the filling of this action or thereafter. Defendant only stated on 1-11-17 that Plaintiff was selling decorative Planter products that Defendant believed had similarities to a patent or patent application in possession by Defendant. In Prior Pleadings Plaintiff asserts that Defendant "is presently demanding recompense from DSF&G for alleged acts of infringement". Defendant adamantly DENIES this statement. Defendant is NOT presently demanding recompense from DSF&G for alleged acts of infringement as this is another fabrication made up by Attorney Panzer. However, Defendant is currently demanding compensation mainly for 'Pain & Suffering' as a direct result of the filling of this frivolous lawsuit by Mr. Panzer and for his 'Bad Faith' conduct associated thereto. (Defendant suffers from health issues and has been taking lifesaving medication on a daily bases since 2013-2014) Again, Defendant has made this Pain & Suffering settlement demand only AFTER this suit was filed and the demand was first made in Defendant's email to Plaintiff of 2-2-17 as **Exhibit F** denoted in Defendant's Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint. THE SETTLEMENT DEMAND WAS MADE BASED ON A DIRECT REQUEST BY ATTORNEY PANZER. As denoted in Defendant's Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint, Defendant was completely caught off guard when Mr. Panzer filed this baseless action in bad faitb after entering into the oral agreement and covenant of understanding with Defendant. After finding out about the filing of this action, Defendant expressed his complete disappointment with Mr. Panzer during a phone call on 2-1-17, and Mr. Panzer made several telling statements as to why he really filed this action, as already denoted

7

within Defendant's Brief in Support of Motion to Dismiss. What has not been stated in Defendant's brief is that Mr. Panzer further stated the following several times within the 2-1-17 conversation: "David you want money...You want money right?...Just let me know how much money you want." Mr. Panzer's instruction led Defendant to submit a demand to Plaintiff as stated and redacted in the 2-2-17 email (again, denoted in Defendant's Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint **Exhibit F**). Defendant voluntarily marked the bottom section of that email FRE 408 **'only' as a result of this litigation and Mr. Panzar's instruction to reveal a settlement amount.** In Prior Pleadings Plaintiff tries to continue to deceive this court in furtherance of developing a controversy, by accreting Defendant's communications were marked FRE 408 **PRIOR to the filing of this litigation** and that settlement demands are based on infringement of the '959 patent. Plaintiff has stated: Defendant marked communications with FRE 408 because of "his subjective contemplation of litigation..." and "DSFG faces a real likelihood of imminent suit." Again, this accusation was clearly being made to the court by Plaintiff to persuade the court that a defined controversy existed between the parties prior to the filing of this action. Defendant adamantly DENIES any such communication exists. There is NO evidence to support Plaintiff's untruthful desperate assertion. **Defendant demands Plaintiff produce communications marked FRE 408 prior to the filing of this suite.** This is an extremely important 'documented material fact' that was accreted by plaintiff's attorney and the court should demand the production of such a document if indeed it exists. When Defendant made his demand within the 2-2-17 email, Defendant voluntarily marked the bottom section with FRE 408. Since this communication was marked FRE 408 voluntarily, Defendant would like to provide the court with the unreacted version of that document to support the fact that Defendant's settlement demand is not based on

8

infringement of the '959 patent, but rather on pain and suffering as outlined above.

It should be further noted that Plaintiff tried to 'Bait' Defendant into responding to an email regarding settlement dated 2-1-17. Plaintiff sent the stated email within an hour following the phone conversation of 2-1-17. As stated above, further during a call on 2-1-17 Mr. Panzer stated several times: "David you want money...You want money right?...Just let me know how much money you want." Mr. Panzer concluded the conversation by stating why he believed the '959 patent was unenforceahle. Mr. Panzer then sent the first of two emails to Defendant. **Exhibit H** (attached) refers to the first email Plaintiff sent that day. Defendant responded with an email (attached as **Exhibit I**) denoting the reasons why the '959 patent was enforceable. This email Defendant sent Plaintiff on 2-1-17 regarding the enforceability of the '959 patent in NO WAY established or establishes that the '959 patent is the patent of contention as claimed in this instant action filed on 1-27-17. Defendant never asserted the '959 patent against the Plaintiff and he certainly did not assert it against Plaintiff within the 2-1-17 email. Defendant only addressed the enforceability question that plaintiff posed and Defendant would have answered the same question posed by any individual and answered it in the same like manner via email. After Plaintiff received Defendant's email (**Exhibit I**) Plaintiff then forwarded the second stated email on 2-1-17 (attached as **Exhibit J**), which states:

1) During what period do you believe the '959 patent was valid and enforceable?

2) During what period are you alleging infringement against Dan Schantz Farm & Greenhouses?

3) What do you believe is a reasonable royalty during that period.

As stated, Plaintiff attempts to bate Defendant with this email and to acquire admissions for the three statements stated above, as contained within Plaintiff's second email (**Exhibit J**). As a result, Defendant emailed the 2-2-17 email (as attached in Defendant's brief as **Exhibit F**)

denying the above three admissions and demanding settlement for pain and suffering as a direct result of the filling of this frivolous lawsuit by Mr. Panzer and for his 'Bad Faith' conduct associated thereto.

Further in Prior Pleadings, Plaintiff asserts that "A patentee's prior enforcement litigation is a factor supporting jurisdiction where a patentee has directly asserted infringement allegations against a declaratory judgment plaintiff." (cases omitted). Again, Defendant has never directly asserted infringement of the '959 patent against the Plaintiff and Defendant never made a statement prior to or after the filling of this action stating Defendant "has evidence that...DSFG infringed his '959 patent." Defendant again restates Plaintiff has the burden "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed." Sierra Applies Scis., Inc. v. Advanced Energy Indus., 363 F.3d 1361, 1373 (Fed. Cir. 2 004) (citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enters. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)).

Defendant submits to the court that Defendant provided ALL substantive written communications between Plaintiff and Defendant that were made between the parties prior to Plaintiff filing this action on 1-27-17.

It clearly is Plaintiff's attorney who undertakes contortions and gymnastics in an effort to maintain jurisdiction of this court. It is because of conduct demonstrated by Mr. Panzer, that a Litigation Standstill Agreement should be entered into 'prior' to any substitutive discussions with respect to patents and issuing applications and many attorneys agree and have published writings regarding the usefulness and fairness of said agreements. Plaintiff has referenced Defendant's communications under FRE 408 to continue to press upon the court the made-up controversy between the parties. Again, Defendant demands Plaintiff produce communications

10

marked FRE 408 prior to the filing of this suit and for infringement of the '959 patent.

Plaintiff's 1-18-17 letter is the 'corner stone document' that sums up the facts or lack there of with respect to this matter. NO further information as solicited within plaintiff's 1-18-17 letter, was ever provided by Defendant to Plaintiff prior to the filing of this action, whereby NO changes in the factual information contained within Plaintiff 1-18-17 letter could establish a controversy or jurisdiction. Plaintiff's attorney makes completely false statements in Prior Pleadings, when he asserts that during a phone call on 1-18-17 Defendant "set into motion accusations, demands of payment, identification of the patent in suit, ongoing..."

Again, I ask this honorable court to demand the Plaintiff provide 'documented evidence' as provided by the Defendant to the plaintiff that shows Defendant provided the following information prior to the filing of this action of 1-27-17 as follows:

1. A communications from tbe Defendant after Plaintiff's 1-18-17 letter that Defendant provided Plaintiff the '959 patent as the patent in controversy

2. A communication from Defendant after Plaintiff's 1-18-17 letter that Defendant identified with 'particularly' tbe specific decorative planter products that infringed the '959 patent

3. A communication from Defendant prior to or after Plaintiff's 1-18-17 letter wherein Defendant demands payment for infringement of the '959 patent.

4. A communication from Defendant prior to or after Plaintiff's 1-18-17 letter wherein Defendant identifies, with particularity, the claims alleged to be infringed and the corresponding elements of such product, which allege constitute infringement.

Plaintiff cannot provide the above information provided by Defendant prior to the filling of this action on1-27-17 to establish the claim, nor could Plaintiff provide any of the said information any time thereafter. All Plaintiff offers is a blank Litigation Standstill Agreement wherein

11

Plaintiff admits there is significant "omissions to establish a colorable claim", public discloser information for the bases of the filing, and a narrative which he attempts to weave both together. This court does not have jurisdiction over this matter and/or the claims are not 'ripe'. Defendant again submits that this case is completely adverse to Article III of the Constitution and Defendant's right to Due Proses along with overall standing. Defendant's Motion to Dismiss should be generously granted by this honorable court.

Plaintiff has entered into an "Oral agreement or covenant of understanding" with Defendant as outlined in Defendant's Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint, Defendant's Motion for Disciplinary Action and Supplemental Memorandum to Motion for Disciplinary Action. During the conversation of 1-18-17 attorney Panzer agreed, promised and reassured Defendant that he would recommend to his client (the Plaintiff), to enter into the Litigation Standstill Agreement and respond back to Defendant with respect to his clients response to entering into said agreement. In return, Defendant would disclose his full legal name prior to Plaintiff signing said agreement and after the agreement was signed, Defendant then would fully disclose all pertinent information regarding the matter with the goal of Defendant and Plaintiff reaching a resolution without having any legal entanglements. In Prior Pleadings Mr. Panzer states that Defendant's email of 1-30-17 (contained within **Exhibit E** of Defendant's Brief) is inconsistent with the above stated agreement when Defendant states in that email: "as far as I understand from our conversation, you are making the decision as to whether or not your client will be signing the standstill agreement." Defendant adamantly DENIES this accretion.

The stated email was sent 12 days after the parties entered into the above stated agreement and Defendant began to question the integrity of Mr. Panzer, hence the stronger tone. Mr. Panzer

12

deliberately leaves out the last several words of the above quoted statement. Defendant includes those words as follows:

*"as far as I understand from our conversation, you are making the decision as to whether or not your client will be signing the stand still agreement along with reviewing the materials **and** **providing your recommendation.** "* (Emphases on the words 'providing your recommendation') This email is completely consistent with the facts provided with regards to the oral agreement or covenant of understand reached between the parties. The lines of communication exchanged within the emails of **Exhibit E** are undeniable facts which strongly support the oral agreement between the parties as outlined by Defendant. Defendant provides the court with the following overview of those communications.

1. Email by Defendant to Mr. Panzer 1-23-17 "Several days have passed since our phone communication, at this time has your client reconsidered moving forward with the standstill agreement?"

2. Response Email by Mr. Panzer 1-23-17   "We are discussing the matter and will be back to you Shortly"

3. Email by Defendant to Mr. Panzer 1-25-17 "Please provide me with an update today."

4. Response Email by Mr. Panzer 1-25-17 . "As you may know, Dan Schantz had a serious fire earlier this month that caused major damage and disruption. I will have a substantive response for you as soon as possible".

5. Email by Defendant to Mr. Panzer 1-30-17 "As far as I understand from our conversation, you are making the decision as to weather or not your client will be signing the stand still agreement along with reviewing the materials and providing your recommendation. Please let me know what time you are available to speak today."

13

6. Email by Defendant to Mr. Panzer 2-1-17 "At this time, please provide me with an update per your client entering into the standstill agreement."

Based on the undeniable Facts stated above, Defendant had more than a reasonable 'Reliance' on Plaintiff to follow through on the stated oral agreement as the emails by the Plaintiff clearly state: "We are discussing the matter and we will be back to you shortly" and "I will have a substantive response for you as soon as possible". To further prove the evasiveness of Mr. Panzer, in Prior Pleadings Mr. Panzer uses the fire sustained by his client the Plaintiff, to kept Defendant at bay while all along preparing to file this suit and filing it just two days after sending the above stated email of 1-25-17. Mr. Panzer admits he has already further discussed the matter with his client when he states in his 1-23-17 email the following: "We are discussing the matter and will be back to you shortly" (emphases on "We are discussing the matter") Fact: Mr. Panzer reached his client and discussed the matter on 1-23-17. This whole charade and act that the fire caused some type of delay getting back to Defendent is outrageous, when the filing of this action clearly shows that Mr. Panzer never intended to get back to Defendant which clearly crosses the line of ethics. When Defendant ponders on this fact, he truly believes that Mr. Panzer has shown and established 'Contempt' for Defendant. This is the main reason why Defendant is asking this court for Exemplary Damages and for this court to apply discipline to attorney Panzer. It is Defendant that urges this court to see the clear misleading nature of Mr. Panzer. It is Mr. Panzer who uses all available tactics as sword or shield, as it suits him. As outlined over and over herein, Mr. Panzer twist and contorts Plaintiff's pleadings in an all-out effort to maintain the unjust jurisdiction of this court. Jurisdiction is clearly and irrefutably NOT demonstrated here.

"Federal declaratory judgment is not a prize to the winner of a race to the courthouse."

14

(Federal Insurance Co. v. May Department Stores, 808 F. Supp. 347, 350 (S.D.N.Y. 1992).

Venue cannot be proper since Defendant never asserted the '959 patent against Plaintiff.

Defendant never provided Plaintiff with a specific product or products they sold (Accused

Products) that infringed any specific patent or patent application. Plaintiff 'alone'

develops and plots out a narrative to inject a 'specific' Product in its complaint against

Defendant to assert Venue is proper under 28 U.S.C. § 1391(b). Defendant reasserts that Plaintiff

fails to state a valid claim since the '959 patent has never been accreted against Plaintiff.

## CONCLUSION

For the reasons set forth above and included within Defendant's Motion to Dismiss Plaintiff's

First Amended Complaint and Brief in Support of Motion to Dismiss Plaintiff's First Amended

Complaint, Defendant David J Catanzaro has demonstrated that: this Court DOES NOT hold

proper subject matter jurisdiction over this action since Plaintiff FAILS to establish a

controversy exists between the parties. No events or omissions have been established in this

judicial district rendering Venue is improper.  Defendant respectfully requests dismissal on the

merits or lack thereof and asks this honorable court for exemplary damages as a result of the

Bad Faith actions taken by plaintiff's attorney Douglas Panzer.

Respectfully submitted,                          Dated: April 27, 2017

*s/ David J. Catanzaro*
David J. Catanzaro
Defendent *Pro Se*
286 Upper Powderly Street
Carbondale, PA  18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

15

## CERTIFICATE OF SERVICE

I, David Catanzaro, hereby certify that a true and correct copy of the forgoing Supplemental

Memorandum to Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint was

sent by First Class Mail to the United States District Court for the Eastern District of

Pennsylvania and served via First Class Mail upon Plaintiff this 27th day of April 2017 to the

following person:

DAN SCHANTZ FARM &
GREENHOUSES, LLC
c/o DOUGLAS PANZER
FITZPATRICK LENTZ & BUBBA
4001 Schoolhouse Lane
Center Valley, PA 18034

*s/ David J. Catanzaro*
David J. Catanzaro

# Exhibit H

from.    **Douglas**
         **Panzer** <dpanzer@flblaw.com>

to       David mts
         <davemts1213@gmail.com>

date.    Wed, Feb 1, 2017 at 4:16 PM

subject  Dan Schantz Farm &
         Greenhouses, LLC v.
         Catanzaro - Expiration of
         Unassigned Patent

Mr. Catanzaro,

As discussed on our telephone call a few minutes ago, I am attaching the case *Merck & Co., Inc. v. U.S. Int'l Trade Comm'n*. As you will see, this case clearly states that a patent subject to a terminal disclaimer will expire immediately upon separation of ownership between it and the patent or application over which the terminal disclaimer was required. It also states that it cannot be "revived or recreated" by a later assignment. This is a holding of the Court of Appeals for the Federal Circuit, which is responsible for interpretation of all United States patent appeals and whose opinions are binding precedent upon all lower federal courts, including the Eastern District of Pennsylvania. This case remains the binding law of the land and has been upheld in multiple federal courts in recent years.

In the present matter, your assignment of the '532 patent to Church & Dwight (attached) without assignment of the '959 patent, in view of your terminal disclaimer (attached) in the prosecution of the '959 patent, caused the '959 patent to immediately expire on February 28, 2011. While you state that you have "reacquired" the '532 patent from Church & Dwight, the above case makes clear, in unambiguous terms, that this later assignment was not capable of reviving, recreating or reactivating the '959 patent. Any attempt to assert the '959 patent is improper, as the patent is irretrievably expired.

I trust that after your review of the attached you will agree that the '959 patent cannot be asserted in good faith in this matter and we will look forward to speedy disposition of the matter.

Sincerely,

**DOUGLAS PANZER | REGISTERED PATENT ATTORNEY | FITZPATRICK LENTZ & BUBBA, P.C.**

4001 Schoolhouse Lane, Center Valley, PA 18034

Tel: (610) 797-9000, ext. 390 | Fax: (610) 797-6663

Administrative Assistant: Stephanie Wentzel, ext. 378

Email| Admin Email| Website | Bio| LinkedIn

# Exhibit I

from   **David**
       **mts** <davemts1213@gmail.com>

to     Douglas Panzer
       <dpanzer@flblaw.com>

date   Wed, Feb 1, 2017 at 7:16 PM

subject   Re: Dan Schantz Farm &
          Greenhouses, LLC v. Catanzaro
          - Expiration of Unassigned
          Patent

Douglas,

In Merck the terminal disclaimer reads as follows:

[I]t is agreed (pursuant to the Commission's notice appearing at 860 O.G. 661-2) that the patent issuing
on [this] application ... shall expire immediately if it ceases to be commonly owned with the patents
issuing on applications serial nos. 605,171, 695,332, 635,362, and 605,154 [the four other patents]

In the terminal disclaimer with my 959 patent it clearly says the following:

...The owner hereby agrees that any patent so granted on the patent application shall be enforceable only for
and durning such period that  it and the prior patent are commonly owned.

The words "Enforceable" (in my terminal disclaimer) Verses the words "Expire Immediately" will make all the
difference when arguing the enforsability of the commonly owned 959 patent.

Please go the the below link after reviewing the below paragraph.

http://openjurist.org/774/f2d/483/merck-co-inc-v-us-international-trade-commission


21 2. The provision in the terminal disclaimer that the '284 patent would "expire immediately" if it ceased
to be commonly owned with the other four patents conformed to the requirements of the Patent and
Trademark Office that were in effect when the disclaimer was filed. Commissioner's Notice, 848 O.G. 1
(Feb. 14, 1968). See generally In re Van Ornum, 686 F.2d 937, 214 USPQ 761 (CCPA 1982). An
amendment to 37 C.F.R. Sec. 1.321 (1971), **effective April 30, 1971, changed this requirement to**
**provide that disclaimers need state only that the patent be unenforceable during the period it is**
**not commonly owned with the other patents recited in the disclaimer. This amendment was**
**publicly proposed at 35 Fed.Reg. 20,012 (1970) and published at 36 Fed.Reg. 7312 (1971), both**
**before the date on which the '284 patent issued. Sumitomo, however, never attempted to have the**
**language of its disclaimer changed to incorporate this new and less severe standard.**

Emphasis on the words: "new and less severe standard."

The langue of the terminal disclaimer of the 959 patent is unambiguous, the 959 pant will
be enforceable when commonly owned.

I look forward to your response.

Thanks,
David

# Exhibit J

from   **Douglas
Panzer** <dpanzer@flblaw.com>

to   David rnts
<davernts1213@gmail.com>

date   Wed, Feb 1, 2017 at 7:23 PM

subject   RE: Dan Schantz Farm &
Greenhouses, LLC v.
Catanzaro - Expiration of
Unassigned Patent

mailed-   **flblaw.com**
by

David,

While I do not agree with your legal assessment, let's assume for the sake of discussion that you are
correct.

    1)   During what period do you believe the '959 patent was valid and enforceable?

    2)   During what period are you alleging infringement against Dan Schantz Farm &
Greenhouses?

    3)   What do you believe is a reasonable royalty during that period?

**DOUGLAS PANZER | REGISTERED PATENT ATTORNEY | FITZPATRICK LENTZ & BUBBA, P.C.**
4001 Schoolhouse Lane, Center Valley, PA 18034
Tel:  (610) 797-9000, ext. 390 | Fax:  (610) 797-6663
Administrative Assistant:  Stephanie Wentzel, ext. 378
Email| Admin Email| Website | Bio| LinkedIn