IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : : | |
| Plaintiff, | : : | Docket No. 5:17-cv-00403-JLS |
| v. | : : | **JURY DEMAND** |
| DAVID J. CATANZARO, Defendant. | : : : | **ORAL ARGUMENT REQUESTED** |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Dan Schantz Farm & Greenhouses ("DSF&G"), by its First Amended Complaint, states well-pleaded claims for declaratory judgment of patent invalidity, unenforceability, and of non-infringement of the patent in suit by the accused products. These claims arise out of serial litigant, Defendant David Catanzaro's express assertion of the adverse legal interests of the parties, namely his allegation that identified products of DSF&G infringe the patent in suit, his demand for monetary compensation from DSF&G for that alleged infringement, and his threats to enforce his demands through litigation. DSF&G denies infringement, challenges the validity and enforceability of the patent in suit, and seeks declaratory judgment of its positions. This Court has subject matter jurisdiction over the parties' adverse legal interests and this Court is the proper venue for this dispute. For these reasons, as further discussed herein, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint should be denied.

1

## STATEMENT OF UNDISPUTED FACTS

1. Defendant initiated contact with Plaintiff by telephone on January 11, 2017, at which time Defendant stated to Plaintiff that "Plaintiff was selling 'Decorative Planter' [sic] products that Defendant believed had similarities to a patent or patent application" owned by Defendant. Doc. 16 at ¶2.

2. Defendant emailed to Plaintiff on January 13, 2017, a proposed "Litigation Standstill Agreement" (LSA). *Id* at ¶6.

3. The proposed LSA states that Defendant "has evidence that [Defendant] asserts establishes that [Plaintiff] infringed [Defendant's] patent." *Id*, Exh. A at ¶A.

4. The proposed LSA contemplates that the parties would engage in "full and frank discussions regarding [Defendant's] claim prior to the commencement of patent infringement litigation." *Id*, Exh. A at ¶C.

5. The proposed LSA contemplates the foregoing discussion period to last until March 13, 2017 (the "Discussion Period"). *Id* at ¶1.

6. The proposed LSA would preclude Plaintiff from filing suit against Defendant for an additional fourteen (14) days after the Discussion Period. The proposed LSA would preclude Defendant from filing suit against Plaintiff for only seven (7) days after the Discussion Period. *Id* at ¶¶2-3.

7. Plaintiff's counsel delivered a letter, via email, to Defendant relating to this matter on January 18, 2017. *Id* at ¶7.

8. After receipt of Plaintiff's counsel's letter, Defendant spoke with Plaintiff's counsel via telephone on January 18, 2017, during which conversation Plaintiff's counsel asked Defendant whether any claim for patent infringement against Plaintiff would be filed in the

Eastern District of Pennsylvania.  In response to this question, Defendant stated by email: "With regards [sic] to your questions as to whether or not the litigation would be filed in your district, the clear answer is NO."  *Id* at ¶¶12,17.

9. Defendant's email of January 18, also stated Defendant's belief that entering into the LSA was related to the purpose of Plaintiff "mak[ing] an informed decision as to whether or not litigation could be prevented."  Doc. 15, Exh. H.

10. Defendant e-mailed Plaintiff's counsel on January 23, January 25, January 30, and February 1, seeking a response regarding Plaintiff's willingness to enter into the proposed Litigation Standstill Agreement.  Doc 16, Exh. E.

11. Defendant has filed actions in Federal District Court claiming infringement of the patent in suit at least 10 times in the past.  Doc. 15, Exh. B.

12. Defendant has previously pursued disciplinary action against at least one attorney in an unrelated matter.  Doc 16, Exh. F.

13. Defendant has filed suit in Federal District Court against his former patent litigation counsel in relation to the patent in suit alleging claims of professional malpractice.  Doc. 15, Exh. B.

14. In his complaint for malpractice, Defendant alleged that his actions and the actions of his former counsel in the underlying litigation "rendered ineffective [his] intellectual property interest in a 'Continuation Patent' U.S. No. 7,653,959," which is the patent in suit.  *Id*, Exh. I at ¶2.

**BACKGROUND**

Defendant David Catanzaro is an experienced litigant, who makes a living through litigation and threats of litigation in both state and federal courts.[1] Despite his admission in papers filed in other courts that the asserted patent (the '959 Patent) is unenforceable, one of Defendant's business strategies is threatening to, and filing suit in attempts to, enforce the '959 Patent in order to extract payment from his targets. In furtherance of this business strategy, Defendant employs numerous tactics to complicate and prolong litigation, of which the motions presently before the Court are but two examples.

Through the instant motion, Defendant stands before this Court, seeking dismissal of the present action, offering that the Court lacks subject matter jurisdiction over the parties' patent dispute. Plaintiff himself, however, puts before the Court overwhelming evidence of a justiciable case.

Though initiating this dispute, Defendant, in a purposeful effort to divest this Court of jurisdiction and gain leverage for himself over DSF&G in negotiating an unwarranted financial reward, attempts to anonymously advance his litigation strategy as long as possible, including by admitted violation of federal communications regulations[2]. In the present matter, Defendant refused to give his name or to identify the asserted patent when he first contacted DSF&G,

---

[1] Defendant has filed at least eight (8) patent infringement suits in Federal District Courts since 2015, and at least two (2) additional patent suits prior to 2015. Defendant was also the plaintiff or counterclaimant in at least four (4) Magisterial Court matters in Lackawanna County since 2010, seeking total damages of nearly $40,000. Defendant has additionally sued his former patent litigation counsel for professional malpractice seeking "damages in excess of $75,000.00" plus attorney's fees. Defendant further claims to have "brought a disciplinary action against an attorney representing [his] mother" and threatens the same against counsel for DSF&G.

[2] See Doc. 16, Exh. D ("I randomly picked the number you seen (sic) on your caller ID to identify with your area[.] I am not located in that area."); See also Truth in Caller ID Act, 47 U.S.C. §227(e)(1) ("It shall be unlawful for any person within the United States, in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B).")

proffered the proposed LSA to DSF&G, and made the first of his related monetary demands. Despite having now been uncloaked by DSF&G's investigation of the information Defendant provided in his communications with DSF&G and its counsel, Defendant offers the present Motion to Dismiss, claiming that his own intentional omissions preclude the existence of a justiciable case or controversy, and therefore insulate this matter from the declaratory judgment jurisdiction of this Court. As more fully discussed herein, Defendant is incorrect. Accordingly, DSF&G respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

## DEFENDANT'S BASES FOR REQUESTED RELIEF

Defendant's present Motion to Dismiss Plaintiff's First Amended Complaint claims three procedural bases:

1. Fed. R. Civ. P. 12(b)(1): That the Court lacks declaratory judgment jurisdiction;
2. Fed. R. Civ. P. 12(b)(3): That venue is improper; and
3. Fed. R. Civ. P. 12(b)(6): That Plaintiff's First Amended Complaint fails to state a claim upon which relief may be granted.

None of these assertions provides Defendant a reasonable basis for the requested relief. Plaintiff addresses them in turn.

### Rule 12(b)(1) – This Court Properly has Subject-Matter Jurisdiction

The Supreme Court of the United States clarified the law of declaratory judgment jurisdiction in *MedImmune, Inc. v. Genentech, Inc.,* stating:

> [T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

549 U.S. 118, 127, 127 S.Ct. 764, 771 (2007). "*MedImmune* adopted an 'adverse legal interest' requirement…An 'adverse legal interest' requires a dispute as to a legal right—for

example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring." Arris Grp., Inc. v. British Telecommunications PLC, 639 F.3d 1368, 1374 (Fed. Cir. 2011)(internal citation omitted). Defendant has expressly stated his belief that Plaintiff infringes Defendant's patent or patents, Doc. 16, Exh. A at ¶A. And Defendant has threatened to bring and/or could have brought suit against Plaintiff. (See e.g. Doc. 16, Exh. A at ¶A; *Id*, Exh. D at ¶1.) All required elements are present to confer jurisdiction to this Court, including the Parties' adverse legal interests, of sufficient immediacy and reality.

(i)     Application of *Medimmune*

The Federal Circuit applied *Medimmune* in a subsequent case, 3M Co. v. Avery Dennison Corp., 673 F.3d 1372 (Fed. Cir. 2012), which is similar to our present situation. There, the court reversed the district court's finding that jurisdiction was lacking. This Court's sister court in the Southern District of Texas has summarized well the facts of *3M*:

> [I]n *3M*, the court found informal telephone discussions could be sufficient to create a justiciable controversy. *3M*, 673 F.3d at 1376. There, the defendant's counsel telephoned the plaintiff's chief intellectual property counsel and stated that one of the plaintiff's products "may infringe" certain specified patents of the defendant's, and that licenses were available. *Id.* at 1374–75…The defendant represented that it had performed an infringement analysis of the product and offered to send claim charts, but it did not do so. *Id.* Over a year later, the plaintiff filed suit seeking declaratory judgment. *Id.* The court found that if the facts were as the plaintiff alleged, there would be standing, emphasizing particularly defense counsel's "offer to license the...patents, his representation that the defendant had analyzed the allegedly infringing products, and his statement that claim charts would be forthcoming," demonstrating an "intent to escalate the dispute." *Id.* at

6

1379–80. The court also noted the defendant's history of enforcing its patent rights against the plaintiff, the defendant's refusal to grant the plaintiff a covenant not to sue, and the defendant's unilateral initiation of licensing discussions. *Id.* at 1380.

Element Six U.S. Corp. v. Novatek Inc., No. CV 14-0071, 2014 WL 12586395, at *4 (S.D. Tex. June 9, 2014).

Our case is on all fours with *3M*:

| ***3M Co. v. Avery Dennison Corp*, 673 F.3d 1372 (Fed. Cir. 2012) (Interpreting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007))** | **Undisputed Facts of the Present Case** |
|---|---|
| Defendant's counsel telephoned the plaintiff's chief intellectual property counsel; | Defendant initiated contact with Plaintiff by telephone on January 11, 2017. Doc. 16 at ¶2. |
| And stated that one of the plaintiff's products "may infringe" certain specified patents of the defendant's; | Defendant stated that "Plaintiff was selling 'Decorative Planter' [sic] products that Defendant believed had similarities to a patent or patent application" owned by Defendant. Doc. 16 at ¶2.<br><br>Provided a Litigation Standstill Agreement including a statement that Defendant "has evidence that [Defendant] asserts establishes that [Plaintiff] infringed [Defendant's] patent." Doc 16, Exh. A at ¶A. |
| And that licenses were available; | The parties would engage in "full and frank discussions regarding [Defendant's] claim prior to the commencement of patent infringement litigation." Doc 16, Exh. A at ¶C.<br><br>Defendant sought to "open a dialog [sic] to further discuss the matter." Doc. 17 at ¶5. |
| Defendant had analyzed the allegedly infringing products; | Defendant stated that "Plaintiff was selling 'Decorative Planter' [sic] products that Defendant believed had similarities to a patent or patent application" owned by Defendant. Doc. 16 at ¶2. |
| An intent to escalate the dispute; | Defendant stated belief that entering into the LSA was related to the purpose of Plaintiff "mak[ing] an informed decision as to whether |

7

| | |
|---|---|
| | or not litigation could be prevented." Doc. 15, Exh. H. |
| Defendant's history of enforcing its patent rights [against the plaintiff]; | While Defendant has not previously enforced its patent rights <u>against Plaintiff</u>, Defendant has been a perpetual plaintiff since at least 2008.  Doc. 15, Exh. B. |

The facts here overwhelmingly show that, at the time of the filing of Plaintiff's complaint in this matter, the parties had adverse legal interests of sufficient immediacy and reality, and that, if even the slightest doubt of that existed at that time, all doubt had been erased by the time of the filing of Plaintiff's First Amended Complaint.

    (ii)    <u>Adverse Legal Interest</u>

The parties dispute whether Plaintiff's sales of "decorative planters" infringe Defendant's '959 patent.  To wit, as stated above, Defendant's proposed LSA says:

> A. "Whereas Owner has evidence that Owner asserts establishes that DSFG infringed his patent (patent no. _____, the 'Patent') with one or more products;
>
> B. Whereas DSFG denies infringing Owner's patent;
>
> C. Whereas Owner and DSFG desire to have full and frank discussions…prior to the commencement of patent infringement litigation to avoid such litigation if possible.

Further, the email by which Defendant transmitted the LSA to DSF&G, <u>Doc. 16</u>, Exh. B, bears the subject line "Patent Infringement Matter."  Defendant, in his brief in support of the present motion, discusses his initial telephone contact with DSF&G, characterizing it as "focused on the fact that Plaintiff was selling 'Decorative Planter' products that Defendant believed had similarities to a patent or patent application in possession by Defendant."  <u>Id</u>, ¶2.  Defendant's email to counsel for DSF&G, dated January 18, 2017, <u>Id</u>, Exh. D, identifies steps whereby

8

Defendant would present to DSF&G "all necessary information to make an informed decision as to whether or not litigation could be prevented."

While Defendant argues that his omission of certain details in his contacts with Plaintiff – purposefully aimed at avoiding the jurisdiction of the Court – it may be further elucidated during discovery that Defendant, in his first telephone call to Plaintiff, stated that he observed the accused "decorative planters" at a Wal-Mart retail store. Plaintiff, as any reasonable supplier of products to a retailer, was immediately able to understand that Defendant could only be referring to the accused products. Similarly, Defendant clearly provided sufficient information about himself and his patent(s) for Plaintiff and Plaintiff's counsel to identify Defendant.

The adverse legal interests of the parties here could hardly be better formed. Defendant asserts that he owns a valid patent and that DSF&G made actual sales that infringed that patent. DSF&G contends that the asserted patent is invalid, not infringed, and – if valid – is nonetheless unenforceable due to the triggering and operation of a terminal disclaimer in the patent's prosecution.

(iii)   <u>Sufficient Immediacy and Reality</u>

**a. Defendant's Actions and Words Threaten Litigation**

In Defendant's own words, he views the current period of discussion between the parties as a precursor "to the commencement of patent infringement **litigation**" and he offers that these discussions are "to avoid such **litigation** if possible." <u>Doc. 16</u>, Exh. A at ¶C. These words, in fact, come from Defendant's proposed **Litigation** Standstill Agreement. Defendant, in his first email to Plaintiff's counsel, stated his belief that entering into the LSA would benefit Plaintiff by allowing it to "make an informed decision as to whether or not **litigation** could be prevented." Doc. 15, Exh. H (emphasis added). The intended threat is readily apparent.

**b. Defendant Demanded Payment of Royalties/License Fees From Plaintiff**

Though he denies it before the Court, Defendant has demanded recompense from DSF&G for the alleged acts of infringement.

Subsequent to Plaintiff's filing of the initial Complaint in this matter on January 27, 2017, but prior to Plaintiff's ability to effect service on February 3, 2017, Defendant discovered by searching PACER that Plaintiff had initiated this suit. Defendant, upon this discovery, telephoned both Plaintiff and Plaintiff's counsel. On February 1, at approximately 2:45 P.M., Defendant left Plaintiff's counsel a voicemail:

> Hey Doug, Dave Catanzaro. I see you filed a declaratory relief action against me. There is some things that you should be aware of that you're not aware of with regard to the '959 patent. I guess you did some research but you are unaware that I repurchased the '959 patent from Church & Dwight. The '959 patent expired as of December 2016…Again, do a little more research on the patent. The patent did not expire in 2011. The patent expired as of December 2016. So, when I get a chance if we get in front of the judge <u>if you guys are going to make a huge deal over a minimal amount of royalty so be it</u>, but I really would hope that you would inform your client of the full merits of this case.

Either immediately before or after this call to Plaintiff's counsel, Defendant spoke to the receptionist at Plaintiff's corporate offices. The receptionist reported this fact and the substance of the brief conversation to her superiors, and Plaintiff's Controller contemporaneously informed counsel of this:

> The gist of the conversation with my receptionist:
>
> 'I don't know why they (we) had to start litigation. <u>I don't know why they just didn't pay me the $5000 and be done with it</u>. Now they'll have attorney's fees. He won't have any, because he's going to defend himself.'
>
> Her only response: I'm not the person who you need to talk to.,etc.

*See* Exh. A (emphasis added).

Defendant's own communications clearly indicate that he was asserting that he owned a valid patent, expected to receive royalty payments from Plaintiff based upon that patent, and had in fact, made a demand of Plaintiff. Defendant's statements in his voicemail corroborate the e-mail communication of Plaintiff to counsel regarding the same fact.

### c. Defendant is a Serial Litigant Whose Actions Give Rise to a Reasonable Apprehension of Suit

As stated in DSF&G's First Amended Complaint, at ¶ 26, Defendant has a history of filing suit for enforcement of the '959 patent. "A patentee's prior enforcement litigation is a factor supporting jurisdiction where a patentee has directly asserted infringement allegations against a declaratory judgment plaintiff." Draeger Med. Sys., Inc. v. My Health, Inc., No. 15-248-SLR, 2016 WL 859282, at *3 (D. Del. Mar. 3, 2016) (citing Micron Tech., Inc. v. Mosaid Techs., Inc., 518 F.3d 897, 901 (Fed.Cir.2008)). Defendant's statement that he "has evidence that…DSFG infringed his patent" is a clear and direct assertion.

The threat posed to Plaintiff by Defendant's contact and the methods employed therein, coupled with his uncovered propensity for litigation – and patent litigation most of all – leave Plaintiff, or any other party, with limited options. 1) Do nothing and risk suit by a prolific litigant, who has affirmatively stated that any suit he brings will be in an unknown jurisdiction; 2) Enter into the proposed LSA, which ends only with paying Defendant or being subject to the unequal non-suit periods, whereby Defendant will likely bring suit during the extended non-suit period; 3) Seek reexamination of the patent by the United States Patent and Trademark Office, which does not preclude Defendant from bringing suit in an unknown jurisdiction during that proceeding; 4) Pay Defendant his ransom; or 5) File the present suit. In view of Defendant's litigious nature and his express threats, the need for the policy stated in *Draeger* of recognizing such proclivities becomes obvious.

(iv) The Jurisdiction of the Court is Clear

Defendant undertakes contortions and gymnastics in an effort to avoid the jurisdiction of this Court. He first asserts that he "stated that he had absolutely no intention in (sic) filing any lawsuit associated with this matter." Doc. 16 at ¶3. If that were the case, the LSA that Defendant sought would be unnecessary and repeated reference to litigation would be unnecessary. Regardless, "[a] 'statement by a patent holder promising not to sue the plaintiff does not eliminate the justiciable controversy created by the patent holder's actions.'" Id. (quoting *EchoStar Satellite LLC v. Finisar Corp.*, 515 F.Supp.2d 447, 452 (D.Del.2007); citing *Sony Bees., Inc. v. Guardian Media Techs., Ltd.,* 497 F.3d 1271, 1284 (Fed.Cir.2007) (declining to hold that a patentee's statement that it had "absolutely no plan whatsoever to sue" eliminates the controversy needed to maintain a declaratory judgment suit)).

Next, Defendant offers that a letter from Plaintiff's counsel to Defendant on January 18, rendered this matter moot. The facts belie this position, beginning with Defendant's very next statement that "after Defendant reviewed the…letter, Defendant called Plaintiff's Attorney." Doc. 16 at ¶10. This set in motion accusations, demands of payment, identification of Defendant, identification of the patent in suit, ongoing – though as yet fruitless – negotiations, and the other various facts that have brought the parties to this point of clear adverse standing.

Further still, Defendant contends that he and DSF&G's counsel entered into an "oral agreement or covenant of understanding," which Defendant seems to argue is, in fact, a binding contract whereby Plaintiff and Defendant would enter into a contract in the form of the LSA – and that the contract for a contract (between Defendant and Plaintiff's counsel) actually represents a covenant not to sue, on behalf of a third party – DSF&G. This covenant, Defendant alleges, arises out of a supposed statement by Plaintiff's counsel that he "would recommend to his client (the

Plaintiff) to enter into the Litigation Standstill Agreement." Id. at ¶15.  This, despite Defendant's inconsistent statement in his email to DSF&G's counsel on January 30, 2017, stating "[a]s far as I understand from our conversation, you are making the decision as to weather (sic) or not your client will be signing the stand still (sic) agreement." Id., Exh. E.  DSF&G does not present these facts in this seemingly circus-like manner intending to make light of these proceedings.  Plaintiff, rather, does so urging the Court to see the evasive nature of Defendant and his use of all available tactics as sword or shield, as it suits him.  He seeks to evade the jurisdiction of this Court while, upon the same facts, forcing DSF&G to negotiate with and pay him.  These tactics submit DSF&G to significant uncertainty, and to the real and immediate threat of suit by Defendant.

Declaratory Judgment jurisdiction exists where the facts alleged, under all the circumstances, demonstrate that the parties have adverse legal interests, of sufficient immediacy and reality.  Such jurisdiction is clearly and irrefutably demonstrated here.

**Rule 12(b)(3) – This Judicial District is the Proper Venue**

Defendant makes cursory mention of Rule 12(b)(3), but in doing so appears to conflate several Rules and fails to provide any legal support for his argument.  Defendant's entire argument in this regard is that venue is not proper because:

1) "A substantial part of the events or omissions giving rise to the claim are unfounded; and

2) "Without subject matter [j]urisdiction, a substantial part of the events or omissions giving rise to the claim are clearly unfounded.

Clearly these statements show Defendant's confusion regarding the doctrine of venue.  To the extent that Defendant's statements conflate venue and jurisdiction, Plaintiff responds that "[v]enue is not the identical (or even fraternal) twin of jurisdiction," Simon v. Ward, 80 F. Supp.

13

2d 464, 467 (E.D. Pa. 2000), and DSF&G briefly addresses Defendant's mention of "venue" and points out that there is no true question of proper venue in this matter.

Senior Judge Reed of this Court wrote that "this Court is bound by the rule set forth by the Court of Appeals in *Myers:* defendant bears the burden of establishing that venue is improper." Simon v. Ward, 80 F. Supp. 2d 464, 468 (E.D. Pa. 2000)(citing *Myers v. American Dental Ass'n,* 695 F.2d 716 (3d Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983))[3]. Defendant makes no showing of any kind that venue is improper and therefore fails to carry his burden under this subsection.

DSF&G reiterates its statement of venue in its First Amended Complaint, at ¶ 7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim – DSF&G's sales of the accused products – occurred in this judicial district.

**Rule 12(b)(6) – DSF&G Fully and Properly States a Claim Upon which Relief Can be Granted**

As with Rule 12(b)(3), Defendants statements concerning Rule 12(b)(6) are wholly conclusory and conflate this defense with the question of jurisdiction. "When presenting a Rule 12(b)(6) motion, the defendant [Catanzaro] bears the burden to show that the plaintiff [DSF&G] has not stated a claim." Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes

---

[3] "[A] motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense. Because of the nature of the motion, 'it is not necessary [as contrasted with jurisdiction] for the plaintiff to include allegations showing the venue to be proper.' Fed.R.Civ.P. Form 2, Advisory Committee note 3. It logically follows therefore that on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982).

14

that those allegations 'could not raise a claim of entitlement to relief.' " Metro. Edison Co. v. Pennsylvania Pub. Util. Comm'n, 767 F.3d 335, 350 (3d Cir. 2014) (citing *Simon v. FIA Card Servs., N.A.,* 732 F.3d 259, 264 (3d Cir.2013); (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "At bottom, '[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element' of a claim." Clouding IP, LLC v. Amazon.com, Inc., No. CA 12-641-LPS, 2013 WL 2293452, at *1 (D. Del. May 24, 2013)(quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir.2008)).

Here, Plaintiff alleges that Defendant's '959 patent is: (i) invalid and unenforceable for failure to satisfy the requirements for patentability under Title 35 of the United States Code, including the respective provisions of §§ 102, 103, and 112; (ii) not infringed by "decorative planter" products sold by Plaintiff; and (iii) unenforceable because the '959 patent failed to be commonly owned with its parent, as required by a terminal disclaimer filed during prosecution of the '959 patent.

### (i) Invalidity

The Patent Act, 35 U.S.C. §102 (pre-AIA) states, in part:

> A person shall be entitled to a patent unless —
> 
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

>    (b)   the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States

The Patent Act, 35 U.S.C. §103 (pre-AIA) states, in part:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Plaintiff's First Amended Complaint cites specific, identified prior art that Plaintiff alleges anticipates and/or renders obvious the claimed invention of the '959 patent. These statements, accepted as true, demonstrate, on their face, that DSF&G is able to evidence the element of invalidity of the '959 patent under the relevant sections of the Patent Act.

### (ii) Non-Infringement

35 U.S.C. §271 provides, in part, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." DSF&G's First Amended Complaint states: "DSF&G has not infringed, nor is it infringing, directly or indirectly, any valid claim of the '959 Patent." It is a legal truism that "invalid claim[s] cannot give rise to liability for infringement." Exergen Corp. v. Wal–Mart Stores, Inc., 575 F.3d 1312, 1320 (Fed.Cir.2009). As DSF&G has pleaded facts supporting the invalidity of the patent, it follows that DSF&G's complaint properly alleges non-infringement by the accused product.

### (iii) Unenforceability

Count III of DSF&G's First Amended Complaint, at ¶¶ 38-46, sets forth, with specificity, facts which, taken as true and viewed in the light most favorable to DSF&G, the non-movant, clearly evidence unenforceability of the '959 patent. These facts show that the '959 patent was

subject to a terminal disclaimer requiring that it remain commonly owned with its parent, U.S. Patent No. 6,026,532 (the "'532 Patent"). Count III further details that Defendant alienated the '532 patent, severing the common ownership and causing the '959 patent to immediately expire on February 28, 2011. DSF&G's First Amended Complaint further alleges that Defendant himself is aware of the unenforceability of the '959 patent and filed suit against his former patent litigation counsel expressly stating that "he is foreclosed from pursuing" actions for infringement of the '959 patent. See Doc. 15, Exh. I, ¶ 30. The First Amended Complaint distinctly pleads that this expiration rendered the '959 patent unenforceable.

**Defendant's Claim of Bad Faith is Baseless**

Each and every accusation of bad faith in Defendant's present motion is addressed above. That fact alone should indicate that neither DSF&G nor its counsel acted in any untoward manner in the filing of the present lawsuit. Defendant has come to Plaintiff with threats and cloak and dagger, designed to place Plaintiff in checkmate with no option but to pay Defendant the money he demands. In an effort to extricate itself from this position the Defendant has designed, DSF&G now comes before the Court with clean hands and with the law and facts in its favor.

## CONCLUSION

For the reasons set forth above, Plaintiff Dan Schantz Farm & Greenhouses, LLC has demonstrated that: this Court holds proper subject matter jurisdiction over the present dispute between the parties regarding their adverse legal interests; this Court is the proper venue for this dispute and that Defendant has failed to produce evidence or meet his burden of proving the contrary; and that Plaintiff's First Amended Complaint properly states a claim for declaratory judgment of patent invalidity, non-infringement, and unenforceability. As such, Plaintiff respectfully urges that Defendant's Motion to Dismiss must be denied in all respects.

|  |  |
|---|---|
|  | FITZPATRICK LENTZ & BUBBA, P.C. |
| Date: <u>May 11, 2017</u> | BY: _____<br>Douglas Panzer<br>PA Bar I.D. #203354<br>Attorney for Plaintiff<br>4001 Schoolhouse Lane<br>P.O. Box 219<br>Center Valley, PA 18034-0219<br>(610) 797-9000 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : | |
| | : | Docket No. |
| Plaintiff, | : | 5:17-cv-00403-JLS |
| | : | |
| v. | : | |
| | : | |
| DAVID J. CATANZARO, | : | |
| Defendant. | : | |

## [Proposed] ORDER

Now, this ____ day of _____, 2017, the Honorable Jeffrey L. Schmehl, having considered Defendant David J. Catanzaro's Motion to Dismiss, and the parties' briefs and arguments in relation thereto, Defendant's Motion to Dismiss is DENIED.

SO ORDERED:

_____

Hon. Jeffrey L. Schmehl

19