**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| DAN SCHANTZ FARM & GREENHOUSES, LLC, | : CIVIL ACTION |
| Plaintiff, | : |
| v. | : NO. 5:2017-cv-00403 |
| DAVID J. CATANZARO | : THE HONORABLE : JEFFREY L. SCHMEHL |
| Defendant | : |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCIPLINARY ACTION

Defendant David J. Catanzaro respectfully requests this court Grant Defendant's Motion for Disciplinary Action and presents this Response in Opposition to Plaintiff's Response in Opposition to Defendant's Motion for Disciplinary Action.

Defendant's Motion for Disciplinary Action should be GRANTED and Attorney Panzer's request for attorney's fees and costs associated with the preparation and filing of his response should be DENIED

Defendant David J. Catanzaro asks this court to exercise its power to impose disciplinary action against Attorney Douglas Panzer, NOT in an effort to intimidate Plaintiff, intimidate Mr. Panzer, dissuade Mr. Panzer's representation of Plaintiff in this matter, and NOT to increase Defendant's own chances of extracting a financial settlement payment from Plaintiff, but because of the ethical line Mr. Panzer crossed after entering into an oral agreement or

1

covenant of understanding with Defendant then callously breaching it, which established a real showing of contempt for the Defendant.

Defendant takes offence when Plaintiff states that Defendant is a "serial litigant and the courts are his weapon of intimidation in seeking financial gain." Defendant takes pride in the patents he has obtained and the patent applications that will be issuing. It has taken near 25 years to obtain the totality of the several patents and applications applied for and obtained by Defendant. Defendant is NO patent troll. Defendant has never once bought portfolios of patents only to extract payment from others. Defendant is NO serial litigant but Plaintiff tries to further influence the court with the fact that Defendant has been involved with several infringement actions that took place in 2015. Defendant only was involved with those actions because Defendant believed he was compelled to file them as a direct result of an order handed down by Federal Judge Dan Aaron Polster in Case No. 1:13 CV 996 (Refer to **Exhibit G**). As soon as Case No. 1:13 CV 996 settled, Defendant dismissed each and every one of those referenced lawsuits. Mr. Panzer further states that Defendant has been involved in (4) Magisterial matters since 2010. If this court would like to discuss the merits of those matters, Defendant welcomes the Courts inquiry. Defendant asserts that it is Attorney Panzer who makes his career out of using the courts as his weapon to manipulate. (This assertion is based on Mr. Panzer's unethical actions taken in this matter.)

Defendant ADIMITLY DENIES the statements made by Mr. Panzer when he says the public record of this matter is a showing of contempt toward Mr. Panzer by Defendant and Defendant's ability to show value of his patent is diminished as a result thereof. As already stated by Plaintiff, and shown in his complaint exhibits, there is already public record several other times in Federal court of the '959 patent. Defendant further states that this "public record' is the reason Defendant filed his Motion for Disciplinary Action as this public record caused the "manifestation of his

2

anger." If this accusation had any merit, Defendant would have filed Disciplinary Actions against the attorney for Plaintiff Blue Box which filed a LIGITAMITE Declaratory Judgment Action against Defendant as cited within plaintiff's complaint and amended complaint. This is another desperate attempt by Plaintiff to delegitimize Defendant and Defendant's Motion for Disciplinary action.

Defendant submits that his present motion should be granted as it correctly states the oral agreement or covenant of understanding between the parties and the email communication's **(Exhibit E)** accurately support the facts as presented by Defendant. It is Mr. Panzer who is an experienced serial litigator and has a degree and career to support that charge unlike Defendant who has been involved in only several IP actions within the last 50 years of his life. Mr. Panzer is completely unbridled by the fact that Defendant is standing up for his rights and accurately addressing this court with the facts. After filing this action, Mr. Panzer directly stated to Defendant that **"He is the man."** Plaintiff filed this frivolous action and he himself has incurred "the costs associated with the present matter" for his client and for costs incurred by Defendant. Defendant has asked this court for exemplary damages.

Defendant's subject matter jurisdiction challenge is proper and should be granted. It is Mr. Panzer who acts in an intimidating fashion, Defendant hopes that this court will 'acknowledge' Mr. Panzer's 'intent to deceive behavior' of which constituted a very strong showing of 'Bad Faith' which is completely adverse with the Rules of Professional Conduct and Rules of Civility. As an officer of the court, Mr. Panzer has also demonstrated complete contempt toward Defendant as a result of his malicious, grossly reckless actions and conduct associated with this matter. An agreement or covenant of understanding was reached between the Defendant and Plaintiff's attorney Douglas Panzer during a conversation of 1-18-17 when attorney Panzer agreed, promised and reassured Defendant that he would recommend to his client (the Plaintiff),

3

to enter into the Litigation Standstill Agreement and respond back to Defendant with respect to his clients response to entering into said agreement. In return, Defendant would disclose his full legal name prior to Plaintiff signing said agreement. After the agreement was signed, Defendant then would fully disclose all pertinent information regarding the matter with the goal of Defendant and Plaintiff reaching a resolution without having any legal entanglements. Plaintiff asserts that Defendant continued to "leverage his anonymity in negotiating a financial payoff from Plaintiff. This action was filed on 1-27-17 and Mr. Panzer identified Defendant's full legal name within the filing of this action. It is a clear LIE by Mr. Panzer when he asserts Defendant "leveraged his anonymity in negotiating a financial payoff from Plaintiff". Defendant's identity was fully known when Defendant made his first demand for compensation mainly for 'Pain & Suffering' as a direct result of the filling of this *frivolous* lawsuit by Mr. Panzer and for his 'Bad Faith' conduct associated thereto. (Defendant suffers from health issues and has been taking lifesaving medication on a daily bases since 2013-2014)

Defendant has made this Pain & Suffering settlement demand only AFTER this suit was filed and the demand was first made in Defendant's email to Plaintiff of 2-2-17 (**Exhibit F**) denoted herein and in Defendant's Brief in Support of Motion to Dismiss. THE SETTLEMENT DEMAND WAS MADE BASED ON A DIRECT REQUEST BY ATTORNEY PANZER. As denoted in Defendant's Brief in Support of Motion to Dismiss, Defendant was completely caught off guard when Mr. Panzer filed this baseless action in bad faith after entering into the oral agreement and covenant of understanding with Defendant. After finding out about the filing of this action, Defendant expressed his complete disappointment with Mr. Panzer during the phone call on 2-1-17, and Mr. Panzer made several telling statements as to why he really filed this action, as already denoted within Defendant's Brief in Support of Motion to Dismiss.

4

Mr. Panzer further stated the following several times within the 2-1-17 conversation : "David you want money...You want money right?...Just let me know how much money you want." Mr. Panzer's instruction led Defendant to submit a demand to Plaintiff as stated and redacted in the 2-2-17 email (**Exhibit F**). Plaintiff refers to a "partial log of telephone calls between Defendant and Attorney Panzer, evidencing Defendant's abuse of the telephone system for the purposes of avoiding identification, whereby Mr. Catanzaro "spoofs" his caller ID, in violation of the federal Truth in Caller ID Act." This log is COMPLETELY INACCUERATE. Plaintiff shows a "partial' log with 21 calls and Plaintiff asserts Defendant's "abuse of the telephone system for the purposes of avoiding identification". Defendant will again prove to the court a more 'truthful assessment' of the facts. Defendant admits he used a third party number during the first call to Mr. Panzer and admitted that in **Exhibit D** as denoted in Plaintiff's Brief in Motion to Dismiss. Plaintiff's area code is 610 and Plaintiff used that area code during the first call to Mr. Panzer one time on 1-18-17. During the call Plaintiff and Defendant entered into the stated oral agreement. Plaintiff filed this action on 1-27-17 fully aware of Plaintiff's last name. Plaintiff found out about the action on 2-1-17 and as stated, Defendant and Plaintiff had a conversation on that day. As the log details, Defendant used his CORRECT number on 2-1-17 AND EVERY TIME THEREAFTER. The log correctly shows the true number of calls by Defendant as being 9 from 1-18-17 to 3-16-17 not 21. Plaintiff again is trying to confuse this court in an all-out effort to rule in Plaintiff's favor. None of the calls on plaintiff's log are Defendant's other than the 570-282-4889 numbers and the one other on 1-18-17. Having to take the time to 'unweave' these deceptive allegations further shows Mr. Panzer's Contempt for Defendant and the level of ease it is for Mr. Panzer to try to deceive this court. Defendant further requests that this Court order Plaintiff to pay Defendant attorney's fees and costs associated with the preparation and the filing

5

of this response.

Mr. Panzer asserts that Defendant acted in an unlawful manner when he provided only his first name and a third party phone number during Defendant's first call to Mr. Panzer. Defendant categorically rejects this assertion and in NO way intended or committed any fraud, harm or wrongfully obtained anything of value from Plaintiff or Plaintiff's Attorney.

It is Attorney Panzer who denies the actual facts surrounding this matter and Defendant has revealed Mr. Panzer's plots to twist and contort almost any material fact associated with this matter. It is Mr. Panzer that is a practitioner of "sword and shield" strategies as demonstrated within the fillings of this suite. All Defendant wanted to do is open up a dialog with Plaintiff within the context of a written agreement. Defendant is not a "serial Litigant" and made a "good faith" effort with Plaintiff to avoid any and legal actions.

Mr. Panzer truly acted in Bad Faith when he filed this frivolous action and beached the oral agreement entered into with Defendant of which Defendant had Reliance. Mr. Panzer's client allowed him to do so or went along with his "plot" as revealed within Mr. Panzer's email of 1-23-17 (contained within **Exhibit E**) wherein he states: "We are discussing the matter and will be back to you shortly." Mr. Panzer never got back to Defendant and filed this action but 5 days later. Defendant had every right to express his anger and disappointment with plaintiff as expressed within Defendant's 2-2-17 email (**Exhibit F**). To date, Defendant has not followed through on any of the public actions contained therein.

It is clear and apparent that Mr. Panzer has breached the Pennsylvania Rules of Professional Conduct and "made false statements of material fact" as revealed within Defendant's filings and in particular within 'Defendant's Response in Opposition to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss' and contained herein. Mr. Panzer has NOT been truthful

6

when dealing with Defendant which is contrary to PA ST RPC Rule 4.1.

By Attorney Panzer preparing and filling this action during the time Defendant relied on Plaintiff's response with respect to an oral agreement between the parties, is nothing less than egregious and completely adverse to PA ST RPC Rule 4.1. Mr. Panzer has tested the limits of zealous representation and has exceeded the limits of fair dealing in this matter.

Mr. Panzer did enter into a 'reality' based agreement or covenant of understanding with Defendant and part of that agreement was that Mr. Panzer would recommend to his client enter into the Standstill agreement of which Defendant had a reliance on Mr. Panzer's response regarding the outcome of said recommendation. Mr. Panzer has used the misfortunate fire experienced by his client as a delay tactic in getting back to Defendant all in an effort to prepare and file this action and the following facts provided within the emails of (**Exhibit E**) prove this fact.

1. Email by Defendant to Mr. Panzer 1-23-17 "Several days have passed since our phone communication, at this time has your client reconsidered moving forward with the standstill agreement?"

2. Response Email by Mr. Panzer 1-23-17 "We are discussing the matter and will be back to you Shortly"

3. Email by Defendant to Mr. Panzer 1-25-17 "Please provide me with an update today."

4. Response Email by Mr. Panzer 1-25-17 "As you may know, Dan Schantz had a serious fire earlier this month that caused major damage and disruption. I will have a substantive response for you as soon as possible".

5. Email by Defendant to Mr. Panzer 1-30-17 "As far as I understand from our conversation, you are making the decision as to weather or not your client will be signing the stand still agreement along with reviewing the materials and providing your recommendation.

7

Please let me know what time you are available to speak today."

6. Email by Defendant to Mr. Panzer 2-1-17 "At this time, please provide me with an update per your client entering into the standstill agreement."

Mr. Panzer admits he provided advice and counsel to his client. In Mr. Panzer email of 1-23-17 he admits that he spoke to his client. "We are discussing the matter and will be back to you Shortly" (We (Client and I) are discussing the matter and will be back to you Shortly). Then on 1-25-17 Mr. Panzer states "As you may know, Dan Schantz had a serious fire earlier this month that caused major damage and disruption. I will have a substantive response for you as soon as possible". Then two days later Mr. Panzer filed this action. From the time Mr. Panzer spoke to his Client on 1-23-17 the wheels were already set into motion to file this action on 1-27-17. Again, Defendant tries to manipulate the court by providing a number of articles as contained in Mr. Panzer's **Exhibit E** regarding the fire to gain sympathy of this court, whereby the court will move on emotion and not on the plain facts as presented by Defendant.

Mr. Panzer states that Defendant's email of 1-30-17 (contained within **Exhibit E**) is inconsistent with the above stated agreement when Defendant states in that email: "as far as I understand from our conversation, you are making the decision as to whether or not your client will be signing the stand still agreement." Defendant adamantly DENIES this accretion. This email was sent 12 days after the parties entered into the above stated agreement and Defendant began to question the integrity of Mr. Panzer, hence the stronger tone. Mr. Panzer deliberately leaves out the last several words of the above quoted statement. Defendant includes those words as follows:

*"as far as I understand from our conversation, you are making the decision as to whether or not your client will be signing the stand still agreement along with reviewing the materials **and***

8

*__providing your recommendation.__ "* (Emphases on the words 'providing your recommendation')
This email is completely consistent with the facts provided with regards to the oral agreement or
covenant of understand reached between the parties. The lines of communication exchanged
within the emails of **Exhibit E** are undeniable facts which strongly support the oral agreement
between the parties as outlined by Defendant.

Defendant asserts that there was a "meeting of the minds" with respect to the oral agreement
between the parties and nothing was left open. Mr. Panzer now states that he made it clear that
"the proposed LSA was, by its terms, unacceptable due to the fact that Mr. Catanzaro would be
granted an exclusive seven-day period which he could file suite against DSF&G…" This is not
TRUE. Defendant has established by and through its pleadings that an oral agreement existed
between the parties and nothing was left open. Defendant has further established by and through
its pleadings, that Mr. Panzer never intended to follow through on the oral agreement and
recommend to his client to enter into the LSA and Mr. Panzer never intended to respond to
Defendant with respect thereof. Mr. Panzer only agreed to enter into the oral agreement with
Defendant to 'Buy Time' to file this action. These continued false statements by Mr. Panzer
continue to shed light on the full extent he will go to, to try to mislead this court.

Mr. Panzer makes references to notations and continues to state that the LSA was
unacceptable to allow his client to enter into. Defendant again refers to the totality of its
pleadings and to the email communications within **Exhibit E** to completely repudiate this
assertion. An oral agreement was entered into between Defendant and plaintiff's attorney and
plaintiff's attorney only agreed to enter into it with Defendant to 'Buy Time' to file this baseless
action. Plaintiff's Attorney had a duty to Defendant to "Recommend and Respond" as defined in
the stated oral agreement and never fulfilled his commitment, but rather used the agreement to

9

'Buy Time' to file this baseless action. Defendant relied on Mr. Panzer to fulfill his commitment which in BAD FAITH he breached. Defendant respectfully request this honorable court to apply necessary discipline to Mr. Panzer.

Attorney Panzer and Defendant did have a contract-type 'meeting of the minds' and nothing was left open for future negotiations. Mr. Panzer agreed to "Recommend and Respond" which never consummated. Again Mr. Panzaer was to "Recommend" to his client enter into the LSA and then "Respond" to Defendant the outcome. Mr. Panzer never fulfilled his commitment, but rather used the agreement to 'Buy Time' to file this baseless action. Defendant relied on Mr. Panzer to fulfill his commitment. Mr. Panzer's 'intent to deceive behavior' constitutes a very strong showing of 'Bad Faith' which is completely adverse with the Rules of Professional Conduct and Rules of Civility. As an officer of the court, Mr. Panzer has also demonstrated complete contempt toward Defendant as a result of his malicious, grossly reckless actions and conduct.

## Conclusion

As discussed at length above and within Defendant's other pleadings, Attorney Panzer has not comported himself within the bounds of the Rules of Professional Conduct in the present matter. His actions have not been reasonable nor honest and crossed an ethical line while representing his client. The present Motion for Disciplinary Action is based on fact and supported by law. Mr. Panzer carelessly moved forward with the filing of this suite has shown contempt toward Defendant. Moreover, these actions by Mr. Panzer have been undertaken in a dishonest and disrespectful way. Mr. Panzer's 'intent to deceive behavior' constitutes a very strong showing of 'Bad Faith' which is completely adverse with the Rules of Professional Conduct and Rules of Civility. As an officer of the court, Mr. Panzer actions have also been malicious and grossly

10

reckless. Defendant respectfully request this honorable court to apply necessary discipline to Mr.

Panzer and grant Defendant's Motion for Disciplinary action and order the Plaintiff Douglas

Panzer to pay attorney's fees and cost associated with the preparation and filing of this response.


Respectfully submitted,                          Dated: May 19, 2017


*s/ David J. Catanzaro*
David J. Catanzaro
Defendent *Pro Se*
286 Upper Powderly Street
Carbondale, PA  18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

11

## CERTIFICATE OF SERVICE

I, David Catanzaro, hereby certify that a true and correct copy of the forgoing Defendant's

Response in Opposition to Plaintiff's Response in Opposition to Defendant's Motion for

Disciplinary Action was sent by First Class Mail to the United States District Court for the

Eastern District of Pennsylvania and served via First Class Mail upon Plaintiff this 19th day of

May 2017 to the following person:

DAN SCHANTZ FARM &
GREENHOUSES, LLC
c/o DOUGLAS PANZER
FITZPATRICK LENTZ & BUBBA
4001 Schoolhouse Lane
Center Valley, PA 18034

*s/ David J. Catanzaro*
David J. Catanzaro

# Exhibit D

 **Gmail**

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**
To: Douglas Panzer <dpanzer@flblaw.com>

Wed, Jan 18, 2017 at 4:09 PM

Dear Douglas,

I appreciate our recent conversation. Per our conversation, It is my desire that your client (DSFG) opens up a dialog wherein I would provide them with all necessary information. By entering into the standstill agreement, DSFG will have all necessary information to make an informed decision as to whether or not litigation could be prevented.

With regards to your question as to whether or not the litigation would be filed in your district, the clear answer is NO. I randomly picked the number you seen on your caller ID to identify with your area, I am not located in that area.

Thanks,
David
[Quoted text hidden]

# Exhibit E

 **Gmail**                                    David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts** <davemts1213@gmail.com>                         Mon, Jan 23, 2017 at 11:29 AM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

Several days have passed since our phone communication, at this time has your client reconsidered moving forward
with the standstill agreement?

Thanks,
David
[Quoted text hidden]

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**Douglas Panzer <dpanzer@flblaw.com>**
To: David mts <davemts1213@gmail.com>

Mon, Jan 23, 2017 at 12:23 PM

We are discussing the matter and will be back to you shortly.

**From:** David mts [mailto:davemts1213@gmail.com]
**Sent:** Monday, January 23, 2017 11:30 AM
**To:** Douglas Panzer <dpanzer@flblaw.com>
**Subject:** Fwd: Dan Schantz Farm & Greenhouses, LLC

[Quoted text hidden]
[Quoted text hidden]

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

David mts <davemts1213@gmail.com>    Wed, Jan 25, 2017 at 11:51 AM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

Please provide me with an update today.

Thanks,
David
[Quoted text hidden]

 Gmail

**David mts <davemts1213@gmail.com>**

## Dan Schantz Farm & Greenhouses, LLC

**Douglas Panzer** <dpanzer@flblaw.com>
To: David mts <davemts1213@gmail.com>

Wed, Jan 25, 2017 at 6:01 PM

As you may know, Dan Schantz had a serious fire earlier this month that caused major damage and disruption. I will have a substantive response for you as soon as possible.

**From:** David mts [mailto:davemts1213@gmail.com]
**Sent:** Wednesday, January 25, 2017 11:51 AM
**To:** Douglas Panzer <dpanzer@flblaw.com>

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**           Mon, Jan 30, 2017 at 2:26 PM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

Per the phone message I recently left.

I was not aware of the Fire.

As far as I understand from our conversation, you are making the decision as to weather or not your client will be signing
the stand still agreement along with reviewing the materials and providing your recommendation.

Please let me know what time you are available to speak today.

Thanks,
David

[Quoted text hidden]

 **Gmail**                                        **David mts <davemts1213@gmail.com>**

## Dan Schantz Farm & Greenhouses, LLC

**David mts <davemts1213@gmail.com>**                                Wed, Feb 1, 2017 at 11:45 AM
To: Douglas Panzer <dpanzer@flblaw.com>

Douglas,

At this time, please provide me with an update per your client entering into the standstill agreement.

Thanks,
David
[Quoted text hidden]

# Exhibit F

 Gmail

David mts <davemts1213@gmail.com>

## Dan Schantz Farm & Greenhouses, LLC v. Catanzaro - Expiration of Unassigned Patent

David mts <davemts1213@gmail.com>
To: Douglas Panzer <dpanzer@flblaw.com>
Cc: Dan Schantz Farm <info@danschantz.com>

Thu, Feb 2, 2017 at 3:39 PM

Mr. Panzer,

I cannot tell you how upset, angry and disheartening I still am to find out that you on behalf of you client filed a DR action against me when I failed to provide any legal notice to your client of a colorable claim as stated in your letter of 1/18/17. NO oral or written controversy (as defined by law) existed between me or your client at the time you filed the DR action or thereafter. Also, what further enraged me is that from our phone conversation of 1.18.17 I was of the belief that there was a a good faith understanding between us that you would be providing a further answer  per your client entering into the standstill agreement and I would in return provide you with my full name and any other reasonable consideration to move forward with the standstill agreement. Being an officer of the court, you blatantly lied and filed the DR action continuing to "Play me" as you sent me emails stating the Fire your client sustained was the reason for the delay reconnecting with me. The clear representations you made on the 18th over the phone are affirmed within your email responses. Your emails and letter will be apart of my response to the court. Your letter is clear and correct, but your follow up emails will support your true intention to deceive which is  adverse to the Rules of Professional Conduct and Rules of Civility. To further show your lack of integrity, on 2/1/17 I called you after seeing the filed DR action online and I stated among other things, that "you really tried to got one over on me...you're the man" and your response in a most proud underhanded tone was: "I am the man."

If we cannot resolve this matter prior to me answering the complaint, I will be asking the court to dismiss the action based on the fact that Personnel Jurisdiction is not proper and Declaratory Judgment Jurisdiction is not proper. The bad faith you displayed as an officer of the court will further support my position. I will also be filling a disciplinary action with the disciplinary board regarding your False Representations along with the option of publishing it. (I have previously brought a disciplinary action against an attorney representing my mother and that attorney hired a firm to represent him in the matter but he ended up receiving discipline. From that experience, I have established direct contact with one of the boards head case attorneys. (I will provide you with a letter denoting the discipline that attorney received if you like.)

1.  I never stated how any product of your client infringed on any identified patent

2. I never identified any patent that your client was infringing.

3. I never asked for a licensing fee for any identified patent


4. I never stated that a lawsuit would be filed identifying a specific US patent.


5. I never identified who I was.


6. Your letter of 1/18/17 clearly states that I failed to provide any legal notice to your client of a colorable claim


Your client has not endured any of the following to substantiate a Controversy:

    1. The plaintiff must have suffered an injury in fact.

    2. There must be a causal connection between the injury and the defendant's conduct complained of.

    3. It must be "likely" that the injury would be redressed by a favorable decision.


Because of your deception and lies and your clients willingness to go along with it, I must consider releasing a press release and or taking out a page in a paper in your area about your client and how you went about representing them in this matter. I may also visit local news or radio stations to inform viewers in your area about my story and how to avoid patent traps such as Declaratory relief actions. I'm sure with the advent of the show shark tank people in your area would love to learn how a Christian PA native with a high school diploma married with three little girls was able to license with many international companies.


The PR release and newspaper write up may contain the following:

1. The head line may read:


    Several Weeks after major fire, Don Schantz Farm & Greenhouses, refuses olive branch extended by Christian Inventor and prefers litigation.


2. Douglas Panzer of Fitzpatrick Lentz & Bubba, P.C. agrees to open a dialog with christian inventor, makes promises in good faith to continue to communicate with him, but them immediately files suit against him. "Douglas Panzer acted in such a low manner of morality, he actually used the fire Don Schantz Farm & Greenhouses sustained in January as an excuse to delay responding to me so he could at the same time file suit against me."

3. The website of Dan Schantz Farm & Greenhouses, LLC claims to be *"dedicated to providing a safe Christian environment for all employees with morality and honesty as the framework for all present and future plans."*

By allowing and condoning the immorality of Douglas Panzer and his blatant lies, Dan Schantz Farm & Greenhouses is promoting nothing less than pure secular anti Christianity and should take down their Christian statement... *for you will know them by their works.*

The above outline is just an example of what may be in a PR release or taken out in a page in a newspaper in your area along with calling local Christians to action. Prior to releasing anything I will engage a publicist.

As a Christian, I am very saddened that you were able to push me to such a defensive mind set. If you only acted in an ethical manner following through on your words and promises, this email and its objectives would not have been conceived or considered, but again, it is the result of your unhonest behavior and your client allowing it. To restate, none of the above should be considered a threat, but a necessary response as a result of you and your clients willingness to support your unethical action enacted by your lies and contempt for me.

Redacted

# Exhibit G

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| DAVID CATANZARO, | ) CASE NO. 1:13CV996 |
| | ) |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| | ) |
| vs. | ) ORDER |
| | ) |
| SEAMAN GARSON LLC/LLP, et al., | ) |
| | ) |
| Defendants. | ) |

On May 2, 2013, Plaintiff David Catanzaro initiated a legal malpractice action against the

Defendants by filing a Complaint in this Court. Catanaro alleges that he suffered damages as a

result of the Defendants' "failure to properly represent" him in a patent infringement action that

he filed in the Middle District of Pennsylvania, *Catanzaro v. Procter & Gamble*, et al, Case No.

3:09cv2231 (the "Pennsylvania Action"). Specifically, Plaintiff alleges that he was induced to

enter into a Patent Purchases, Assignment and Settlement Agreement which caused him to

alienate his interest in U.S. Patent No. 6, 026,532 ("the '532 Patent") and give up his interest in a

continuation patent, U.S. Patent No. 7, 653,959 ("the '959 Patent"). As part of this settlement

agreement, Plaintiff alleges that he was advised by his lawyers to agree to "sell and assign all

right, title and interest in the '532 Patent to Church and Dwight" and to grant a non-exclusive

use license to Proctor & Gamble and Church & Dwight under the '959 Patent.

Plaintiff alleges that after the parties settled the Pennsylvania Action he continued to

bring infringement claims in connection with the '959 patent. Plaintiff alleges that in May 2012,

while he was negotiating an infringement claim against Elmer's Products, Inc., ("Elmer") he was

informed by Elmer's attorney that he lost his rights in the '959 Patent. According to Catanzaro, the attorney told him that the '959 Patent had a "Terminal Disclaimer" which rendered his '959 Patent unenforceable because it required that the '532 and '959 Patents be jointly owned. Based on what this attorney allegedly told him, Catanzaro filed the instant malpractice case, contending that Defendants never advised him he would lose the right to enforce his '959 Patent when he settled the Pennsylvania Action.

The Court has determined that this case cannot be litigated in its current posture. Plaintiff Catanzaro is seeking damages from his former counsel for the loss of his '959 Patent rights, alleging that his patent is no longer enforceable due to the Terminal Disclaimer. The problem with this claim is that there has been no judicial determination that Catanzaro cannot enforce the '959 Patent. Defendants maintain that the patent is still enforceable, and until recently, Catanzaro has been enforcing it.

Federal courts cannot issue advisory opinions. *See Bowler v. Young,* 55 F. App'x 187, 188 (4th Cir. 2003) ( "In order for a federal court to exercise jurisdiction over an action, the dispute must satisfy the case or controversy requirement of Article III of the Constitution. A case or controversy exists if the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests. [T]he court may not issue what amounts to an advisory opinion on what the law would be under a hypothetical set of facts."). As part of his case, Catanzaro wants this court to invalidate his '959 Patent, or to hold that he has lost the right to enforce it, but there is nobody in this case who is allegedly infringing his patent and maintaining that Catanzaro has lost his right to enforce it. To be entitled to damages against his former counsel, Catanzaro must demonstrate that he has lost the right to enforce his patent due to Defendants' malpractice in

-2-

connection with the Terminal Disclaimer. Since Defendants maintain that Catanzaro has not lost

the right to enforce his '959 Patent, the only way this issue can be decided is through a true

adversarial proceeding, one in which the plaintiff (Catanzaro) seeks to enforce his patent, and the

defendant (someone using Catanzaro's patent) defends on the basis that Catanzaro has lost the

right to enforce it. If Catanzaro prevails in his patent litigation, his malpractice case against his

former attorneys evaporates. If a court should determine in the patent litigation that Catanzaro

cannot enforce the '959 Patent on some basis other than the Terminal Disclaimer, Catanzaro's

malpractice case against his former attorneys also evaporates. If, however, Catanzaro loses his

patent enforcement case on the basis of the Terminal Disclaimer, then he has a basis to refile his

malpractice case against his former attorneys.

Accordingly, this case is dismissed without prejudice. The Court tolls the statute of

limitations as of today for a period of six months (June 12, 2015) to permit Catanzaro to file

a patent enforcement action against an alleged infringer. Should Catanzaro file such an action,

the tolling of the statute of limitations will remain in place until there is a final judgment in the

patent enforcement litigation.

IT IS SO ORDERED.

/s/ Dan A. Polster    December 15, 2014
Dan Aaron Polster
United States District Judge

-3-